IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| STODGE INC. d/b/a POSTSCRIPT, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Attentive Mobile Inc. ("Attentive" or "Plaintiff") alleges against Defendant Stodge Inc. d/b/a Postscript ("Postscript" or "Defendant") as follows:

1.      This case involves patented, two-tap mobile technologies that helped to revolutionize and have become widely adopted in the fields of mobile-signup and mobile-messaging products and platforms, by enabling businesses to interact and connect with mobile users in a new way through messaging.

2.      Plaintiff's patented technologies transformed the way businesses could interact and connect with mobile users, while also enhancing the experience of the mobile users.

3.      Plaintiff Attentive has implemented its patented technologies in its mobile-signup and mobile-messaging products and platforms.

4.      Over the years, Plaintiff Attentive has received numerous accolades and awards for its products and services.  For example, Attentive has been named number 10 on the "Forbes 2022 Cloud 100," the definitive ranking of the top 100 private cloud companies in the world.[1]  Further,

---

[1] https://www.forbes.com/lists/cloud100/?sh=30f9084d7d9c.

in 2022, Forbes recognized Attentive as one of America's Best Startups (#253),[2] and G2 recognized Attentive's products and offerings as one of the Fastest Growing Products (#63).[3]

5.      Plaintiff Attentive currently owns U.S. Patent No. 11,416,887 ("the '887 Patent," attached hereto as **EXHIBIT 1**), U.S. Patent No. 11,416,897 ("the '897 Patent," attached hereto as **EXHIBIT 2**), and U.S. Patent No. 11,553,074 ("the '074 Patent," attached as **EXHIBIT 3**) (collectively, "the Asserted Patents").

6.      Plaintiff's patented technologies provide such vast improvements over the traditional mobile-signup and mobile-messaging experience that Attentive's offerings and services have become widely adopted and the "gold standard" in the mobile-messaging platform industry.

7.      Plaintiff's patented technologies has resulted in more than two-fold sign-up rates (subscribers / impressions) over traditional desktop sign-up techniques.

8.      Defendant Postscript is a direct competitor of Attentive and provides mobile-signup and mobile-messaging products and platforms that, without authorization, implement Plaintiff's patented technologies.  Defendant's infringing mobile-signup and mobile-messaging products and platforms include, but are not limited to, Postscript's SMS Marketing Platform and Postscript's other offerings and services that integrate with Postscript's SMS Marketing Platform (collectively, "the Accused Products").

9.      Plaintiff brings this action to seek damages for and to ultimately stop Defendant's continued infringement of the Asserted Patents.  As a result of Defendant's unlawful competition in this judicial district and elsewhere in the United States, Plaintiff has lost sales and profits and suffered irreparable harm, including lost market share and goodwill.

---

[2] https://www.forbes.com/lists/americas-best-startup-employers/?sh=6637efa92ad7.

[3] https://www.g2.com/best-software-companies/fastest-growing?utm_source=bambu&utm_medium=social&utm_campaign=Brand%20Awareness.

## NATURE OF THE CASE

10.     Plaintiff brings claims under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, for infringement of the Asserted Patents. Defendant has infringed and continues to infringe each of the Asserted Patents under at least 35 U.S.C. §§ 271(a), 271(b) and 271(c).

## THE PARTIES

11.     Plaintiff Attentive is the leader in mobile-messaging technology and is a market-leading innovator in the field of business-to-consumer communication.  Attentive's mobile-signup and mobile-messaging products and platforms help businesses, from entrepreneurs to enterprises, strengthen relationships with their consumers in new ways as a direct result of Attentive's patented technologies, as described and claimed in the Asserted Patents.  Attentive's mobile-signup and mobile-messaging products and platforms drive billions in e-commerce revenue.  Over 5,000 leading brands rely on Attentive to deliver powerful and innovative commerce experiences.

12.     Plaintiff Attentive is the owner by assignment of each of the Asserted Patents.

13.     Plaintiff Attentive's mobile-signup and mobile-messaging products and platforms incorporate Attentive's patented technology.

14.     Plaintiff Attentive's mobile-signup and mobile-messaging products and platforms have enjoyed commercial success and have been implemented for thousands of clients nationwide as a result of Attentive's patented technology.

15.     Plaintiff Attentive is a corporation organized in the State of Delaware with its headquarters located at 221 River Street, Hoboken, NJ 07030 that conducts business in this District, throughout this state, and throughout the country.

16.     Plaintiff Attentive actively employs over 1,000 employees in the United States.

17.     On information and belief, Postscript provides an eCommerce Short Messaging Service ("SMS") platform that enables brands to communicate and engage with customers through

text message marketing; Postscript's platform plugs into eCommerce businesses and sends customers targeted and customizable SMS marketing messages.

18.     On information and belief, Defendant Postscript is a corporation organized in the State of Delaware with its principal place of business at 3370 North Hayden Road, Suite 123, Scottsdale, Arizona 85251.

## JURISDICTION AND VENUE

19.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

20.     This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21.     This Court has personal jurisdiction over Defendant in the State of Delaware.  On information and belief, Defendant Postscript is a corporation organized and existing under Delaware law.  Further, Defendant Postscript has engaged in systematic and continuous business activities in this District.  As described below, Defendant has also committed acts of patent infringement giving rise to this action, including within the State of Delaware.

22.     This Court also has personal jurisdiction over Defendant Postscript by virtue of, *inter alia*, the fact that it has committed, aided, abetted, contributed to, and/or participated in the commission of a tortious act of patent infringement that has led to and/or will lead to foreseeable harm and injury to Attentive, a Delaware corporation, in the State of Delaware.

23.     Defendant has purposely directed its activities toward the State of Delaware, which give rise to the causes of action asserted by Plaintiff such that the exercise of personal jurisdiction by courts within the State of Delaware is fair and reasonable.  For example, Postscript regularly conducts business in the State of Delaware and in this District, including using software, providing services, and/or engaging in other activities in the State of Delaware that infringe one or more

claims of the Asserted Patents, as well as inducing and contributing to the direct infringement of others through acts in this District.

24.     This Court has personal jurisdiction over Defendant Postscript for other reasons that will be presented to the Court if jurisdiction is challenged.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

26.     Venue is proper in this district with respect to Defendant Postscript because it is incorporated in the State of Delaware, and, therefore, resides in the State of Delaware.  *See* 28 U.S.C. § 1400(b).  Additionally, venue is proper in this district with respect to Defendant Postscript because it has committed acts of infringement in this judicial district, and, upon information and belief, it will commit further acts of infringement in this judicial district.

27.     Venue is proper for the reasons set forth above, and for other reasons that will be presented to the Court if such venue is challenged.

## PLAINTIFF'S PATENTED INNOVATIONS

28.     Plaintiff Attentive has been and continues to be a pioneer and leading innovator in developing and providing mobile-signup and mobile-messaging products and platforms.

29.     The Asserted Patents discussed below capture technology, features, and processes that reflect these innovations and improvements on traditional mobile-signup and mobile-messaging products and platforms.

30.     The Asserted Patents have achieved commercial success through Plaintiff Attentive's mobile-signup and mobile-messaging products and platforms that implement Attentive's patented two-tap mobile technologies.

31.     The Asserted Patents are part of the same patent family and generally disclose and claim new and novel non-transitory processor-readable mediums and methods related to mobile device messaging-based communications using custom-generated deeplinks and based on the

Hyper Text Transfer Protocol (HTTP).  Plaintiff Attentive owns by assignment the entire right, title, and interest in and to the Asserted Patents.

32.     The '887 Patent is titled "Methods and Apparatus for Mobile Device Messaging-Based Communications Using Custom-Generated Deeplinks and Based on the Hyper Text Transfer Protocol (HTTP)," was filed on February 10, 2022, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on August 16, 2022.  The '887 Patent claims priority to Provisional Application No. 62/511,413, filed on May 26, 2017.  The '887 Patent is a continuation of Application No. 17/569,265, filed on January 5, 2022, which is a continuation of Application No. 17/496,590, filed on October 7, 2021, which is a continuation of Application No. 15/986,569, filed on May 22, 2018.  A true and correct copy of the '887 Patent is attached as **Exhibit 1**.

33.     The '897 Patent is titled "Methods and Apparatus for Mobile Device Messaging-Based Communications Using Custom-Generated Deeplinks and Based on the Hyper Text Transfer Protocol (HTTP)," was filed on January 5, 2022, and was duly and legally issued by the USPTO on August 16, 2022.  The '897 Patent claims priority to Provisional Application No. 62/511,413, filed on May 26, 2017.  The '897 Patent is a continuation of Application No. 17/496,590, filed on October 7, 2021, which is a continuation of Application No. 15/986,569, filed on May 22, 2018.  A true and correct copy of the '897 Patent is attached as **Exhibit 2**.

34.     The '074 Patent is titled "Methods And Apparatus For Dynamic Application Deeplinking At A Mobile Electronic Device," was filed on October 7, 2021, and was duly and legally issued by the USPTO on January 10, 2023.  The '074 Patent claims priority to Provisional Application No. 62/511,413, filed on May 26, 2017.  The '074 Patent is a continuation of

Application No. 15/986,569, filed on May 22, 2018.  A true and correct copy of the '074 Patent is attached as **Exhibit 3**.

35.     With respect to the '887 and '897 Patents, Attentive has complied with the requirements of 35 U.S.C. § 287, to the extent necessary, since on or about November 1, 2022, such that Attentive may recover pre-suit damages.  (*See* https://www.attentive.com/patents.)  With respect to the '074 Patent, Attentive has complied with the requirements of 35 U.S.C. § 287, to the extent necessary, since on or about January 11, 2023, such that Attentive may recover pre-suit damages.  (*Id.*)

36.     The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101.  They are not directed to an abstract idea, and the technologies covered by the claims consist of ordered combinations of features and functions that, at the time of the inventions, were not, alone or in combination, well-understood, routine, or conventional.

37.     The inventions described and claimed in the Asserted Patents solve various technical problems, including by disclosing technological advancements that (a) provide means for causing a mobile device to transition from one application to a different application, including through the use of deeplinking, (b) provide custom text messages, including prepopulated text messages, and (c) allow for enrollment in a promotion or subscription without an additional communication, such as an opt-in communication.  The disclosed technological advancements address technological problems and enhance the user experience and the mobile-signup process, *inter alia*, by not requiring the mobile device user to have to enter a phone number or message as part of the signup process, which often led to failed signups as a result of mistyped numbers or messages and/or lost interest.  The disclosed technological advancements described and claimed in the Asserted Patents solved these and other problems.  Indeed, the specifications of the Asserted

Patents disclose shortcomings in the prior art and then explain, in detail, the technical way the claimed inventions resolve or overcome those shortcomings via a technical solution.  For example, as described in the specifications, the mobile-signup and mobile-messaging methods and systems known at the time the Asserted Patents were filed allowed a user to open an e-commerce vendor's application or website on a mobile device, where the user could then provide information via the vendor's application or website, for example, to complete a transaction, enroll in a promotion, and/or signup for a subscription offered by the vendor.  With these known techniques, however, the user often would pause its previous activities (e.g., viewing a website, reading an email) on the mobile device and would be redirected to the vendor's application or website, for example, to complete a transaction, enroll in a promotion, and/or signup for a subscription offered via many user inputs (e.g., clicks or screen taps).  This time-consuming and burdensome process resulted in many users failing to complete the desired activity.  (*See*, *e.g.*, **Exhibit 1**, '887 Patent, 1:30-52.)

38.     Plaintiff's patented technologies accordingly fill a previously existing need for dynamic application deeplinking to transition from one user interface to another user interface at a mobile device for continued and improved user experience and engagement when interacting with the mobile device.  (*Id.*)

39.     Each of the claimed inventions of the Asserted Patents is necessarily rooted in computer technology—in other words, messaging-based communications using custom-generated deeplinks and based on HTTP are fundamentally and inextricably a problem experienced with computer technology and networks—and addresses fundamental computer technology problems with a computer technology solution.  Furthermore, the Asserted Patents improve the technical functioning of the computer network using techniques—such as by providing dynamic application deeplinking to transition from one user interface to another user interface at a mobile device—to

improve the user experience and engagement by allowing a continued and near-seamless user experience.  These technical improvements address identified weaknesses in conventional systems and processes.  (*Id.*)

40.     For example, the '887 Patent describes and claims, *inter alia*, non-transitory computer-readable mediums storing code including instructions configured to cause a click-to-text server to cause a mobile device to "(1) automatically transition from [a] first application to [a] messaging application in response to the mobile device detecting a user interaction with a promotional message associated with the webpage" and "(2) automatically populate a custom message in the messaging application."  (*See, e.g.*, **Exhibit 1**, '887 Patent, 21:54-61.)  In effect, this process remotely controls the user device using custom deeplinks and/or HTTP, which allows for automation of the process and improved user experience and engagement.  The '887 Patent further provides that the mobile device is enrolled in a promotion based on receiving the custom message and without receiving any additional information from the mobile device.

41.     The claimed non-transitory computer-readable mediums of the '887 Patent constitute technical improvements over traditional mobile-signup and mobile-messaging systems and provide numerous advantages to computer systems (including mobile devices) and the process of interacting with users and potential customers.

42.     Similarly, the '897 Patent describes and claims, *inter alia*, methods and non-transitory computer-readable mediums storing code including instructions configured to cause a processor to cause "(1) [a] mobile device to transition from [a] first application to a second application different" and "(2) the second application to automatically populate a custom text message."  (*See, e.g.*, **Exhibit 2**, '897 Patent, 24:47-54.)  In effect, this process remotely controls the user device using custom deeplinks and/or HTTP, which allows for automation of the process

and improved user experience and engagement.  The '897 Patent further provides that the mobile device received an installment of a messaging subscription service without receiving an opt-in communication after receiving the custom text message.

43.     The claimed methods and non-transitory computer-readable mediums of the '897 Patent constitute technical improvements over traditional mobile-signup and mobile-messaging systems and provide numerous advantages to computer systems (including mobile devices) and the process of interacting with users and potential customers.

44.     Similarly, the '074 Patent describes and claims, *inter alia*, methods and non-transitory computer-readable mediums storing code including instructions configured to cause a processor to cause "the mobile device to automatically (1) switch from rendering the web browser application to rendering a text messaging application and (2) generate a text message with a pre-populated phone number and a pre-populated message body containing a request to join the subscription list."  (*See, e.g.*, **Exhibit 3**, '074 Patent, 24:41-50.)  In effect, this process remotely controls the user device using custom deeplinks and/or HTTP, which allows for automation of the process and improved user experience and engagement.  The '074 Patent further provides that the mobile device received an installment of a messaging subscription service without receiving an opt-in communication after receiving the text message containing the pre-populated message body.

45.     The claimed methods and non-transitory computer-readable mediums of the '074 Patent constitute technical improvements over traditional mobile-signup and mobile-messaging systems and provide numerous advantages to computer systems (including mobile devices) and the process of interacting with users and potential customers.

46.     The inventions described and claimed in the Asserted Patents necessarily address issues unique to computer networks and computer network operation; namely the use of network

information to create custom deeplinks to allow for automation of the enrollment and/or subscription process of a networked mobile device. These patents provide unique network operations enhancement that solves the technical problems associated with allowing a continued and near-seamless user experience to improve the user experience and engagement.

47. The inventions described and claimed in the Asserted Patents improve the operation of computer networks and networked devices by automatically creating custom deeplinks and custom messages. Thus, the claimed inventions in these patents provide a technological solution to a technological problem—the inability of conventional code solutions to allow remote, automatic control of dynamic application deeplinking to transition from one user interface to another user interface at a mobile device for continued and improved user experience and engagement when interacting with the mobile device.

48. At a minimum, the claims of the Asserted Patents are directed to solutions to specific issues with computer functionality and address improvements to computer functionality through claims that teach specifically how to achieve the desired result.

49. Each of the Asserted Patents have limitations such as these, as well as others that are substantial, meaningful, and concrete, and which tie the claims down and remove them from essentially affecting a monopoly on the allegedly abstract idea of merely doing business or generically streamlining signup of marketing promotions.

50. The claims of the Asserted Patents are complex and do more than merely recite the performance of known business practices on the Internet. Indeed, they are best understood as being necessarily rooted in computer technology in order to solve specific problems in the realm of securing user signup in mobile-computing environments.

51.     The claims of the Asserted Patents claim an ordered combination of components and interactions in an unconventional manner.  Indeed, the combination of components and interactions recited in the claims of the Asserted Patents has garnered industry praise for its unconventionality and effectiveness.  For example, the industry has praised Attentive's claimed two-tap technology as a "novel"[4] "key differentiator"[5] that "sounds simple, but apparently [] took months for Attentive's engineering team to develop."[6]

52.     At the least, the ordered combination of claimed elements renders the claims of the Asserted Patents significantly more than a patent upon any abstract idea, such as merely streamlining signup of marketing promotions.

## ACCUSED PRODUCTS

53.     Postscript uses, makes, offers, sells, maintains, and installs mobile-signup and mobile-messaging products and platforms that provide and implement subscription-based and/or promotional messaging for individuals and enterprises.  Postscript's SMS Marketing Platform and Postscript's other offerings and services that integrate with Postscript's SMS Marketing Platform (collectively, "the Accused Products") incorporate Plaintiff's patented technologies.

54.     Postscript describes and markets its Accused Products as follows:

---

[4] https://crm.org/news/attentive-gets-the-message-out.

[5] https://martech.org/led-tapcommerce-founders-startup-attentive-launchessmsmms-marketing-platform/.

[6] https://techcrunch.com/2018/02/08/attentive-launch.

Two-Touch opt-in is a mobile-specific method by which a subscriber can opt into your SMS program. Just like the name suggests, this method only requires two touches on the subscriber's mobile device to opt in.

**The first touch:** Subscriber selects a call-to-action (CTA).

This CTA can be a **link**, **QR code**, or button on a **mobile popup**. When the subscriber selects the CTA, a pre-populated message will appear in the subscriber's native texting app. This message can be customized but needs to include your shop name and a **keyword**.

*In the example below, the pre-populated message is "Send this text to subscribe to JO+CO! (ref: JOCO15 ). The keyword is JOCO15.*

**The second touch:** Subscriber selects the "Send" button on their device.

Once the subscriber sends the pre-populated message, they will get the keyword reply that correlates to the "(ref: KEYWORD )" part of the pre-populated message.

*In the example below, the message that reads, "Thanks for subscribing. Here's your coupon for 15% off BABE15. Shop here: pscr.pt/2v08Yk. Valid online only." is the keyword reply for keyword: JOCO15 (Note: BABE15 is the* **coupon code**).






(https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-.)   As

shown above, Postscript markets and advertises its Accused Products to its customers as featuring

"Two-tap opt-in" technology.  (*Id.*)

   55.   Postscript instructs and encourages its customers to "use unique keywords for each

opt in source":

*Tip:* We encourage you to use a unique keyword for each opt in source. Keeping your keywords unique to opt in source will allow you to more easily track the efficacy of the opt-in source in **analytics**.

(*Id.*)

56.     Postscript instructs and encourages its customers to use the Accused Products create mobile popups to "grow your SMS list with the help of Postscript":

**Acquisition tools**

Build and grow your SMS list with the help of Postscript.

(https://postscript.io/list-growth.)

57.     Postscript also instructs and encourages its customers to use the Accused Products to collect phone numbers using mobile popups and to "[c]ustomize the deign to match your brand, choose the type of incentive you want to offer, and select when and where on your site you want your popups to appear":

**Desktop and mobile popups** —

Collect both phone numbers and emails. Customize the design to match your brand, choose the type of incentive you want to offer, and select when and where on your site you want your popups to appear.

(*Id.*)

58.    Postscript also instructs and encourages its customers to use Keywords when implementing the Accused Products:

**Keywords** —

Create an unlimited number of text-to-join keywords to share across all your marketing channels. Use keywords to track opt-ins and revenue generated from different marketing channels or campaigns.

(*Id.*)

59.    Postscript also instructs and encourages its customers to create landing pages and opt-in forms when implementing the Accused Products:

> ## Landing page and opt-in form   —
>
> Create a landing page with an SMS opt-in form that you can link to from email campaigns or social media posts. This includes two-touch technology on mobile.

(*Id*.)

60.    Postscript instructs and encourages its customers to implement the Accused Products by creating Postscript popups as follows:

## Create a Postscript Mobile Popup

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)  Postscript describes the popups used by the Accused Products as follows:

> Popups are a powerful way to grab attention and engage users who visit your website on their mobile device.

(*Id*.)  Further, Postscript instructs and encourages its customers to implement the Accused Products using popups to offer discounts, giveaways, contests, clubs, and/or memberships as follows:

## Why a Postscript Mobile Popup Benefits You

- Easily (and compliantly) collect SMS and email subscribers.

- Design your popup to match the look and feel of your brand.

- Use your popup to provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.

- Enable mobile two-touch which allows subscribers to opt-in with just a tap.

- Add engaging background images or GIFs to catch the attention of your website visitors.

(*Id.*)  As shown above, Postscript markets and advertises its Accused Products to its customers as featuring "mobile two-touch which allows subscribers to opt-in with just a tap."  (*Id.*)

61.    Postscript instructs and encourages its customers to implement the Accused Products by creating mobile popups as follows:

## Create a Mobile Popup

Postscript allows you to create and maintain multiple mobile popups, though only one mobile popup can be enabled at any given time.









(*Id.*)

      62.    Postscript instructs and encourages its customers to design mobile popups used by the Accused Products by customizing the behavior, design, and content of the popups:

(*Id.*)  Further, Postscript instructs and encourages its customers to customize the behavior of the popups used by the Accused Products as follows:



- **Name.** Choose a name that speaks to the offer in your popup. This name displays in the list of available popups on your main **Popups** page.

- **Collection.** You have the option to collect only phone numbers, or phone and email. For phone and email, you can choose which popup page displays first and second. We recommend you set the phone page to display first.

- **Two Touch.** Changes the phone input field to a button. When subscribers tap the button, it launches their messaging app with an auto-generated message they must send in order to verify their phone number.

  - **Keyword.** If you enable two-touch, you will need to pick a keyword to associate with the opt-in. You can **create a new keyword** or choose an existing one.

- **Countries.** Choose which countries should see the popup.

- **Popup Size.** You have three options for your popup type: **Partial**, **Fullscreen**, or **Banner**.

- **Popup Delay.** Define how long a popup should wait before appearing. We recommend a 3-second delay. The longer the delay, the lower the conversion rate.

- **Close Action.** Choose what happens when a customer exits your popup.

  - **Exit** closes the popup entirely.

  - **Bubble** minimizes the popup to a small image in the bottom-left corner of the page. Visitors can access the popup later if they change their minds about subscribing.

    - **Close Action Text.** Edit the text that appears on the minimized bubble popup.

- **Include Pages.** If you wish for the popup to display on specific sub-pages (aside from your main webpage), you can select those pages from the drop-down.

- **Exclude Pages.** If you want to ensure the popup doesn't display on specific pages, you can select those pages from the drop-down.

(*Id.*)  Further, Postscript instructs and encourages its customers to customize the design of the popups used by the Accused Products as follows:



- **Logo Image.** Upload a logo image by selecting a file from your device. You can also drag and drop the image file into the upload field.

- **Background Style.** Choose to have your popup background be a solid color or an image.

  - **Background Color.** If you select a solid color background, you can enter a specific **hex code** for your desired color.

  - **Background Image.** If you select a background image, you can upload the image or GIF from your device or drag and drop the file into the upload field.

- **Font.** Select your preferred font. This font applies to all text on your mobile popup.

- **Style.** Choose whether your mobile popup will have square or rounded corners.

  - **Corner Roundness.** If you selected rounded corners, then use this field to set how round the corners should appear.

- **Primary Text Color.** Set your primary text color by entering a **hex color code**. This color applies to all text on your mobile popup *except* button text.

- **Button Color.** Set the color of your subscribe button by entering a **hex color code**.

- **Button Text Color.** Set the color of your subscribe button text by entering a **hex color code**.

- **Headline Font Size.** Set the size of your main headline text.

- **Post-Heading Font Size.** Set the size of your post-headline text, which appears below the headline.

(*Id.*)  Further, Postscript instructs and encourages its customers to customize the content of the popups used by the Accused Products as follows:



(*Id.*)

63.     Postscript instructs and encourages its customers to implement the Accused Products by enabling custom confirmation message as follows:



(*Id.*)  As shown, Postscript instructs its customers that, when creating a "Two Touch popup with a 'tap to subscribe' experience," the custom confirmation message will include a keyword.  (*Id.*)  As shown, Postscript instructs its customers to "include the coupon or offer you promote in the popup" in the "keyword reply" for the custom keyword associated with the "Two Tap popup."  (*Id.*)

64.     As part of creating the popup, Postscript provides a dynamic popup preview as shown below:



(*Id.*)

65.    Once created, Postscript instructs and encourages its customers to implement the Accused Products by enabling Postscript popups as follows:

**Enable Your Mobile Popup**

Once you have designed your mobile popup, it's time to enable it. You can do so from the **main popup** page or from the specific popup page.

Simply select the toggle besides **Mobile Popup** so it is green and reads **Enabled** to the right of the toggle.









(*Id.*)

66.    Postscript instructs and encourages its customers to implement the Accused Products as follows:

![Grow Your List with Popups]

> Growing your subscriber list is an essential part of a strong SMS strategy. The best and easiest way to grow your SMS subscriber list is to enable both your Postscript desktop and Postscript mobile popup as soon as possible.

(https://help.postscript.io/hc/en-us/articles/4406430094107-Grow-Your-List-with-Popups#Why-You-Want-to-Enable-Your-Postscript-Popups.)

67.     Postscript instructs and encourages its customers to implement the Accused Products using popups to offer discounts, giveaways, and/or memberships as follows:

## About popups

Popups are a powerful way to grab attention and engage users who visit your website on their desktop and mobile devices.

With popups, you can offer your customers a discount, giveaway, or VIP membership in exchange for their phone number. Both desktop and mobile popups require compliant opt-in language but don't worry—with Postscript popups, we've got you covered.

(*Id.*)  Further, Postscript instructs and encourages its customers to implement the Accused Products using popups to offer discounts, giveaways, and/or memberships as follows:

## How Postscript popups benefit you

- Easily collect SMS (and email!) subscribers on desktop and mobile devices.

- Subscribers instantly appear in Postscript, meaning you can start sending out automations and campaigns right away.

- Use your popup to offer discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.

- Know you're always 100% compliant with the right language and collection process.

(*Id.*)

68.     Postscript instructs and encourages its customers to implement the Accused Products by enabling Postscript popups as follows:











1  Select **Acquisition** in the side menu of your **Postscript dashboard**, then select **Popups**.

2  Select the toggle beside **Desktop** so it is light blue and displays as **Enabled**.

3  Select the toggle beside **Mobile** so it is light blue and displays as **Enabled**.

(*Id.*)

69.    Upon information and belief, Postscript's Accused Products utilize two application programming interface ("API") endpoints to implement their two-tap opt-in process.

70.    Upon information and belief, when a user clicks or taps a "sign up" call to action ("CTA"), one API endpoint used by Postscript's Accused Products is used for the deep linking to the user's SMS messaging application, and the other API endpoint is used for passing the user's device data to a back-end server in connection with the sign-up process.

71.    Upon information and belief, when Postscript's Accused Products are implemented, data sent from the user's mobile device to one or more servers utilized by the Accused Products includes:

- User-Agent Information (e.g., mobile device and browser type / version);

- Mobile Device Platform (e.g., operating system (e.g., Android / iOS));

- Country (e.g., location of user / mobile device);

- Session_Id (e.g., a user identifier for the mobile device / platform);

- Shop_Id (e.g., internal company / brand identifier and/or market identifier (e.g., a Shopify identifier));

- Origin (e.g., a uniform resource locator ("URL) associated with the popup);

- Event Data (e.g., user interactions with the popup, such as an impression / click / tap);

- Server_Id (e.g., a unique identifier for tying a user back to the subscriber after the users sends the text message); and

- Email, if collected ahead of deep link or tap of SMS "Sign-up" button.

72.    Postscript publicizes a case study of a Postscript customer, Nomatic. (https://postscript.io/case-study-nomatic.)

73.    Postscript's publicized case study of Nomatic encourages and instructs potential Postscript customers to stop using Attentive's patented two-tap technology and to implement Postscript's Accused Products.  (*Id.*)

74.    On information and belief, Postscript's customers deploy and implement the Accused Products pursuant to Postscript's instructions for generating popups and enabling two-tap mobile signup as follows:

























## FIRST CAUSE OF ACTION
### (INFRINGEMENT OF THE '887 PATENT)

75.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

76.    Postscript has infringed and continues to infringe one or more claims of the '887 Patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court.  The Accused Products, including features such as Postscript's SMS Marketing Platform and Postscript's other offerings and services that integrate with Postscript's SMS Marketing Platform, at least when used for their ordinary and customary purposes, practice each element of at least claim 1 of the '887 Patent as described below.

77.    For example, claim 1 of the '887 Patent recites:

1.    At least one non-transitory processor-readable medium storing code configured to be executed by a processor of a click-to-text server, the code including instructions configured to cause the click-to-text server to:

send, to a client server, an integration tag configured to be served with a webpage hosted by the client server, the integration tag configured to cause a mobile device loading the webpage via a first application to send user data to at least one of the client server or the click-to-text server;

define and send a uniform resource identifier (URI) to the mobile device in response to the mobile device executing the integration tag, the URI deeplinking to a messaging application different from the first application and configured to cause the mobile device to (1) automatically transition from the first application to the messaging application in response to the mobile device detecting a user interaction with a promotional message associated with the webpage, the messaging application being different from the first application, and (2) automatically populate a custom message in the messaging application that includes an address associated with the click-to-text server and a message body that includes an identifier associated with at least one of the webpage or the user data such that, upon detecting a single user interaction with a send button of the messaging application, the mobile device sends the custom message to the click-to-text server;

receive the custom message at the click-to-text server; and

enroll the mobile device in a promotion associated with the promotional message based on receiving the custom message and without receiving any additional information from the mobile device.

78.     The Accused Products practice and embody each element of claim 1 of the '887 Patent.

79.     To the extent the preamble is construed to be limiting, the Accused Products comprise "*[a]t least one non-transitory processor-readable medium storing code configured to be executed by a processor of a click-to-text server.*"  The Accused Products, by nature, are software applications.  As software applications, the Accused Products are designed to be stored on at least one non-transitory processor-readable medium storing code configured to be executed by a processor.

80.     Further, the Accused Products provide SMS marketing services, and therefore the applications and programs associated with the Accused Products are intended and designed to be executed by a processor of a click-to-text server.

81.     On information and belief, Postscript owns, operates, and/or maintains at least one click-to-text server with a processor on which the Accused Products operate.

82.     On information and belief, Postscript owns, operates, and/or maintains a server capable of operating as a click-to-text on which the Accused Products operate located in Mountain View, CA, having an internet protocol ("IP") address of 34.111.8.32.

83.     On information and belief, Postscript collects information associated with users of the Accused Products using, for example, Automatic Data Collection:

- **Automatic Data Collection**. We may collect certain information automatically when you use our Services, such as your Internet protocol (IP) address, user settings, MAC address, cookie identifiers, mobile carrier, mobile advertising and other unique identifiers, browser or device information, location information (including approximate location derived from IP address), and Internet service provider. We may also automatically collect information regarding your use of our Services, such as pages that you visit before, during and after using our Services, information about the links you click, the types of content you interact with, the frequency and duration of your activities, and other information about how you use our Services.

(https://postscript.io/privacy.)   Such information includes, for example, user settings, MAC addresses, mobile advertising and other unique identifiers, browser or device information, location information, as well as information about the links clicked on, types of content interacted with, and other information about how the Accused Products are used.  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

84.     On information and belief, Postscript collects information associated with users of the Accused Products using, for example, cookies, pixel tags/web beacons, and other technologies:

- **Cookies, Pixel Tags/Web Beacons, and Other Technologies**. We, as well as third parties that provide content, advertising, or other functionality on our Services, may use cookies, pixel tags, local storage, and other technologies ("**Technologies**") to automatically collect information through your use of our Services.

(*Id.*)  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

85.     On information and belief, Postscript collects information associated with users of the Accused Products using, for example, cookies:

- **Cookies**. Cookies are small text files placed in device browsers that store preferences and facilitate and enhance your experience.

(*Id.*)  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

86.     On information and belief, Postscript collects information associated with users of the Accused Products using, for example, pixel tags/web beacons:

- **Pixel Tags/Web Beacons**. A pixel tag (also known as a web beacon) is a piece of code embedded in our Services that collects information about engagement on our Services. The use of a pixel tag allows us to record, for example, that a user has visited a particular web page or clicked on a particular advertisement. We may also include web beacons in e-mails to understand whether messages have been opened, acted on, or forwarded.

(*Id.*) On information and belief, the pixel tags/web beacons are pieces of software code that collect information about the use of the Accused Products.  Such information includes, for example, information on whether a user visited a particular web page or clicked on a particular advertisement, as well as information associated with whether messages have been opened, acted on, or forwarded.  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

87.     On information and belief, the Accused Products send/receive and/or cause a third-party provider to send/receive text messages.  For example, Postscript instructs and encourages its customers to design, create, and publish a custom link or button associated with a popup, that when selected will cause a mobile device user to receive a custom text message:

- **Two Touch.** Changes the phone input field to a button. When subscribers tap the button, it launches their messaging app with an auto-generated message they must send in order to verify their phone number.
  - **Keyword.** If you enable two-touch, you will need to pick a keyword to associate with the opt-in. You can **create a new keyword** or choose an existing one.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

88.     The Accused Products "*send, to a client server, an integration tag configured to be served with a webpage hosted by the client server, the integration tag configured to cause a mobile*

*device loading the webpage via a first application to send user data to at least one of the client server or the click-to-text server.*"   For example, Postscript and its customers use the Accused Products to send an integration tag as claimed.   Postscript instructs and encourages its customers to use the Accused Products to create mobile popups to "collect SMS and email subscribers" using "mobile two-touch" signup to "provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club":

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

89.    On information and belief, the popups created by the Accused Products comprise integration tags as claimed.   For example, Postscript instructs and encourages its customers to create a mobile popup using the Accused Products:

**Desktop and mobile popups** —

Collect both phone numbers and emails. Customize the design to match your brand, choose the type of incentive you want to offer, and select when and where on your site you want your popups to appear.

(https://postscript.io/list-growth.)

90.     Further, Postscript instructs and encourages its customers to implement the Accused Products using popups to offer discounts, giveaways, contests, clubs, and/or memberships in connection with a "two touch" sign-up process as follows:

## Why a Postscript Mobile Popup Benefits You

- Easily (and compliantly) collect SMS and email subscribers.
- Design your popup to match the look and feel of your brand.
- Use your popup to provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.
- Enable mobile two-touch which allows subscribers to opt-in with just a tap.
- Add engaging background images or GIFs to catch the attention of your website visitors.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

91.    Furthermore, the Accused Products require a button with which to allow interaction from the mobile device user:



(*Id.*)

92.    On information and belief, the integration tag of the Accused Products is configured to cause a mobile device loading the webpage to send user data to at least one of the client server or the click-to-text server as claimed.  For example, the popups of the Accused Products collect user data, such as phone numbers and/or email addresses:

> • **Collection.** You have the option to collect only phone numbers, or phone and email. For phone and email, you can choose which popup page displays first and second. We recommend you set the phone page to display first.

(*Id.*)

93.    The Accused Products "*define and send a uniform resource identifier (URI) to the mobile device in response to the mobile device executing the integration tag, the URI deeplinking to a messaging application different from the first application and configured to cause the mobile*"

*device to (1) automatically transition from the first application to the messaging application in response to the mobile device detecting a user interaction with a promotional message associated with the webpage, the messaging application being different from the first application, and (2) automatically populate a custom message in the messaging application that includes an address associated with the click-to-text server and a message body that includes an identifier associated with at least one of the webpage or the user data such that, upon detecting a single user interaction with a send button of the messaging application, the mobile device sends the custom message to the click-to-text server.*"

94.    On information and belief, the Accused Products define and send a URI as claimed. For example, to implement the Accused Products, Postscript requires that its customers use a "keyword" associated with each subscription-based and/or promotional messaging opt-in popup:

## Keywords                                    —

Create an unlimited number of text-to-join keywords to share across all your marketing channels. Use keywords to track opt-ins and revenue generated from different marketing channels or campaigns.

(https://postscript.io/list-growth;      *see        also*        https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

95.    Further, the Accused Products utilize and comprise a URI that, when interacted with, deeplinks to a messaging application different from the first application.  When the popup

-47-

created by and associated with the Accused Products is interacted with, the URI deeplinks to a messaging application different from the first application and causes the mobile device to (1) automatically transition from the first application to the messaging application and (2) automatically populate a custom message as claimed. (*See, e.g.*, *id.*)

96.     For example, the popup of the Accused Products implement and comprise a button that, when tapped, launches a messaging application with an auto-generated message:

> • **Two Touch.** Changes the phone input field to a button. When subscribers tap the button, it launches their messaging app with an auto-generated message they must send in order to verify their phone number.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

97.     On information and belief, the Accused Products utilize and comprise automatically populated custom messages that includes an address associated with the click-to-text server and a message body that includes an identifier associated with at least one of the webpage or the user data as claimed.



(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

98.     Further, the Accused Products utilize and comprise automatically populated custom messages that, upon detecting a single user interaction with a send button of the messaging application, the mobile device sends the custom message to the click-to-text server of the Accused Products:

**Why a Postscript Mobile Popup Benefits You**

- Easily (and compliantly) collect SMS and email subscribers.
- Design your popup to match the look and feel of your brand.
- Use your popup to provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.
- Enable mobile two-touch which allows subscribers to opt-in with just a tap.
- Add engaging background images or GIFs to catch the attention of your website visitors.

(*Id.*)

99.     Upon information and belief, when Postscript's Accused Products are implemented, data sent from the user's mobile device to one or more servers utilized by the Accused Products includes:

- User-Agent Information (e.g., mobile device and browser type / version);

- Mobile Device Platform (e.g., operating system (e.g., Android / iOS));

- Country (e.g., location of user / mobile device);

- Session_Id (e.g., a user identifier for the mobile device / platform);

- Shop_Id (e.g., internal company / brand identifier and/or market identifier (e.g., a Shopify identifier));

- Origin (e.g., a uniform resource locator ("URL) associated with the popup);

- Event Data (e.g., user interactions with the popup, such as an impression / click / tap);

- Server_Id (e.g., a unique identifier for tying a user back to the subscriber after the users sends the text message); and

- Email, if collected ahead of deep link or tap of SMS "Sign-up" button.

100.    The Accused Products "*receive the custom message at the click-to-text server*." Once a user of a mobile device interacts with the messaging application, the Accused Products receive the custom message at the click-to-text server.   As can be seen from the exemplary deployment of the Accused Products depicted below, the click-to-text server receives the custom message and responds with a promotional message:

Two-Touch opt-in is a mobile-specific method by which a subscriber can opt into your SMS program. Just like the name suggests, this method only requires two touches on the subscriber's mobile device to opt in.

**The first touch:** Subscriber selects a call-to-action (CTA).

This CTA can be a **link**, **QR code**, or button on a **mobile popup**. When the subscriber selects the CTA, a pre-populated message will appear in the subscriber's native texting app. This message can be customized but needs to include your shop name and a **keyword**.

*In the example below, the pre-populated message is "Send this text to subscribe to JO+CO! (ref: JOCO15 ). The keyword is JOCO15.*

**The second touch:** Subscriber selects the "Send" button on their device.

Once the subscriber sends the pre-populated message, they will get the keyword reply that correlates to the "(ref: KEYWORD )" part of the pre-populated message.

*In the example below, the message that reads, "Thanks for subscribing. Here's your coupon for 15% off BABE15. Shop here: pscr.pt/2v08Yk. Valid online only." is the keyword reply for keyword: JOCO15 (Note: BABE15 is the* **coupon code***).*






(https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-.)

101.    The Accused Products "*enroll the mobile device in a promotion associated with the promotional message based on receiving the custom message and without receiving any additional information from the mobile device.*"  Once a user of a mobile device interacts with the messaging application, the Accused Products enroll the mobile device in a promotion associated with the promotional message based on receiving the custom message and without receiving any additional

information from the mobile device.  As can be seen from the images above, the mobile device user is enrolled and receives the promotion associated with the promotional message without having to provide any additional information.

102.    In addition to the examples above, Postscript instructs its customers to "include the coupon or offer you promote in the popup" in the "keyword reply" for the custom  keyword associated with the "Two Tap popup":



(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

103.     On information and belief, Postscript instructs and encourages its customers to deploy and implement the Accused Products in a manner that practices each limitation of at least claim 1 of the '887 Patent, as evidenced by the actual deployments of the Accused Products depicted below:


























104.     Each claim in the '887 Patent recites an independent invention.  Neither claim 1, described above, nor any other individual claim is representative of all claims in the '887 Patent.

105.     Defendant had knowledge of the '887 Patent at least as of September 21, 2022, when Defendant cited the '887 Patent in an Information Disclosure Statement submitted to the USPTO in connection with Application No. 17/552,615.

106.     Defendant has also had constructive notice of the '887 Patent since on or about November 1, 2022, as a result of Attentive's compliance with the requirements of 35 U.S.C. § 287, to the extent necessary.  (*See* https://www.attentive.com/patents.)

107.     Defendant is also aware of the '887 Patent at least upon the filing of this Complaint. On information and belief, Defendant's infringing actions will continue after the filing of this Complaint.

108.     Defendant has knowledge of the '887 Patent and of the specific conduct that constitutes infringement of the '887 Patent at least based on the filing of this Complaint and, on information and belief, will continue to engage in the infringing activity, including by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality, and by engaging in activities that constitute inducing infringement and contributory infringement as described below.

109.     Defendant directly infringes at least claim 1 of the '887 Patent, either literally or under the doctrine of equivalents, by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality described above.  For example, on information and belief, Defendant's directly infringing activities in this District and elsewhere in the United States include at least making and using each limitation of at least claim 1 of the '887 Patent, as described above.  Defendant makes and uses the claimed inventions in

connection with at least the following activities involving the Accused Products (e.g., software and corresponding systems): (1) operating and maintaining servers and data centers that process information; (2) employing the Accused Products in connection with, and to promote, its own products and services and/or the products and services of its affiliates, (3) using software that includes the Accused Products, (4) testing the operation of the Accused Products and corresponding systems, (5) collecting and gathering information and data, and (6) providing services to others including installation, maintenance, update, verification, processing, support, and other services.

110.    In addition, Defendant directly infringes at least claim 1 of the '887 Patent because it directs and controls the performance and operation of each limitation of at least claim 1 of the '887 Patent by others.  As an example, Defendant 1) directs and controls the performance and operation of the Accused Products or components thereof on customers', partners', and end users' devices, and 2) establishes the manner of the operation of the Accused Products.  Defendant further directs and controls by means that include contractual agreements such as its End User License Agreements, its continued monitoring, verification and access to the Accused Products, its continued collection of information from the Accused Products, its programming of the software used in the Accused Products, and/or its provision of information, data, and instructions that control the operation of the system (for example, updates to algorithms, further development, and other system and module code).

111.    Defendant has knowledge of the asserted patent and of the specific allegations of infringement with respect to the '887 Patent at least as of the filing date of this Complaint.

112.    On information and belief, Defendant has actively induced and is actively inducing infringement of at least claim 1 of the '887 Patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b).  Defendant's partners, customers, and end users (collectively, "Third Party Users") of the Accused Products and corresponding systems and services directly infringe at least by making and using the inventions of at least claim 1 of the '887 Patent, for example when they install, operate and use the Accused Products and corresponding systems.

113.    For example, on information and belief, Defendant encourages and induces Third Party Users to use the Accused Products in a manner that infringes at least claim 1 of the '887 Patent at least by offering, selling, licensing, and providing the Accused Products which infringe at least claim 1 of the '887 Patent when used, configured, installed, and/or operated by Third Party Users.  Defendant further induces infringement of at least claim 1 of the '887 Patent by Third Party Users by engaging in activities that include: 1) making its offerings and services available on its website, providing applications that allow users to access those offerings and services, widely advertising those offerings and services, and providing technical support and instructions to users, and 2) marketing, advertising, promotion, installation, support, and distribution activities involving the Accused Products, including its mobile-signup and mobile-messaging offerings and services in the United States; 3) recommending and selling the Accused Products and providing technical support for the installation, implementation, integration, and ongoing operation of the Accused Products; 4) providing installation, implementation, and integration of the Accused Products in addition to ensuring the Accused Products remain operational for each customer through ongoing technical support.  (*See, e.g.*, https://help.postscript.io/hc/en-us.)  For example, Defendant shares instructions, guides, and manuals, which advertise and instruct Third Party Users

on how to use the Accused Products in a manner that infringes at least claim 1 of the '887 Patent. (*See id.*; *see also* https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-; https://postscript.io/list-growth; https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You; https://help.postscript.io/hc/en-us/articles/4406430094107-Grow-Your-List-with-Popups#Why-You-Want-to-Enable-Your-Postscript-Popups; https://postscript.io/case-study-nomatic.) Defendant further provides customer service and technical support to users, subscribers, and purchasers of the Accused Products and corresponding systems and services, which directs and encourages customers to perform certain actions that deploy and use the Accused Products in an infringing manner. (*Id.*)

114.     Further, on information and belief, Defendant induces infringement by Third Party Users of the Accused Products by requiring each user to enter into one or more contractual agreements with Defendant including an End User License Agreement, which obligates each customer to perform certain actions in order to use the Accused Products and to use the Accused Products in a manner that infringes at least claim 1 of the '887 Patent. In order to receive the benefit of Defendant and/or its partner's continued technical support and their specialized knowledge and guidance of the operability of the Accused Products, each customer must continue to use the Accused Products in a way that infringes at least claim 1 of the '887 Patent.

115.     On information and belief, Defendant also contributes to the infringement of the Accused Products by Third Party Users by providing within the United States or importing the Accused Products into the United States, which are for use in practicing, and under normal operation practice, the claimed invention in an infringing manner, constituting a material part of the claimed invention, and not a staple article or commodity of commerce suitable for substantial

non-infringing uses.  For example, the Accused Products and the example functionality described above have no substantial non-infringing uses but are specifically designed to practice at least claim 1 of the '887 Patent.

116.    The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose.  For example, without providing an integration tag configured to be served with a webpage hosted by the client server as claimed, defining and sending a URI as claimed, or automatically populating a custom message as claimed, the Accused Products could not perform the click-to-text services offered and promoted by Postscript.  These features and functionalities are continually running when the Accused Products are in use and, on information and belief, cannot be removed or disabled (or, if they could, the system would no longer suitably function for its intended purpose).  Moreover, for the same reasons, without practicing each limitation of at least claim 1 of the '887 Patent, as described above, these features and functionalities could not be performed.  In other words, on information and belief, when each of the Accused Products operates, the features and functionalities described above are provided and performed.  Moreover, when the features and functionalities of the Accused Products described above are operated, they perform each limitation of at least claim 1 of the '887 Patent. The Accused Products (and the specific features and functionalities described herein) are designed and intended specifically to practice and perform each of the limitations of at least claim 1 of the '887 Patent, and do not have any other purpose.

117.    In addition, the products, systems, modules, and methods provided by Defendant constitute a material part of the invention—indeed, it provides all the components, modules, and features that perform each of the limitations of at least claim 1 of the '887 Patent.  For example,

the Accused Products and corresponding functionality constitute a material part of the inventions claimed because such analysis is integral to the capabilities and processes identified above, as required by at least claim 1 of the '887 Patent.  None of the Accused Products are staple goods— they are sophisticated and customized mobile-signup and mobile-messaging products and platforms.

118.   Plaintiff has suffered and will continue to suffer damages, including lost profits, as a result of Defendant's infringement of the '887 Patent.  Defendant is therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendant's infringement, but no less than a reasonable royalty.

119.   Since on or about November 1, 2022, Attentive has complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Attentive may recover pre-suit damages for Defendant's infringement of the '887 Patent.  (*See* https://www.attentive.com/patents.)

120.   Plaintiff will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendant, its agents, employees, representatives, and all others acting in concert with Defendant, from infringing the '887 Patent.  Plaintiff has lost potential customers, business opportunities, and goodwill in the community as a result of Defendant's infringement. (*See, e.g.*, https://postscript.io/case-study-nomatic.)  Plaintiff will continue to suffer these harms absent an injunction.

121.   Defendant's infringement of the '887 Patent is knowing and willful.  Defendant had knowledge of the '887 Patent at least as of September 21, 2022, when Defendant cited the '887 Patent in an Information Disclosure Statement submitted to the USPTO in connection with Application No. 17/552,615.  Further, Plaintiff provided affirmative notice of the '887 Patent to Defendant by sending a letter on January 24, 2023, informing Defendant of its infringement of the

'887 Patent.  At minimum, Defendant acquired actual knowledge of the '887 Patent and its infringement thereof when Plaintiff filed this lawsuit.  Additionally, Defendant acquired constructive knowledge of the '887 Patent from at least when Plaintiff virtually marked its products by providing notice of the '887 Patent on its website.  (*See* https://www.attentive.com/patents.)

122.    On information and belief, despite Defendant's knowledge of the '887 Patent and Plaintiff's patented technology, Defendant made the deliberate decision to sell products and services that they knew infringe the patent.  Defendant's continued infringement of the '887 Patent with knowledge of the '887 Patent constitutes willful infringement.

## SECOND CAUSE OF ACTION
## (INFRINGEMENT OF THE '897 PATENT)

123.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

124.    Postscript has infringed and continues to infringe one or more claims of the '897 Patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court.  The Accused Products, including features such as Postscript's SMS Marketing Platform and Postscript's other offerings and services that integrate with Postscript's SMS Marketing Platform, at least when used for their ordinary and customary purposes, practice each element of at least claim 15 of the '897 Patent as described below.

125.    For example, claim 15 of the '897 Patent recites:

15.    A non-transitory processor-readable medium storing code configured to be executed by a processor, the code including instructions configured to cause the processor to:

send, from at least one server and to a mobile device requesting and/or a webpage, means for displaying an invitation to subscribe to a text messaging subscription service via a first application;

send, from the at least one server and to the mobile device, means for causing (1) the mobile device to transition from the first application to a second application different from the first application in response to the mobile device detecting a first interaction with the invitation, the second application being a messaging application, and (2) the second application to automatically populate a custom text message based on the user data;

receive, from the mobile device, the custom text message in response to the mobile device detecting a second interaction with the messaging application; and

deliver an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message.

126.    The Accused Products practice and embody each element of claim 15 of the '897 Patent.

127.    To the extent the preamble is construed to be limiting, the Accused Products comprise "*[a] non-transitory processor-readable medium storing code configured to be executed by a processor.*"   The Accused Products, by nature, are software applications.   As software applications, the Accused Products are designed to be stored on at least one non-transitory processor-readable medium storing code configured to be executed by a processor.

128.    Further, the Accused Products provide SMS marketing services, and therefore the applications and programs associated with the Accused Products are intended and designed to be executed by a processor of a click-to-text server.

129.    On information and belief, Postscript owns, operates, and/or maintains at least one click-to-text server with a processor on which the Accused Products operate.

130.    On information and belief, Postscript owns, operates, and/or maintains a server capable of operating as a click-to-text on which the Accused Products operate located in Mountain View, CA, having an internet protocol ("IP") address of 34.111.8.32.

131.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, Automatic Data Collection:

- **Automatic Data Collection**. We may collect certain information automatically when you use our Services, such as your Internet protocol (IP) address, user settings, MAC address, cookie identifiers, mobile carrier, mobile advertising and other unique identifiers, browser or device information, location information (including approximate location derived from IP address), and Internet service provider. We may also automatically collect information regarding your use of our Services, such as pages that you visit before, during and after using our Services, information about the links you click, the types of content you interact with, the frequency and duration of your activities, and other information about how you use our Services.

(https://postscript.io/privacy.)   Such information includes, for example, user settings, MAC addresses, mobile advertising and other unique identifiers, browser or device information, location information, as well as information about the links clicked on, types of content interacted with, and other information about how the Accused Products are used.  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

132.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, cookies, pixel tags/web beacons, and other technologies:

- **Cookies, Pixel Tags/Web Beacons, and Other Technologies**. We, as well as third parties that provide content, advertising, or other functionality on our Services, may use cookies, pixel tags, local storage, and other technologies ("**Technologies**") to automatically collect information through your use of our Services.

(*Id.*)   On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

133.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, cookies:

- **Cookies**. Cookies are small text files placed in device browsers that store preferences and facilitate and enhance your experience.

(*Id.*)  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

134.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, pixel tags/web beacons:

- **Pixel Tags/Web Beacons**. A pixel tag (also known as a web beacon) is a piece of code embedded in our Services that collects information about engagement on our Services. The use of a pixel tag allows us to record, for example, that a user has visited a particular web page or clicked on a particular advertisement. We may also include web beacons in e-mails to understand whether messages have been opened, acted on, or forwarded.

(*Id.*)  On information and belief, the pixel tags/web beacons are pieces of software code that collect information about the use of the Accused Products.  Such information includes, for example, information on whether a user visited a particular web page or clicked on a particular advertisement, as well as information associated with whether messages have been opened, acted on, or forwarded.  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.

135.    On information and belief, the Accused Products send/receive and/or cause a third-party provider to send/receive text messages.  For example, Postscript instructs and encourages its customers to design, create, and publish a custom link or button associated with a popup, that when selected will cause a mobile device user to receive a custom text message:

- **Two Touch.** Changes the phone input field to a button. When subscribers tap the button, it launches their messaging app with an auto-generated message they must send in order to verify their phone number.
  - **Keyword.** If you enable two-touch, you will need to pick a keyword to associate with the opt-in. You can create a new keyword or choose an existing one.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

136.    The Accused Products "*send, from at least one server and to a mobile device requesting and/or a webpage, means for displaying an invitation to subscribe to a text messaging subscription service via a first application*."   For example, Postscript and its customers use the Accused Products to send an invitation as claimed.   Postscript instructs and encourages its customers to use the Accused Products to create mobile popups to "collect SMS and email subscribers" using "mobile two-touch" signup to "provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club":

## Why a Postscript Mobile Popup Benefits You

- Easily (and compliantly) collect SMS and email subscribers.
- Design your popup to match the look and feel of your brand.
- Use your popup to provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.
- Enable mobile two-touch which allows subscribers to opt-in with just a tap.
- Add engaging background images or GIFs to catch the attention of your website visitors.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

137.    On information and belief, the popups created by the Accused Products comprise an invitation as claimed.   For example, Postscript instructs and encourages its customers to create a mobile popup using the Accused Products:

**Desktop and mobile popups** —

Collect both phone numbers and emails. Customize the design to match your brand, choose the type of incentive you want to offer, and select when and where on your site you want your popups to appear.

(https://postscript.io/list-growth.)

138.    Further, Postscript instructs and encourages its customers to implement the Accused Products using popups to offer discounts, giveaways, contests, clubs, and/or memberships in connection with a "two touch" sign-up process as follows:

# Why a Postscript Mobile Popup Benefits You

- Easily (and compliantly) collect SMS and email subscribers.
- Design your popup to match the look and feel of your brand.
- Use your popup to provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.
- Enable mobile two-touch which allows subscribers to opt-in with just a tap.
- Add engaging background images or GIFs to catch the attention of your website visitors.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

139.     Furthermore, the Accused Products require a button with which to allow interaction from the mobile device user:



(*Id.*)

140.     Further, the Accused Products send means for displaying the invitation as claimed. For example, the popups of the Accused Products collect user data, such as phone numbers and/or email addresses:

> • **Collection.** You have the option to collect only phone numbers, or phone and email. For phone and email, you can choose which popup page displays first and second. We recommend you set the phone page to display first.

(*Id.*)

141.     The Accused Products "*send, from the at least one server and to the mobile device, means for causing (1) the mobile device to transition from the first application to a second application different from the first application in response to the mobile device detecting a first*

*interaction with the invitation, the second application being a messaging application, and (2) the second application to automatically populate a custom text message based on the user data.*"

142.    For example, to implement the Accused Products, Postscript requires that its customers use a "keyword" associated with each subscription-based and/or promotional messaging opt-in popup:

(https://postscript.io/list-growth;    *see    also*    https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

143.    Further, the Accused Products utilize and comprise means for causing the mobile device to transition from the first application to a messaging application different from the first application in response to the mobile device detecting a first interaction with the invitation, and the second application automatically populating a custom text message based on the user data as claimed.  (*See, e.g.*, *id.*)

144.    For example, the popup of the Accused Products implement and comprise a button that, when tapped, launches a messaging application with an auto-generated message:

> • **Two Touch.** Changes the phone input field to a button. When subscribers tap the button, it launches their messaging app with an auto-generated message they must send in order to verify their phone number.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

145.    Further, the custom text message generated and utilized by the Accused Products are based on the user data.



(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

146.    For example, the Accused Products differentiate users based on the location of the user:



(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)  As the popup associated with the custom text message is based on the location of the user, the custom text message itself is necessarily based on the user data.

147.    Upon information and belief, when Postscript's Accused Products are implemented, data sent from the user's mobile device to one or more servers utilized by the Accused Products includes:

- User-Agent Information (e.g., mobile device and browser type / version);

- Mobile Device Platform (e.g., operating system (e.g., Android / iOS));

- Country (e.g., location of user / mobile device);

- Session_Id (e.g., a user identifier for the mobile device / platform);

- Shop_Id (e.g., internal company / brand identifier and/or market identifier (e.g., a Shopify identifier));

- Origin (e.g., a uniform resource locator ("URL) associated with the popup);

- Event Data (e.g., user interactions with the popup, such as an impression / click / tap);

- Server_Id (e.g., a unique identifier for tying a user back to the subscriber after the users sends the text message); and

- Email, if collected ahead of

- deep link or tap of SMS "Sign-up" button.

148.    Upon detecting an interaction with the messaging application, the mobile device sends the custom message to the server of the Accused Products:

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

149.    The Accused Products "*receive, from the mobile device, the custom text message in response to the mobile device detecting a second interaction with the messaging application*." Once a user of a mobile device interacts with the messaging application, the Accused Products receive the custom message at the server of the Accused Products.  As can be seen from the exemplary deployment of the Accused Products depicted below, the server receives the custom message and responds with an installment of the text messaging subscription service.

Two-Touch opt-in is a mobile-specific method by which a subscriber can opt into your SMS program. Just like the name suggests, this method only requires two touches on the subscriber's mobile device to opt in.

**The first touch:** Subscriber selects a call-to-action (CTA).

This CTA can be a **link**, **QR code**, or button on a **mobile popup**. When the subscriber selects the CTA, a pre-populated message will appear in the subscriber's native texting app. This message can be customized but needs to include your shop name and a **keyword**.

*In the example below, the pre-populated message is "Send this text to subscribe to JO+CO! (ref: JOCO15 ). The keyword is JOCO15.*

**The second touch:** Subscriber selects the "Send" button on their device.

Once the subscriber sends the pre-populated message, they will get the keyword reply that correlates to the "(ref: KEYWORD )" part of the pre-populated message.

*In the example below, the message that reads, "Thanks for subscribing. Here's your coupon for 15% off BABE15. Shop here: pscr.pt/2v08Yk. Valid online only." is the keyword reply for keyword: JOCO15 (Note: BABE15 is the* **coupon code**).






(https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-.)

150.    The Accused Products "*deliver an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message*." Once a user of a mobile device interacts with the messaging application, the Accused Products deliver an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message.  As can be seen from the images above,

-80-

the mobile device user receives an installment of the text messaging subscription service without receiving an opt-in communication after receiving the custom text message.

151.    In addition to the examples above, Postscript instructs its customers to "include the coupon or offer you promote in the popup" in the "keyword reply" for the custom keyword associated with the "Two Tap popup":



(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

152.    On information and belief, Postscript instructs and encourages its customers to deploy and implement the Accused Products in a manner that practices each limitation of at least claim 15 of the '897 Patent, as evidenced by the actual deployments of the Accused Products depicted below:

























153.    Each claim in the '897 Patent recites an independent invention.  Neither claim 15, described above, nor any other individual claim is representative of all claims in the '897 Patent.

154.    Defendant had knowledge of the '897 Patent at least as of September 21, 2022, when Defendant cited the '897 Patent in an Information Disclosure Statement submitted to the USPTO in connection with Application No. 17/552,615.

155.    Defendant has also had constructive notice of the '897 Patent since on or about November 1, 2022, as a result of Attentive's compliance with the requirements of 35 U.S.C. § 287, to the extent necessary.  (*See* https://www.attentive.com/patents.)

156.    Defendant is also aware of the '897 Patent at least as of the filing of this Complaint.  On information and belief, Defendant's infringing actions will continue after the filing of this Complaint.

157.    Defendant has knowledge of the '897 Patent and of the specific conduct that constitutes infringement of the '897 Patent at least based on the filing of this Complaint and, on information and belief, will continue to engage in the infringing activity, including by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality, and by engaging in activities that constitute inducing infringement and contributory infringement as described below.

158.    Defendant directly infringes at least claim 15 of the '897 Patent, either literally or under the doctrine of equivalents, by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality described above.  For example, on information and belief, Defendant's directly infringing activities in this District and elsewhere in the United States include at least making and using each limitation of at least claim 15 of the '897 Patent, as described above.  Defendant makes and uses the claimed inventions in

connection with at least the following activities involving the Accused Products (e.g., software and corresponding systems):  (1) operating and maintaining servers and data centers that process information; (2) employing the Accused Products in connection with, and to promote, its own products and services and/or the products and services of its affiliates, (3) using software that includes the Accused Products, (4) testing the operation of the Accused Products and corresponding systems, (5) collecting and gathering information and data, and (6) providing services to others including installation, maintenance, update, verification, processing, support, and other services.

159.    In addition, Defendant directly infringes at least claim 15 of the '897 Patent because it directs and controls the performance and operation of each limitation of at least claim 15 of the '897 Patent by others.  As an example, Defendant 1) directs and controls the performance and operation of the Accused Products or components thereof on customers', partners', and end users' devices, and 2) establishes the manner of the operation of the Accused Products.  Defendant further directs and controls by means that include contractual agreements such as its End User License Agreements, its continued monitoring, verification and access to the Accused Products, its continued collection of information from the Accused Products, its programming of the software used in the Accused Products, and/or its provision of information, data, and instructions that control the operation of the system (for example, updates to algorithms, further development, and other system and module code).

160.    Defendant has knowledge of the '897 Patent and of the specific allegations of infringement with respect to the asserted patent at least as of the filing date of this Complaint.

161.    On information and belief, Defendant has actively induced and is actively inducing infringement of at least claim 15 of the '897 Patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b).  Defendant's partners, customers, and end users (collectively, "Third Party Users") of the Accused Products and corresponding systems and services directly infringe at least by making and using the inventions of at least claim 15 of the '897 Patent, for example when they install, operate and use the Accused Products and corresponding systems.

162.    For example, on information and belief, Defendant encourages and induces Third Party Users to use the Accused Products in a manner that infringes at least claim 15 of the '897 Patent at least by offering, selling, licensing, and providing the Accused Products which infringe at least claim 15 of the '897 Patent when used, configured, installed, and/or operated by Third Party Users.  Defendant further induces infringement of at least claim 15 of the '897 Patent by Third Party Users by engaging in activities that include: 1) making its offerings and services available on its website, providing applications that allow users to access those offerings and services, widely advertising those offerings and services, and providing technical support and instructions to users, and 2) marketing, advertising, promotion, installation, support, and distribution activities involving the Accused Products, including its mobile-signup and mobile-messaging offerings and services in the United States; 3) recommending and selling the Accused Products and providing technical support for the installation, implementation, integration, and ongoing operation of the Accused Products; 4) providing installation, implementation, and integration of the Accused Products in addition to ensuring the Accused Products remain operational for each customer through ongoing technical support.  (*See, e.g.*, https://help.postscript.io/hc/en-us.)  For example, Defendant shares instructions, guides, and

manuals, which advertise and instruct Third Party Users on how to use the Accused Products in a manner that infringes at least claim 15 of the '897 Patent.   (*See id.*; *see also* https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-;

https://postscript.io/list-growth;        https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You;

https://help.postscript.io/hc/en-us/articles/4406430094107-Grow-Your-List-with-Popups#Why-You-Want-to-Enable-Your-Postscript-Popups;        https://postscript.io/case-study-nomatic.) Defendant further provides customer service and technical support to users, subscribers, and purchasers of the Accused Products and corresponding systems and services, which directs and encourages customers to perform certain actions that deploy and use the Accused Products in an infringing manner.  (*Id.*)

163.    Further, on information and belief, Defendant induces infringement by Third Party Users of the Accused Products by requiring each user to enter into one or more contractual agreements with Defendant including an End User License Agreement, which obligates each customer to perform certain actions in order to use the Accused Products and to use the Accused Products in a manner that infringes at least claim 15 of the '897 Patent.  In order to receive the benefit of Defendant and/or its partner's continued technical support and their specialized knowledge and guidance of the operability of the Accused Products, each customer must continue to use the Accused Products in a way that infringes at least claim 15 of the '897 Patent.

164.    On information and belief, Defendant also contributes to the infringement of the Accused Products by Third Party Users by providing within the United States or importing the Accused Products into the United States, which are for use in practicing, and under normal operation practice, the claimed invention in an infringing manner, constituting a material part of

the claimed invention, and not a staple article or commodity of commerce suitable for substantial non-infringing uses. For example, the Accused Products and the example functionality described above have no substantial non-infringing uses but are specifically designed to practice at least claim 15 of the '897 Patent.

165.    The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose. For example, without providing means for displaying an invitation to subscribe to a text messaging subscription service via a first application as claimed, means for causing the mobile device to transition from the first application to a second application different from the first application as claimed, or means for causing the second application to automatically populate a custom text message based on the user data as claimed, the Accused Products could not perform the click-to-text services offered and promoted by Postscript. These features and functionalities are continually running when the Accused Products are in use and, on information and belief, cannot be removed or disabled (or, if they could, the system would no longer suitably function for its intended purpose). Moreover, for the same reasons, without practicing each limitation of at least claim 15 of the '897 Patent, as described above, these features and functionalities could not be performed. In other words, on information and belief, when each of the Accused Products operates, the features and functionalities described above are provided and performed. Moreover, when the features and functionalities of the Accused Products described above are operated, they perform each limitation of at least claim 15 of the '897 Patent. The Accused Products (and the specific features and functionalities described herein) are designed and intended specifically to practice and perform each of the limitations of at least claim 15 of the '897 Patent, and do not have any other purpose.

166.    In addition, the products, systems, modules, and methods provided by Defendant constitute a material part of the invention—indeed, it provides all the components, modules, and features that perform each of the limitations of at least claim 15 of the '897 Patent.  For example, the Accused Products and corresponding functionality constitute a material part of the inventions claimed because such analysis is integral to the capabilities and processes identified above, as required by at least claim 15 of the '897 Patent.  None of the Accused Products are staple goods— they are sophisticated and customized mobile-signup and mobile-messaging products and platforms.

167.    Plaintiff has suffered and will continue to suffer damages, including lost profits, as a result of Defendant's infringement of the '897 Patent.  Defendant is therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendant's infringement, but no less than a reasonable royalty.

168.    Since on or about November 1, 2022, Attentive has complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Attentive may recover pre-suit damages for Defendant's infringement of the '897 Patent.  (*See* https://www.attentive.com/patents.)

169.    Plaintiff will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendant, its agents, employees, representatives, and all others acting in concert with Defendant, from infringing the '897 Patent.  Plaintiff has lost potential customers, business opportunities, and goodwill in the community as a result of Defendant's infringement. (*See, e.g.*, https://postscript.io/case-study-nomatic.)  Plaintiff will continue to suffer these harms absent an injunction.

170.    Defendant's infringement of the '897 Patent is knowing and willful.  Defendant had knowledge of the '897 Patent at least as of September 21, 2022, when Defendant cited the '897

Patent in an Information Disclosure Statement submitted to the USPTO in connection with Application No. 17/552,615.  Further, Plaintiff provided affirmative notice of the '897 Patent to Defendant by sending a letter on January 24, 2023, informing Defendant of its infringement of the '897 Patent.  At minimum, Defendant acquired actual knowledge of the '897 Patent and its infringement thereof when Plaintiff filed this lawsuit.  Additionally, Defendant acquired constructive knowledge of the '897 Patent from at least when Plaintiff virtually marked its products by providing notice of the '897 Patent on its website.  (*See* https://www.attentive.com/patents.)

171.    On information and belief, despite Defendant's knowledge of the '897 Patent and Plaintiff's patented technology, Defendant made the deliberate decision to sell products and services that they knew infringe the patent.  Defendant's continued infringement of the '897 Patent with knowledge of the '897 Patent constitutes willful infringement.

## THIRD CAUSE OF ACTION
## (INFRINGEMENT OF THE '074 PATENT)

172.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

173.    Postscript has infringed and continues to infringe one or more claims of the '074 Patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court.  The Accused Products, including features such as Postscript's SMS Marketing Platform and Postscript's other offerings and services that integrate with Postscript's SMS Marketing Platform, at least when used for their ordinary and customary purposes, practice each element of at least claim 23 of the '074 Patent as described below.

174.    For example, claim 23 of the '074 Patent recites:

23.    At least one non-transitory processor-readable medium storing code configured to be executed by at least one processor of at least one server, the code including instructions configured to cause the at least one server to:

define an integration tag configured to be included in a webpage such that the integration tag executes when a web browser application of a mobile device accesses the webpage;

receive, from the mobile device and in response to the integration tag executing at the mobile device, (1) a mobile device identifier that identifies the mobile device, and (2) a request to retrieve an identifier associated with at least one of a product or a service presented via the webpage;

send, to the mobile device and in response to receiving the mobile device identifier and the request to retrieve the identifier, a first signal configured to cause a frame to be displayed with the webpage via the web browser application, the frame including a promotional message associated with joining a subscription list;

receive, from the mobile device an indication of a first user interaction with the promotional message;

send a uniform resource identifier (URI) to the mobile device that deeplinks to and causes the mobile device to automatically (1) switch from rendering the web browser application to rendering a text messaging application and (2) generate a text message with a pre-populated phone number and a pre-populated message body containing a request to join the subscription list in response to at least one of (1) the integration tag executing or (2) the indication of the first user interaction;

receive the text message including the pre-populated message body to the pre-populated phone number in response to a second user interaction with the text messaging application;

subscribe the mobile device to the subscription list based on receiving the text message; and

deliver an installment of a subscription associated with the subscription list without receiving an opt-in communication after receiving the text message containing the pre-populated message body.

175.    The Accused Products practice and embody each element of claim 23 of the '074 Patent.

176.    To the extent the preamble is construed to be limiting, the Accused Products comprise "*[a]t least one non-transitory processor-readable medium storing code configured to be*

*executed by a processor of at least one server.*"   The Accused Products, by nature, are software applications.   As software applications, the Accused Products are designed to be implemented using at least one non-transitory processor-readable medium storing code configured to be executed by a processor.

177.   Further, the Accused Products provide SMS marketing services, and therefore the applications and programs associated with the Accused Products are intended and designed to be executed by a processor of at least one server.

178.   On information and belief, Postscript owns, operates, and/or maintains at least one server with a processor on which the Accused Products operate.

179.   On information and belief, Postscript owns, operates, and/or maintains a server on which the Accused Products operate located in Mountain View, CA, having an internet protocol ("IP") address of 34.111.8.32.

180.   The Accused Products "*define an integration tag configured to be included in a webpage such that the integration tag executes when a web browser application of a mobile device accesses the webpage.*"   For example, Postscript and its customers use the Accused Products to define an integration tag configured to be included in a webpage as claimed.   Postscript instructs and encourages its customers to use the Accused Products to create mobile popups to "collect SMS and email subscribers" using "mobile two-touch" signup to "provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club":

**Why a Postscript Mobile Popup Benefits You**

- Easily (and compliantly) collect SMS and email subscribers.
- Design your popup to match the look and feel of your brand.
- Use your popup to provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.
- Enable mobile two-touch which allows subscribers to opt-in with just a tap.
- Add engaging background images or GIFs to catch the attention of your website visitors.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

181.    On information and belief, the popups created by the Accused Products comprise integration tags as claimed.  For example, Postscript instructs and encourages its customers to create a mobile popup using the Accused Products:

**Desktop and mobile popups**                    —

Collect both phone numbers and emails. Customize the design to match your brand, choose the type of incentive you want to offer, and select when and where on your site you want your popups to appear.

(https://postscript.io/list-growth.)

182.    The Accused Products "*receive, from the mobile device and in response to the integration tag executing at the mobile device, (1) a mobile device identifier that identifies the mobile device, and (2) a request to retrieve an identifier associated with at least one of a product or a service presented via the webpage*."

183.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, Automatic Data Collection:

- **Automatic Data Collection**. We may collect certain information automatically when you use our Services, such as your Internet protocol (IP) address, user settings, MAC address, cookie identifiers, mobile carrier, mobile advertising and other unique identifiers, browser or device information, location information (including approximate location derived from IP address), and Internet service provider. We may also automatically collect information regarding your use of our Services, such as pages that you visit before, during and after using our Services, information about the links you click, the types of content you interact with, the frequency and duration of your activities, and other information about how you use our Services.

(https://postscript.io/privacy.)   Such information includes, for example, the IP address of the mobile device, user settings, MAC address, mobile advertising and other unique identifiers, browser or device information, location information, as well as information about the links clicked on, types of content interacted with, and other information about how the Accused Products are used.   On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.   On information and belief, the Accused Products receive a mobile device identifier and/or a request to retrieve an identifier associated with at least one of a product or a service presented via the webpage as claimed as a result of Automatic Data Collection.

184.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, cookies, pixel tags/web beacons, and other technologies:

- **Cookies, Pixel Tags/Web Beacons, and Other Technologies**. We, as well as third parties that provide content, advertising, or other functionality on our Services, may use cookies, pixel tags, local storage, and other technologies ("**Technologies**") to automatically collect information through your use of our Services.

(*Id.*)  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.  On information and belief, the Accused Products receive a mobile device identifier and/or a request to retrieve an identifier associated with at least one of a product or a service presented via the webpage as claimed as a result of the use of cookies, pixel tags/web beacons, and other technologies.

185.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, cookies:

- **Cookies**. Cookies are small text files placed in device browsers that store preferences and facilitate and enhance your experience.

(*Id.*)  On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript.  On information and belief, the Accused Products receive a mobile device identifier and/or a request to retrieve an identifier associated with at least one of a product or a service presented via the webpage as claimed as a result of the use of cookies.

186.    On information and belief, Postscript collects information associated with users of the Accused Products using, for example, pixel tags/web beacons:

- **Pixel Tags/Web Beacons**. A pixel tag (also known as a web beacon) is a piece of code embedded in our Services that collects information about engagement on our Services. The use of a pixel tag allows us to record, for example, that a user has visited a particular web page or clicked on a particular advertisement. We may also include web beacons in e-mails to understand whether messages have been opened, acted on, or forwarded.

(*Id.*)  On information and belief, the pixel tags/web beacons are pieces of software code that collect information about the use of the Accused Products.  Such information includes, for example,

information on whether a user visited a particular web page or clicked on a particular advertisement, as well as information associated with whether messages have been opened, acted on, or forwarded. On information and belief, such collected information is transmitted to a server owned, operated, and/or controlled by Postscript. On information and belief, the Accused Products receive a mobile device identifier and/or a request to retrieve an identifier associated with at least one of a product or a service presented via the webpage as claimed as a result of the use of Pixel Tags and/or Web Beacons.

187.    On information and belief, the integration tag of the Accused Products is configured to cause a mobile device loading the webpage to send a mobile device identifier to the Accused Products as claimed. For example, the popups of the Accused Products collect phone numbers and/or email addresses:

> • **Collection.** You have the option to collect only phone numbers, or phone and email. For phone and email, you can choose which popup page displays first and second. We recommend you set the phone page to display first.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

188.    Upon information and belief, when Postscript's Accused Products are implemented, data sent from the user's mobile device to one or more servers utilized by the Accused Products includes a mobile device identifier and/or a request to retrieve an identifier associated with at least one of a product or a service presented via the webpage as claimed:

- User-Agent Information (e.g., mobile device and browser type / version);

- Mobile Device Platform (e.g., operating system (e.g., Android / iOS));

- Country (e.g., location of user / mobile device);

- Session_Id (e.g., a user identifier for the mobile device / platform);

- Shop_Id (e.g., internal company / brand identifier and/or market identifier (e.g., a Shopify identifier));

- Origin (e.g., a uniform resource locator ("URL) associated with the popup);

- Event Data (e.g., user interactions with the popup, such as an impression / click / tap);

- Server_Id (e.g., a unique identifier for tying a user back to the subscriber after the users sends the text message); and

- Email, if collected ahead of deep link or tap of SMS "Sign-up" button.

189.   On information and belief, the Accused Products "*send, to the mobile device and in response to receiving the mobile device identifier and the request to retrieve the identifier, a first signal configured to cause a frame to be displayed with the webpage via the web browser application, the frame including a promotional message associated with joining a subscription list.*"  On information and belief, the Accused Products utilize and send a first signal configured to cause a frame to be displayed with the webpage via the web browser application.  For example, Postscript and its customers use the Accused Products to cause a frame including a promotional message, such as a mobile popup, to be displayed with the webpage via the web browser application as claimed.

190.   Postscript instructs and encourages its customers to use the Accused Products to create mobile popups to "collect SMS and email subscribers" using "mobile two-touch" signup to "provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club":

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

191.    For example, Postscript instructs and encourages its customers to use the Accused Products to create mobile popups that include promotional messages associated with joining a subscription list:

(https://postscript.io/list-growth.)

192.    Further, Postscript instructs and encourages its customers to implement the Accused Products using popups to offer discounts, giveaways, contests, clubs, and/or memberships in connection with a "two touch" sign-up process as follows:

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

193.    On information and belief, the Accused Products "*receive, from the mobile device an indication of a first user interaction with the promotional message*."  For example, Postscript instructs and encourages its customers to design, create, and publish a custom link or button associated with a popup, that when selected will cause a mobile device user to generate a text message with pre-populated information:

- **Two Touch.** Changes the phone input field to a button. When subscribers tap the button, it launches their messaging app with an auto-generated message they must send in order to verify their phone number.

  ○ **Keyword.** If you enable two-touch, you will need to pick a keyword to associate with the opt-in. You can **create a new keyword** or choose an existing one.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)  On information and belief, when a user of a mobile device interacts with the custom link or button associated with a popup of the Accused Products, the indication of interaction is received by the Accused Products.

194.    Furthermore, the Accused Products require a button with which to allow interaction from the mobile device user:



(*Id.*)  On information and belief, when a user of a mobile device interacts with button associated with a popup of the Accused Products, the indication of interaction is received by the Accused Products.

195.    The Accused Products "*send a uniform resource identifier (URI) to the mobile device that deeplinks to and causes the mobile device to automatically (1) switch from rendering the web browser application to rendering a text messaging application and (2) generate a text message with a pre-populated phone number and a pre-populated message body containing a request to join the subscription list in response to at least one of (1) the integration tag executing or (2) the indication of the first user interaction*."

196.    On information and belief, the Accused Products define and send a URI as claimed. For example, to implement the Accused Products, Postscript requires that its customers use a "keyword" associated with each subscription-based and/or promotional messaging opt-in popup:

(https://postscript.io/list-growth;    *see    also*    https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

197.    Further, the Accused Products utilize and comprise a URI that, when interacted with, deeplinks and causes the mobile device to automatically switch from rendering the web browser application to rendering a text messaging application as claimed.  When the popup created by and associated with the Accused Products is interacted with, the URI deeplinks to a text

messaging application different from web browser application and causes the mobile device to (1) switch from rendering the web browser application to rendering a text messaging application and (2) generate a text message with a pre-populated phone number and a pre-populated message body containing a request to join the subscription list as claimed.  (*See, e.g.*, *id.*)

198.    For example, the popup of the Accused Products implement and comprise a button that, when tapped, launches a messaging application with an auto-generated message:

> • **Two Touch.** Changes the phone input field to a button. When subscribers tap the button, it launches their messaging app with an auto-generated message they must send in order to verify their phone number.

(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

199.    On information and belief, the Accused Products utilize and generate a text message with a pre-populated phone number and a pre-populated message body containing a request to join the subscription list as claimed.



(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

     200.    Further, the Accused Products utilize and generate a text message with a pre-populated phone number and a pre-populated message body containing a request to join the subscription list in response to the integration tag executing and/or the indication of the first user interaction as claimed:

## Why a Postscript Mobile Popup Benefits You

- Easily (and compliantly) collect SMS and email subscribers.

- Design your popup to match the look and feel of your brand.

- Use your popup to provide discounts, promote a giveaway or contest, or invite subscribers to join your exclusive VIP club.

- Enable mobile two-touch which allows subscribers to opt-in with just a tap.

- Add engaging background images or GIFs to catch the attention of your website visitors.

(*Id.*)

201.    For example, in response to a user of a mobile device interacting with the promotional message, the Accused Products utilize and generate a text message with a pre-populated phone number and a pre-populated message body containing a request to join the subscription list:

Two-Touch opt-in is a mobile-specific method by which a subscriber can opt into your SMS program. Just like the name suggests, this method only requires two touches on the subscriber's mobile device to opt in.

**The first touch:** Subscriber selects a call-to-action (CTA).

This CTA can be a **link**, **QR code**, or button on a **mobile popup**. When the subscriber selects the CTA, a pre-populated message will appear in the subscriber's native texting app. This message can be customized but needs to include your shop name and a **keyword**.

*In the example below, the pre-populated message is "Send this text to subscribe to JO+CO! (ref: JOCO15 ). The keyword is JOCO15.*



(https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-.)

202.    The Accused Products "*receive the text message including the pre-populated message body to the pre-populated phone number in response to a second user interaction with the text messaging application.*"   Once a user of a mobile device interacts with the messaging application, the Accused Products receive the text message as claimed.   As can be seen from the

exemplary deployment of the Accused Products depicted below, the click-to-text server receives

the custom message and responds with a promotional message:

**The second touch:** Subscriber selects the "Send" button on their device.

Once the subscriber sends the pre-populated message, they will get the keyword reply that correlates to the "(ref: KEYWORD )" part of the pre-populated message.

*In the example below, the message that reads, "Thanks for subscribing. Here's your coupon for 15% off BABE15. Shop here: pscr.pt/2v08Yk. Valid online only." is the keyword reply for keyword: JOCO15 (Note: BABE15 is the* **coupon code**).



(https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-.)

203.    The Accused Products "*subscribe the mobile device to the subscription list based on receiving the text message.*"  Once a user of a mobile device interacts with the messaging application, the Accused Products subscribe the mobile device to the subscription list based on receiving the text message, as can be seen from the images above.

204.    The Accused Products "*deliver an installment of a subscription associated with the subscription list without receiving an opt-in communication after receiving the text message containing the pre-populated message body*."  As can be seen from the images above, the Accused Products deliver an installment of a subscription associated with the subscription list without receiving an opt-in communication after receiving the text message containing the pre-populated message body.

205.    In addition to the examples above, Postscript instructs its customers to "include the coupon or offer you promote in the popup" in the "keyword reply" for the custom keyword associated with the "Two Tap popup":



(https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You.)

206.    On information and belief, Postscript instructs and encourages its customers to deploy and implement the Accused Products in a manner that practices each limitation of at least claim 23 of the '074 Patent, as evidenced by the actual deployments of the Accused Products depicted below:



























207.    Each claim in the '074 Patent recites an independent invention.  Neither claim 23, described above, nor any other individual claim is representative of all claims in the '074 Patent.

208.    Defendant has had constructive notice of the '074 Patent since on or about January 11, 2023, as a result of Attentive's compliance with the requirements of 35 U.S.C. § 287, to the extent necessary.  (*See* https://www.attentive.com/patents.)

209.    Defendant is also aware of the '074 Patent at least as of the filing of this Complaint. On information and belief, Defendant's infringing actions will continue after the filing of this Complaint.

210.    Defendant has knowledge of the '074 Patent and of the specific conduct that constitutes infringement of the '074 Patent at least based on the filing of this Complaint and, on information and belief, will continue to engage in the infringing activity, including by selling, making, using, providing, configuring, servicing, and installing the Accused Products and

performing the accused functionality, and by engaging in activities that constitute inducing infringement and contributory infringement as described below.

211. Defendant directly infringes at least claim 23 of the '074 Patent, either literally or under the doctrine of equivalents, by selling, making, using, providing, configuring, servicing, and installing the Accused Products and performing the accused functionality described above. For example, on information and belief, Defendant's directly infringing activities in this District and elsewhere in the United States include at least making and using each limitation of at least claim 23 of the '074 Patent, as described above. Defendant makes and uses the claimed inventions in connection with at least the following activities involving the Accused Products (e.g., software and corresponding systems): (1) operating and maintaining servers and data centers that process information; (2) employing the Accused Products in connection with, and to promote, its own products and services and/or the products and services of its affiliates, (3) using software that includes the Accused Products, (4) testing the operation of the Accused Products and corresponding systems, (5) collecting and gathering information and data, and (6) providing services to others including installation, maintenance, update, verification, processing, support, and other services.

212. In addition, Defendant directly infringes at least claim 23 of the '074 Patent because it directs and controls the performance and operation of each limitation of at least claim 23 of the '074 Patent by others. As an example, Defendant 1) directs and controls the performance and operation of the Accused Products or components thereof on customers', partners', and end users' devices, and 2) establishes the manner of the operation of the Accused Products. Defendant further directs and controls by means that include contractual agreements such as its End User License Agreements, its continued monitoring, verification and access to the Accused Products, its

continued collection of information from the Accused Products, its programming of the software used in the Accused Products, and/or its provision of information, data, and instructions that control the operation of the system (for example, updates to algorithms, further development, and other system and module code).

213.     Defendant has knowledge of the '074 Patent and of the specific allegations of infringement with respect to the asserted patent at least as of the filing date of this Complaint.

214.     On information and belief, Defendant is actively inducing infringement of at least claim 23 of the '074 Patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b).  Defendant's partners, customers, and end users (collectively, "Third Party Users") of the Accused Products and corresponding systems and services directly infringe at least by making and using the inventions of at least claim 23 of the '074 Patent, for example when they install, operate and use the Accused Products and corresponding systems.

215.     For example, on information and belief, Defendant encourages and induces Third Party Users to use the Accused Products in a manner that infringes at least claim 23 of the '074 Patent at least by offering, selling, licensing, and providing the Accused Products which infringe at least claim 23 of the '074 Patent when used, configured, installed, and/or operated by Third Party Users.  Defendant further induces infringement of at least claim 23 of the '074 Patent by Third Party Users by engaging in activities that include: 1) making its offerings and services available on its website, providing applications that allow users to access those offerings and services, widely advertising those offerings and services, and providing technical support and instructions to users, and 2) marketing, advertising, promotion, installation, support, and distribution activities involving the Accused Products, including its mobile-signup and mobile-

messaging offerings and services in the United States; 3) recommending and selling the Accused Products and providing technical support for the installation, implementation, integration, and ongoing operation of the Accused Products; 4) providing installation, implementation, and integration of the Accused Products in addition to ensuring the Accused Products remain operational for each customer through ongoing technical support. (*See, e.g.*, https://help.postscript.io/hc/en-us.)   For example, Defendant shares instructions, guides, and manuals, which advertise and instruct Third Party Users on how to use the Accused Products in a manner that infringes at least claim 23 of the '074 Patent.   (*See id.*; *see also* https://help.postscript.io/hc/en-us/articles/7601350876955-What-is-Two-Touch-opt-in-; https://postscript.io/list-growth;        https://help.postscript.io/hc/en-us/articles/1260804681389-Create-a-Postscript-Mobile-Popup#Why-a-Postscript-Mobile-Popup-Benefits-You; https://help.postscript.io/hc/en-us/articles/4406430094107-Grow-Your-List-with-Popups#Why-You-Want-to-Enable-Your-Postscript-Popups;        https://postscript.io/case-study-nomatic.) Defendant further provides customer service and technical support to users, subscribers, and purchasers of the Accused Products and corresponding systems and services, which directs and encourages customers to perform certain actions that deploy and use the Accused Products in an infringing manner.  (*Id.*)

216.    Further, on information and belief, Defendant induces infringement by Third Party Users of the Accused Products by requiring each user to enter into one or more contractual agreements with Defendant including an End User License Agreement, which obligates each customer to perform certain actions in order to use the Accused Products and to use the Accused Products in a manner that infringes at least claim 23 of the '074 Patent.  In order to receive the benefit of Defendant and/or its partner's continued technical support and their specialized

knowledge and guidance of the operability of the Accused Products, each customer must continue to use the Accused Products in a way that infringes at least claim 23 of the '074 Patent.

217.    On information and belief, Defendant also contributes to the infringement of the Accused Products by Third Party Users by providing within the United States or importing the Accused Products into the United States, which are for use in practicing, and under normal operation practice, the claimed invention in an infringing manner, constituting a material part of the claimed invention, and not a staple article or commodity of commerce suitable for substantial non-infringing uses.  For example, the Accused Products and the example functionality described above have no substantial non-infringing uses but are specifically designed to practice at least claim 23 of the '074 Patent.

218.    The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose.  For example, without providing an integration tag configured to be included in a webpage as claimed, sending a URI as claimed, or automatically switching applications and generating a text message with pre-populated information as claimed, the Accused Products could not perform the click-to-text services offered and promoted by Postscript.  These features and functionalities are continually running when the Accused Products are in use and, on information and belief, cannot be removed or disabled (or, if they could, the system would no longer suitably function for its intended purpose).  Moreover, for the same reasons, without practicing each limitation of at least claim 23 of the '074 Patent, as described above, these features and functionalities could not be performed.  In other words, on information and belief, when each of the Accused Products operates, the features and functionalities described above are provided and performed.  Moreover, when the features and functionalities of the

Accused Products described above are operated, they perform each limitation of at least claim 23 of the '074 Patent.  The Accused Products (and the specific features and functionalities described herein) are designed and intended specifically to practice and perform each of the limitations of at least claim 23 of the '074 Patent, and do not have any other purpose.

219.    In addition, the products, systems, modules, and methods provided by Defendant constitute a material part of the invention—indeed, it provides all the components, modules, and features that perform each of the limitations of at least claim 23 of the '074 Patent.  For example, the Accused Products and corresponding functionality constitute a material part of the inventions claimed because such analysis is integral to the capabilities and processes identified above, as required by at least claim 23 of the '074 Patent.  None of the Accused Products are staple goods— they are sophisticated and customized mobile-signup and mobile-messaging products and platforms.

220.    Plaintiff has suffered and will continue to suffer damages, including lost profits, as a result of Defendant's infringement of the '074 Patent.  Defendant is therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendant's infringement, but no less than a reasonable royalty.

221.    Since on or about January 11, 2023, Attentive has complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Attentive may recover pre-suit damages for Defendant's infringement of the '074 Patent.  (*See* https://www.attentive.com/patents.)

222.    Plaintiff will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendant, its agents, employees, representatives, and all others acting in concert with Defendant, from infringing the '074 Patent.  Plaintiff has lost potential customers, business opportunities, and goodwill in the community as a result of Defendant's infringement.

(*See, e.g.*, https://postscript.io/case-study-nomatic.)  Plaintiff will continue to suffer these harms absent an injunction.

223.    Defendant's infringement of the '074 Patent is knowing and willful.  Further, Plaintiff provided affirmative notice of the '074 Patent to Defendant by sending a letter on January 24, 2023, informing Defendant of its infringement of the '074 Patent.  At minimum, Defendant acquired actual knowledge of the '074 Patent and its infringement thereof when Plaintiff filed this lawsuit.  Additionally, Defendant acquired constructive knowledge of the '074 Patent from at least when Plaintiff virtually marked its products by providing notice of the '074 Patent on its website. (*See* https://www.attentive.com/patents.)

224.    On information and belief, despite Defendant's knowledge of the '074 Patent and Plaintiff's patented technology, Defendant made the deliberate decision to sell products and services that they knew infringe the patent.  Defendant's continued infringement of the '074 Patent with knowledge of the '074 Patent constitutes willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a)    That this Court adjudge and decree that Defendant has been, and is currently, infringing each of the Asserted Patents;

b)    That this Court award damages to Plaintiff to compensate it for Defendant's past infringement of the Asserted Patents, through the date of trial in this action;

c)    That this Court award pre- and post-judgment interest on such damages to Plaintiff;

d)    That this Court order an accounting of damages incurred by Plaintiff through the entry of a final, non-appealable judgment;

e)    That this Court determine that this patent infringement case is exceptional and award Plaintiff their costs and attorneys' fees incurred in this action;

f)     That this Court award increased damages under 35 U.S.C. § 284;

g)     That this Court preliminarily and permanently enjoin Defendant from infringing each of the Asserted Patents;

h)     That this Court order Defendant to:

(i)     recall and collect from all persons and entities that have purchased any and all products found to infringe any of the Asserted Patents that were made, offered for sale, sold, or otherwise distributed in the United States by Defendant or anyone acting on its behalf;

(ii)     destroy or deliver all such infringing products to Plaintiff;

(iii)     revoke all licenses to all such infringing products;

(iv)     disable all web pages offering or advertising all such infringing products;

(v)     destroy all other marketing materials relating to all such infringing products;

(vi)     disable all applications providing access to all such infringing software; and

(vii)     destroy all infringing software that exists on hosted systems,

i)     That this Court, if it declines to enjoin Defendant from infringing any of the Asserted Patents, award damages for future infringement in lieu of an injunction; and

j)     That this Court award such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues triable thereby.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

OF COUNSEL:

Christopher C. Campbell
Ryan A. Schmid
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 626-5578

Britton F. Davis
Brian Eutermoser
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
(720) 535-2300

*Attorneys for Plaintiff Attentive Mobile Inc.*

January 25, 2023