# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 23-87-CFC-CJB |
| | ) | |
| v. | ) | |
| | ) | |
| STODGE INC. d/b/a POSTSCRIPT, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT STODGE INC. D/B/A POSTSCRIPT'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

OF COUNSEL:

Michael J. Sacksteder
Todd R. Gregorian
Jonathan T. McMichael
John M. DiBaise
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300

*Attorneys for Defendant Stodge Inc. d/b/a Postscript*

Dated: February 15, 2023
10642698/22870.00001

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ....................................................................................1

II.     FACTUAL BACKGROUND.................................................................2

III.    LEGAL STANDARD ............................................................................6

IV.     ARGUMENT..........................................................................................8

      A.     *Alice* Step One:  The asserted patents claim only an abstract idea. .............................................................................................8

            1.     The claims are directed to the abstract idea of enrolling customers in promotions using a prefilled and preaddressed request. ................................................8

            2.     The asserted claims do not address or solve a technology-specific problem.....................................................10

            3.     Courts have routinely held similar ideas to be abstract. ...........12

      B.     *Alice* Step Two:  The asserted patents add no inventive concept to the abstract idea. ..............................................................14

            1.     The asserted claims recite generic elements used according to conventional functions. ........................................14

            2.     Attentive's purported "factual allegations" cannot save the asserted claims. .................................................17

      C.     The non-asserted claims are no more patent-eligible than the three claims recited in Attentive's complaint.....................................19

V.      CONCLUSION.....................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ...........................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ........................................................9, 21

*B# on Demand LLC v. Spotify Tech. S.A.*,
484 F. Supp. 3d 188 (D. Del. 2020)............................................. 15-16

*Bilski v. Kappos*,
561 U.S. 593 (2010).................................................................8, 20

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ............................................. 17-18

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ...........................................................8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l
Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) ....................................... 19-20

*Credit Acceptance Corp. v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017) ...........................................................9

*Data Scape Ltd. v. W. Digit. Corp.*,
816 F. App'x 461 (Fed. Cir. 2020) ....................................................19

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ........................................................13

*DiStefano Patent Trust III, LLC v. LinkedIn Corp.*,
346 F. Supp. 3d 616 (D. Del. 2018)...................................................12

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ...............................................................16, 18

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ...............................................................8, 13, 21

*Everglades Game Techs., LLC v. Supercell, Inc.*,
  C.A. No. 14-643-GMS, 2015 WL 4999654 (D. Del. Aug. 21,
  2015) ...............................................................................................................12

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ........................................................................7

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ..................................................................... 6-7

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ...................................................................7, 15

*Internet Pats. Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ......................................................................21

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
  107 F. Supp. 3d 677 (E.D. Tex. 2015).......................................................... 12-13

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ......................................................................17

*OpenTV, Inc. v. Apple Inc.*,
  No. 5:15-CV-02008, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) ...................21

*Reputation.com, Inc. v. Birdeye, Inc.*,
  C.A. No. 21-129, 2022 WL 609161 (D. Del. Jan. 31, 2022) ...........................13

*SAP Am. Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ......................................................................15

*Search and Soc. Media Partners, LLC v. Facebook, Inc.*,
  346 F. Supp. 3d 626 (D. Del. 2018)................................................................13

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ........................................................................18

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019) ...........................................................18

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016) ...........................................................19

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ...........................................11, 12, 15

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ...............................................................8

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019) ...........................................9, 10, 16, 19

*WhitServe LLC v. Donuts Inc.*,
  809 F. App'x 929 (Fed. Cir. 2020) .....................................................17

*Wireless Discovery LLC v. eHarmony, Inc.*,
  C.A. No. 22-480-GBW, D.I. 54 (D. Del. Feb. 6, 2023) .....................20

*ZapFraud, Inc. v. FireEye, Inc.*,
  C.A. No. 19-1688-CFC, 2020 WL 6822972 (D. Del. Nov. 20,
  2020) ...........................................................................................10, 11

## STATUTES

35 U.S.C. § 101 ...............................................................................*passim*

## I.      INTRODUCTION

The Court should dismiss plaintiff Attentive Mobile Inc.'s complaint with prejudice for failure to allege infringement of a patent-eligible claim.  For decades, publishers have mailed magazines to their subscribers and prospective subscribers, including with these magazines a prefilled and preaddressed card to ease the burden of starting a new subscription or renewing an existing one.  There is no denying that this is a long-standing business practice—one that specifically addresses the core business objective of making the subscription process less time-consuming and burdensome.  The claims of the three asserted patents do nothing more than implement this abstract idea on generic computers using software and networks developed by others, and are thus invalid under 35 U.S.C. § 101.

At their core, the patent claims recite automating the process of enrolling customers in subscriptions using prefilled and preaddressed messages.  The patents admit that none of the technology recited is new to this claimed function.  Instead, the patents profess a goal of using existing hardware and software—*e.g.*, off-the-shelf mobile devices and servers, or known technology such as "deeplinks," "uniform resource identifiers," and "integration tags."  But the patents do not disclose any unconventional use for these technologies, instead only naming them and proposing that the public piece them together to carry out the abstract idea.  This is insufficient to satisfy Section 101 and claim patent-eligible subject matter.

Attentive has already asserted two of the three patents[1] at issue here against another defendant, Emotive, in this Court.  *See Attentive Mobile Inc. v. 317 Labs, Inc. d/b/a Emotive*, C.A. No. 22-01163-CJB (D. Del.) ("the *Emotive* case").  In response to Emotive's pending Section 101 challenge, Attentive effectively conceded that the patents add no new hardware or software, but instead argued that an "ordered combination" of known elements could save the claims.  But as discussed below, there is nothing inventive about *this* combination of well-known technologies performing their expected functions.  The Court should hold that the asserted claims are patent-ineligible under Section 101 and dismiss Attentive's complaint with prejudice.

## II.    FACTUAL BACKGROUND

The three asserted patents share a nearly identical specification and claim priority to a provisional patent application filed on May 26, 2017.  The patents disclose subscribing a user to promotions when the user clicks on a promotional message, such as an advertisement, on a webpage.  '887 patent at 1:30-52.  The shared specification acknowledges that this is not a new idea.  "Known methods" allowed users, for example, to interact with businesses by accessing a business' application or website to select products and provide information.  *Id.* at 1:36-45.

---

[1] The asserted patents here are U.S. Patent Nos. 11,416,887 ("the '887 patent"), 11,416,897 ("the '897 patent"), and 11,553,074 ("the '074 patent").  In the *Emotive* case, Attentive asserts infringement of the '887 and '897 patents.

But the specification states that prior methods were "time-consuming and burdensome" because the user might have to engage in multiple steps, potentially causing users to lose focus and abandon the process before completing it. *Id.* at 1:40-47. The patents purport to automate this process using existing computer technologies. *Id.* at 1:48-52.

The common specification illustrates the process with a series of figures.



*Id.* at 2:35-37, 7:30-34; *see also* '074 patent at Figs. 2A, 2B, 2C. [2]

Figure 2A shows a standard webpage hosted by a business with a sign-up link 203. '887 patent at 7:34-37. In Figure 2B, the user clicks on the sign-up link 203; the user's mobile device then transitions from the webpage to a messaging

---

[2] Figures 2A-2C of the '074 patent are substantively identical to those of the two other patents, but are less blurry.

application; and a subscription request 213 in the form of a text message automatically populates in the messaging application. *Id.* at 7:37-41, 7:48-52, 9:17-21. When the user clicks the send button 212, the message is sent wherein the server subscribes the user and a confirmation message is sent as shown in Figure 2C. *Id.* at 8:2-13.

The specification makes clear that none of the elements used to carry out these steps is new. The "mobile device" can be "any mobile electronic devices," including phones, tablets, or a host of other off-the-shelf devices. *Id.* at 6:20-65. When the user accesses a webpage on their mobile device, the webpage uses an "integration tag" to learn what kind of mobile device is being used. *Id.* at 11:59-65. The "integration tag" is entirely generic: The specification describes it only in functional terms as code that allows communication between the mobile device and a server. *Id.*; *see also id.* at 10:20-23, 12:22-29. When the user clicks a promotional message on the webpage, the specification refers to "deeplinks" and "uniform resource identifiers (URIs)" that transition the mobile device between applications (*i.e.*, a web browser to a messaging application). Both concepts were already commonplace. The specification describes "deeplinking" as a conventional technique "used in mobile applications that allows the linking of one mobile application to another mobile application." *Id.* at 3:14-16. According to the specification itself, deeplinking was known (*id.* at 1:32-40) and already widely supported "across a set

4

of mobile operating systems including, for example, the Apple® iOS system and the Android™ system" (*id.* at 3:20-23).   A "URI" is a generic term for a link that identifies resources on a computer.   *See id.* at 10:16-20.   Finally, the claimed technique sends the automatically populated message using conventional text messaging technology (*id.* at 11:47-53) to a "click-to-text server" that subscribes new customers.   The patentee did not invent this server: like the mobile device, it can be any existing computer hardware.   *Id.* at 5:4-7.

In fact, the specification is expressly agnostic as to the hardware and software used to perform the steps.   *Id.* at 20:38-41.   It states that "hardware modules" used in the claims may include "a general-purpose" computer or other generic computer chips.   *Id.* at 20:41-44.   The disclosed "software modules" may include "a variety of software languages" spanning many types of "computer code."   *Id.* at 20:44-59. Thus, the purported invention amounts to no more than a direction to use existing technology to expedite enrolling subscribers over the internet with prefilled and preaddressed forms.

Attentive's complaint identifies three asserted claims:   claim 1 of the '887 patent, claim 15 of the '897 patent, and claim 23 of the '074 patent.   D.I. 1 ("Compl.") ¶¶ 76, 124, 173.   Despite minor variations, all three asserted claims recite black-box "code" to perform the functions of subscribing a user to a promotion using a message that is generated when the user clicks a link on a webpage.   For example,

claim 1 of the '887 patent recites a "non-transitory processor-readable medium storing code configured to" cause a "click-to-text server"—which as described above can be any computer—to:

1. send an "integration tag" (*i.e.*, a data request) for a mobile device to send data to the client server ('887 patent at 21:40-49);

2. send a "uniform resource identifier (URI)" (*i.e.*, link) to the user's mobile device that "deeplinks" to a messaging application, causing the mobile device to (i) automatically transition from the first application (*i.e.*, the webpage) to the messaging application, and (ii) "automatically populate a custom message in the messaging application" (*id.* at 21:50-64);

3. detecting a user clicking the "send button of the messaging application" to send the custom message (*id.* at 21:64-67);

4. receiving the custom message (*id.* at 22:1); and

5. enrolling the mobile device in a promotion without receiving any other information from the mobile device (*id.* at 22:2-5).

The asserted claims of the other patents are similar. Claim 15 of the '897 patent uses means-plus-function language but otherwise mirrors claim 1 of the '887 patent. '897 patent at 24:39-60. Claim 23 of the '074 patent tracks claim 1 of the '887 patent but adds a limitation that, after the device is enrolled in the subscription, the server delivers an "installment" of the subscription.[3] '074 patent at 24:18-60.

## III. LEGAL STANDARD

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule

---

[3] The specification does not use or define the term "installment."

12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).

Courts apply a two-step analysis to evaluate patent eligibility under Section 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). First, the Court "determine[s] whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. Courts consider "whether the claims focus on 'the specific asserted improvement in computer capabilities…or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool'" to perform an abstract idea. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (citations omitted).

Second, if the Court finds the claims are directed to an abstract idea, it should hold the claims ineligible unless an "inventive concept" exists that "amounts to significantly more than [the abstract idea] itself." *Alice*, 573 U.S. at 217-18. The Court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (citations omitted). Merely implementing an abstract idea using well-known computer components or functions, limiting the idea to a particular technological environment, or adding other token steps is insufficient.

*Alice*, 573 U.S. at 221-26; *see also Bilski v. Kappos,* 561 U.S. 593, 602, 610-12 (2010); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

## IV.   ARGUMENT

The asserted claims fail both steps of the *Alice* test, and none of Attentive's arguments to the contrary from the *Emotive* case changes this conclusion.

### A.   *Alice* Step One:  The asserted patents claim only an abstract idea.

#### 1.   The claims are directed to the abstract idea of enrolling customers in promotions using a prefilled and preaddressed request.

In assessing whether patent claims are directed to an abstract idea, the Court examines the "focus of the claims."  *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("[W]e have described the first-stage inquiry as looking at the 'focus' of the claims, their 'character as a whole'" (citations omitted)).

Here, the focus of the asserted claims is on streamlining the process for a customer to enroll in a marketing promotion by providing a prefilled and preaddressed request.  A company receives information about a customer, the company provides a prefilled communication for the customer to send, the company receives the communication, and the company enrolls the customer.  This process already existed in "known methods" and the claims simply seek to automate it.  '887

patent at 1:36-52. [4]   "[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (citations omitted); *see also Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("automation" of "pen and paper methodologies" does not satisfy *Alice* step one).  The patents' stated goal of automating the sign-up process or saving time thus reinforces the conclusion that the claims are abstract.

Easing the process for customers to sign up for subscriptions in this way is a conventional practice that has long been the subject of human activity in the pre-internet world.  Indeed, for years before the internet existed, magazines would include prepopulated forms with a mailing address, a message stating that the sender sought to subscribe to the magazine, and even prepaid postage.  The customer could mail the form to its predetermined destination and would be enrolled in the subscription.  These prefilled forms served the same abstract goal as recited in the patents:  making it less "time-consuming and burdensome" for customers to

---

[4] In the *Emotive* case, Emotive argued that "the '887 and '897 patents are directed to the abstract idea of providing a streamlined process to sign-up for marketing promotions or services."  *Emotive* Case, D.I. 10 at 13.  Although this motion advances a slightly narrower abstract idea—streamlining via the use of prefilled and preaddressed requests—this difference in the articulation of the abstract idea does not change the outcome.  *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240 (Fed. Cir. 2016) (the abstract idea can be described in multiple ways, including at "different levels of abstraction").

subscribe ('887 patent at 1:36-52), to avoid customers "mistyp[ing] numbers or messages" while filling out a subscription request from scratch (Compl. ¶ 37), or to avoid customers "[losing] interest" if asked to create their own subscription request (*id.*). *Alice* prohibits the use of computer technology to execute an abstract idea that was previously performed manually. *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367.

### 2. The asserted claims do not address or solve a technology-specific problem.

Attentive cannot rescue the patents by asserting that they solve a technology-specific problem. "Time-consuming and burdensome process[es]" or "failed signups as a result of mistyped numbers or messages and/or lost interest"—even if true—are not technology-specific problems, and they existed well before the internet. '887 patent at 1:36-52; Compl. ¶ 37. Businesses have long sought ways to ease the process of subscribing customers to their promotions, including the magazine analogy described above. And the "problem" of taking time to manually write down information is certainly not a technological one. Indeed, the Federal Circuit has recognized that patents such as these, which seek to "conserve human resources and minimize errors" amount to "do it on a computer" patents that are abstract under step one of *Alice*. *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367; *ZapFraud, Inc. v. FireEye, Inc.*, C.A. No. 19-1688-CFC, 2020 WL 6822972, at *7 (D. Del. Nov. 20, 2020) (automating a process to make it more accurate "does not

mean that there is not a ready human analogue to the claimed computerized process").

In order to recite a technical solution, claims must "sufficiently describe how to achieve [the solution] in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). These claims don't. They merely recite results-focused, functional objectives of generic components without offering any specific mechanisms or new technical solutions for meeting those objectives. For example, claim 1 of the '887 patent recites "code including instructions configured to … *send*" data to a server, which is configured to "*send*" data to more servers, "*define* and *send* a uniform resource identifier (URI)," "*transition* … to [a] messaging application," "*populate* a custom message" and, upon "*detecting* a single user interaction," "*receive* the custom message" and "*enroll* the mobile device in a promotion." '887 patent at claim 1 (emphases added). The claims lack any guidance about *how* those generic functions are performed.

The same is true for the specification. It expressly contemplates using *any* preexisting hardware or software to accomplish the functions stated in the claims. *See, e.g.*, *id.* at 3:8-12, 3:20-23, 4:56-5:10, 6:5-10, 6:20-21, 10:16-23, 11:47-51, 11:59-65, 12:22-29, 20:38-59. Even the "deeplinking" described in the claims is an abstract concept that simply means switching from one application to another—much like transitioning from reading an advertisement in a magazine to sending in

the included, prefilled card to subscribe.  "At [this] level of generality, the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem," and are thus abstract.  *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *Two-Way Media*, 874 F.3d at 1337 (limitations requiring "converting," "routing," "controlling," "monitoring," and "accumulating" information are directed to an abstract idea where they "d[id] not sufficiently describe how to achieve these results in a non-abstract way").

### 3.   Courts have routinely held similar ideas to be abstract.

Courts routinely find patents directed to conventional marketing practices are abstract under Section 101.  In *DiStefano Patent Trust III, LLC v. LinkedIn Corp.*, Judge Stark ruled that a patent disclosing methods to perform reciprocal linking arrangements was directed to the abstract idea of facilitating cross-marketing relationships.  346 F. Supp. 3d 616, 623-24 (D. Del. 2018).  "Rather than improving any technical problem in the prior art, the patent 'relate[s] to…marketing problems or dealing with the hassle of matchmaking.'"  *Id.*  Judge Sleet reached a similar conclusion in *Everglades Game Techs., LLC v. Supercell, Inc.*, ruling that "[p]romotional games are marketing tools" and ruling that claims directed to "match-and-win" games updated for "the digital age" were abstract.  C.A. No. 14-643-GMS, 2015 WL 4999654, at *1, 6 (D. Del. Aug. 21, 2015).  And in *Kroy IP*

*Holdings, LLC v. Safeway, Inc.*, a court collected cases in agreement that "the marketing concept underlying the patent"—using computers to operate "incentive award programs"—was "an 'abstract idea' that had previously been employed in marketing and was simply being 'updated' by the use of computers or the Internet." 107 F. Supp. 3d 677, 690 (E.D. Tex. 2015).  The same is true here.  The patents are directed to the abstract marketing practice of enrolling customers in promotions, not any concrete advancement over what already existed.[5]

The specific steps employed to automatically subscribe users are also abstract because they involve the mere display, collection, and processing of information without more.   "The Federal Circuit has consistently found that collecting, analyzing, and displaying information, without more, is an abstract idea."  *Search and Soc. Media Partners, LLC v. Facebook, Inc.*, 346 F. Supp. 3d 626, 635 (D. Del. 2018); *Elec. Power Grp.*, 830 F.3d at 1353-54; *Reputation.com, Inc. v. Birdeye, Inc.*, C.A. No. 21-129-LPS-CJB, 2022 WL 609161, at *3 (D. Del. Jan. 31, 2022) (claims "describ[ing] a high-level process of collecting and analyzing information" are

---

[5] In the *Emotive* case, Attentive argued that the claims are akin to those in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).  *See Emotive* Case, D.I. 16 at 15.  Not so.  Unlike in *DDR Holdings*, where the claimed "hybrid web page" had no real-world analog, *id.* at 1257-58, the claims asserted by Attentive here do have real-world analogs.  For example, customers have long received prefilled and preaddressed sign-up cards with magazines and other subscriptions. For even longer, customers could walk into a physical store, exchange their information with a business, and leave having subscribed to the business' (or a third party's) services.  *DDR Holdings* does not save the claims.

directed to abstract ideas).  Yet at their core, that is all that the asserted claims purport to do.  They describe a system that displays advertisements, collects user data using conventional software, processes that information to generate a conventional link, which functions as expected to generate a prepopulated text message, and once sent, processes the text message to complete the "known" subscription method.  The asserted claims are thus directed to an abstract idea and fail *Alice* step one.

**B.    *Alice* Step Two:  The asserted patents add no inventive concept to the abstract idea.**

**1.    The asserted claims recite generic elements used according to conventional functions.**

If a claim is directed to an abstract idea, the court must then "determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221 (citation omitted).  Elements are not "inventive" if they are "well-understood, routine, conventional," and those implemented on a "generic" computer.  *Id.* at 222-23, 225.  There is no inventive concept here—even despite Attentive's attempts to save the claims in the *Emotive* case.

For example, Attentive cannot successfully argue that the claims are inventive because they purport to solve the problem "of interrupting user activity and prompting a user for information."  *Emotive* Case, D.I. 16 at 22.  As discussed above, the patents disclose no new technology to address this goal.  There is nothing

14

inventive about the manner with which the asserted claims collect and store information (through generically described integration tags), transition between applications (through conventional deeplinks and URIs), or send prepopulated messages. Each of these concepts was well-known. *See, e.g.*, '887 patent at 1:32-40, 3:14-23, 10:16-20, 11:59-65. So were webpages, mobile applications, and text messaging. *See, e.g.*, *id.* at 3:8-12, 4:56-5:3, 11:47-51. And the specification and claims refer only to generic, off-the-shelf "servers," "processors," and "mobile devices" performing their ordinary functions. *See, e.g.*, *id.* at 5:4-7, 5:53-61, 6:20-65, 20:38-59. Recitation of generic computing components for use in a claim is not an inventive concept. *See SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018).

Nor can Attentive avoid the conventional nature of the claims by asserting that "the claimed *combination* of these technologies" was not conventional. *Emotive* Case, D.I. 16 at 22. An ordered combination lacks an inventive concept where, as here, the "recited physical components behave exactly as expected according to their ordinary use." *TLI Commc'ns*, 823 F.3d at 615. The patent claims merely recite the functions of sending and receiving data and using existing technologies, such as deeplinks, according to their ordinary and expected functions. And the claims are "organized in a completely conventional way." *See Two-Way Media*, 874 F.3d at 1341; *B# on Demand LLC v. Spotify Tech. S.A.*, 484 F. Supp. 3d 188, 204 (D. Del.

2020) (claims that merely "elaborate on known, conventional steps" are ineligible). A company must first receive information about how to contact a customer to send them a prefilled request, and the customer must submit the request, before that customer can be enrolled in a promotion—just as had been done for years with existing computer technology and for decades using pen-and-paper methods. *See* '887 patent at 1:36-45 (describing prior "known methods"). There is no other order in which to perform this functionality; it is logically necessary, not inventive.

Indeed, as noted above, the claims are functional and fail to recite anything more than "code" configured to perform the abstract idea of sending a promotional invitation and enrolling a user in the promotion after receiving a response. *E.g.*, *id.* at claim 1. They say nothing about *how* one would accomplish these functions in a way that is not purely conventional. *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 537 (Fed. Cir. 2020) (no inventive concept where the claims "provide[] less of 'a specific means or method' than 'a result or effect that itself is the abstract idea and merely invokes generic processes and machinery'").

To the extent the patents' alleged contribution is using preexisting technologies to automate enrolling users in subscriptions, this is not an inventive concept. Using a computer to "conserve human resources," "minimize errors," or to "perform routine tasks more quickly or more accurately" is not an inventive concept. *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367 (automating conventional

16

methodology to "conserve human resources and minimize errors" provides no inventive concept); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

Finally, contrary to Attentive's arguments in the *Emotive* case, the Court need not delay its Section 101 analysis until after claim construction or discovery. *See Emotive* Case, D.I. 16 at 11-12 (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018)). "In the § 101 context, 'the specification alone' may suffice to resolve the patent-eligibility inquiry." *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 935 (Fed. Cir. 2020). No discovery in this case could change the specification's clear disclosure that the technologies recited in the claims are conventional. The Court thus can and should address the eligibility question without delay.

> ## 2. Attentive's purported "factual allegations" cannot save the asserted claims.

The complaint recites no concrete factual allegations that can save the claims from invalidity.

<u>Conclusory allegations and legal conclusions</u>. Attentive pleads that the claims "are not directed to an abstract idea" and "consist of ordered combinations of features and functions that…were not, alone or in combination, well-understood, routine, or conventional." Compl. ¶¶ 36-37, 39, 41, 47, 50-52. But the Court need not accept such "legal conclusions as true, even if couched as factual allegations." *See Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,* 778 F. App'x 882, 894 (Fed. Cir.

2019); *see also Dropbox*, 815 F. App'x at 538 (allegations that "restate the claim elements and append a conclusory statement that 'nothing in the specification describes these concepts as well-understood, routine, or conventional'" do not create factual dispute).

Allegations contrary to the claims and specification. Nor can Attentive rely on allegations contrary to the claims and the specification. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Thus, Attentive cannot plead its way out of invalidity by alleging that the patents disclose "technological advancements" such as "the use of deeplinking," "provid[ing] custom text messages," or "allow[ing] for enrollment in a promotion or subscription without an additional communication." Compl. ¶ 37. The specification confirms that none of these is new to the patents. *Supra* § IV.B.1. Similarly, the patents lack any "improve[d] operation of computer networks and networked devices" (Compl. ¶ 47), at least because the specification contemplates the use of *any* existing network and *any* existing mobile device to carry out the claimed functions. *Supra* § IV.B.1.

Allegations relating to industry praise. Attentive cannot shelter behind alleged novelty or industry praise to avoid a finding of invalidity under Section 101. Compl. ¶ 51. "[M]erely reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019); *see also*

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a claim for a *new* abstract idea is still an abstract idea").  And even setting this aside, Attentive cannot articulate any inventive contribution beyond using existing computer technology to solve an admittedly business-centric problem.

<u>Allegations relating to saving time or steps</u>.  Attentive's allegations that the claimed functions saved users time or steps fare no better.  Compl. ¶¶ 37-38.  Courts routinely find that using existing technology to serve these goals is insufficient under *Alice*.  *See, e.g.*, *Data Scape Ltd. v. W. Digit. Corp.*, 816 F. App'x 461, 462-63 (Fed. Cir. 2020) (rejecting assertion that patents made data transfer processes less "cumbersome" and finding them invalid under Section 101); *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367 (seeking "to conserve human resources and minimize errors" is "a quintessential 'do it on a computer' patent").

## C.   The non-asserted claims are no more patent-eligible than the three claims recited in Attentive's complaint.

Attentive's complaint asserts only claim 1 of the '887 patent, claim 15 of the '897 patent, and claim 23 of the '074 patent.  Compl. ¶¶ 77, 125, 174.  But the remaining claims of the asserted patents are directed to the same abstract idea and are no more patent-eligible.

A court need not individually address all claims where "the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea" and one claim is representative.  *Content Extraction & Transmission*

19

*LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Wireless Discovery LLC v. eHarmony, Inc.*, C.A. No. 22-480-GBW, D.I. 54 at 15 (D. Del. Feb. 6, 2023) (claims representative where the patentee could not show that the "other claims of the asserted patents have different concrete and technical elements and steps requiring separate patentability analysis").  That is the case here.

The following table collects similar claims and explains why they fail to confer patent-eligibility:

| Claims | Lack of Inventive Concept |
|---|---|
| '887 patent claim 2; '897 patent claims 1, 3, 5-6, 9-11, 14, 16-18, 24, 26-28; '074 patent claims 1, 3-4, 6-8, 10-11, 13-14, 16, 18-22, 25-29 | These claims mirror the three asserted claims or merely add "token postsolution components" or "insignificant postsolution activity" to the idea, such as performing the sign-up process without charging a fee, employing conventional technology like "integration tags" or cookies, sending and receiving data, or performing the process with multiple users.  *Cf. Bilski*, 561 U.S. at 611-12; *Apple*, 842 F.3d at 1242.  This is conventional; the patents do not purport to disclose any new technology to accomplish these functions. |
| '887 patent claims 3, 4, 6-10, 13, 19-20; '897 patent claims 2, 4, 19-23, 25, 29-30 | These claims refer to authenticating the user's identity or status as a prior customer, or confirming that the mobile device satisfies a "business rule."  These are not inventive concepts attributable to the patents.  And "[t]he practice of controlling access to information by verifying credentials … is neither novel nor specific to" the functionality here. |

| Claims | Lack of Inventive Concept |
|---|---|
| | *OpenTV, Inc. v. Apple Inc.*, No. 5:15-CV-02008-EJD, 2016 WL 344845, at *5-6 (N.D. Cal. Jan. 28, 2016) ("verifying credentials" is well-known). |
| '887 patent claims 5, 11-12, 14-18; '897 patent claims 7-8, 12-13; '074 patent claims 2, 5, 9, 12, 15, 17, 24, 30 | These claims merely "sit[e] the ineligible concept in a particular technological environment." *Cf. Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015).  For example, they state that the process is performed on a mobile device, using the device's default messaging application, on particular (existing) operating systems, or by displaying the advertisement on the device display.  None of that preexisting technology supplies an inventive concept. *See id.*; *Elec. Power Grp.*, 830 F.3d at 1354. |

Thus, none of the claims of the asserted patents is eligible for patenting.

## V.      CONCLUSION

Postscript requests that the Court dismiss this action with prejudice for failure to allege infringement of a patentable claim under 35 U.S.C. § 101.

21

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael J. Sacksteder
Todd R. Gregorian
Jonathan T. McMichael
John M. DiBaise
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300


Dated:  February 15, 2023
10642698/22870.00001

By:  */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Defendant Stodge Inc.
d/b/a Postscript*

22