

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

David E. Moore
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone

July 11, 2023

**VIA ELECTRONIC FILING**

The Honorable Christopher J. Burke
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:    *Attentive Mobile Inc. v. Stodge Inc. d/b/a Postscript*, C.A. No. 23-87-CJB

Dear Judge Burke:

Pursuant to the Court's June 29, 2023 Oral Order (D.I. 40), Defendant Stodge Inc. d/b/a PostScript (hereinafter "PostScript") respectfully submits as follows.

Analogous Caselaw

PostScript directs the Court's attention to *Customedia Technologies, LLC vs. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020). *Customedia* provides valuable insight here, because it sees the Federal Circuit grappling with the question of what it means to "improve the functionality of the computer itself" when the challenged claim presents only a purportedly novel arrangement of known generic computer components. There, the Court confronted a claim to a network hardware configuration "for providing automatic delivery of multimedia data products from one or more multimedia data product providers." *Id.* at 1361. The representative claim recited "a remote account transaction server" that would provide "specifically identified advertising data" to an end user, and a "programmable local receiver unit" that included "at least one individually controlled and reserved advertising data storage section adapted specifically for storing the specifically identified advertising data" that was "monitored and controlled by [the] remote account transaction server." *Id.* The patentee asserted that this claim "provide[d] for improvements to the operation and functioning of computer systems" by "improv[ing] the data delivery system's ability to store advertising data, transfer data at improved speeds and efficiencies, and prevent system inoperability due to insufficient storage." *Id.* at 1362-63. The Court found that the specification provided no "specific structural or inventive improvements in computer functionality related to th[e] claimed system," such that the claimed invention "***merely improve[d] a fundamental practice or abstract practice*** by invoking a computer merely as a tool." *Id.* at 1364-5 (emphasis added).

So too here. Attentive concedes that "enrolling customers in a promotion using prefilled requests is an abstract idea" (D.I. 16 at 5), but argues that "[a]n improved system for performing a 'business function' more efficiently" is still patent eligible. (Case No. 22-1163, D.I. 16 at 12.)

But the upshot of *Customedia* is that invoking generic technology to improve a (concededly) fundamental and abstract practice is patent ineligible, and here the technology is unquestionably generic:  There is no dispute that the core of the claimed solution—"deeplinking" from one mobile application to another using a "uniform resource identifier" to populate a custom text message the user can then send—was a generic feature of mobile device operating systems.  (D.I. 16 at 19; '887 patent at 3:14-23.)  And there is no dispute that the remainder of the claim recites only generic computers, servers, and mobile devices.  (D.I. 16 at 17, 19; '887 patent at 5:4-10; 5:53-61; 6:20-65; 20:38-59.)  Attentive has pointed to nothing in the specification that teaches "structural or inventive improvements" in deeplinking, server functionality, text messaging, or anything else; to the contrary, the specification relies entirely on known methods for each of those aspects of the claimed system, and describes each at a high level of generality with little or no technical detail.  (*See* D.I. 10 at 14-15.)  Instead, like the configuration of known computer components in *Customedia*, the "design choices" Attentive asserts the inventors here made, like using unspecified computer code (an "integration tag") to cause a webpage to send user data to a server, do nothing more than invoke a computer as a tool to make an improvement to an abstract concept.

Lack of "How"

The question of whether a claim provides sufficient detail about "how" a particular result is accomplished is a way of asking whether the ***claims capture*** the invention's asserted improvement to computer functionality, or whether they simply instruct the practitioner to use a computer to achieve a particular result.  *See, e.g., Free Stream Media Corp. v. Alphonso, Inc.*, 996 F.3d 1355, 1364-65 (Fed. Cir. 2021) (concluding that claims did not "demonstrate[] an improvement to computer functionality" because they did not "incorporate" specific techniques to achieve the "claimed advance"); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018) (distinguishing between claims that are "directed to a particular technical solution to a problem" and claims that "failed to recite a practical way of applying an underlying idea").  As this Court pointed out in *Nielson Co. (US), LLC v. TVision Insights, Inc.*, C.A. No. 21-1592-CJB, 2022 WL 3226318, at *5 (D. Del. Aug. 10, 2022), this raises the question of whether—to borrow a phrase from Attentive's opposition brief (D.I. 16 at 8)—any "specific combination of structures and functions" suffices to provide sufficient "how" and thus clear the § 101 bar.  The answer to that question is "no."  In *Free Stream Media*, for example, the claims provided substantial detail about a hardware architecture—a television that could generate "fingerprint data," a "relevancy-matching server," a "content identification server," and a mobile device that "constrain[s] an executable environment in a security sandbox, and execute[s] a sandboxed application in the executable environment."  996 F.3d at 1358-59.  The patentee argued that this arrangement allowed devices on the same network to communicate where they were previously unable to do so by "piercing or otherwise overcoming a mobile device's security sandbox."  *Id.* at 1364-65.  Although the challenged claims recited an architecture, the Federal Circuit found that the claims "merely improve the abstract idea of targeted advertising" by "implement[ing] a computer to achieve the abstract idea."  *Id.* at 1365.  *See also Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019) ("[E]ven a highly

specific method for implementing an abstract idea is, at step 1 [of *Alice*], still directed to that abstract idea").

Instead, the Federal Circuit's cases teach that to ask whether the claims contain sufficient "how" is to ask whether the "specific combination of structures and functions" they recite constitutes a method or technique that captures the asserted improvement in the way *a computer* works—rather than using conventional computer components in conventional ways to solve preexisting problems, without spelling out the implementation details.  *Any* process for enrolling a customer in a marketing promotion using a prefilled and preaddressed request will require some minor variation of the steps that Attentive says (D.I. 16 at 2-3) constitute its claimed system:  (a) Gathering the information needed to create the prefilled request (here, gathering "user data" using an "integration tag," which is simply what the patents call code that performs that function); (b) creating the prefilled message (here, a deeplink, whose conventional functions undisputedly include creating prefilled text messages); and (c) having the customer send the prefilled message to subscribe (here, sending the text).  Unlike in *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) or *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), the claims (and specification) lack any implementation details or other description of *how* the computers involved (generic web servers and mobile devices) are used as anything more than a tool to execute these steps inherent in the idea itself.  At most, the claims limit the idea to the previously-known technological environment of mobile devices and texting, which is insufficient to confer patent eligibility.  *Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM:nmt/10910772/22870.00001

cc:     Counsel of Record (via electronic mail)