IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Plaintiff / Counterclaim-Defendant, | ) | |
| | ) | C.A. No. 23-087 (CJB) |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| STODGE INC. d/b/a POSTSCRIPT, | ) | |
| | ) | |
| Defendant / Counterclaim-Plaintiff. | ) | |
| | ) | |

### ATTENTIVE MOBILE INC.'S ANSWER AND COUNTERCLAIMS TO STODGE INC. d/b/a POSTSCRIPT'S COUNTERCLAIMS

Plaintiff / Counterclaim-Defendant Attentive Mobile Inc. ("Attentive") hereby responds to the counterclaims of Defendant / Counterclaim-Plaintiff Stodge Inc. d/b/a Postscript ("Postscript"), as alleged in Postscript's Amended Answer and Counterclaims (D.I. 50).

Attentive denies the allegations and characterizations in Postscript's Answer and Counterclaims unless expressly admitted in the following paragraphs. To the extent the allegations in Postscript's Counterclaims implicate or call for legal conclusions, no response is required.

Each of the paragraphs below corresponds to the same numbered paragraph in Postscript's Counterclaims, and Attentive denies all allegations in the Counterclaims, whether express or implied, that are not specifically admitted below. Attentive further denies that Postscript is entitled to the relief requested in the Counterclaims, or to any other relief.

Attentive's specific responses to the numbered paragraphs in Postscript's Counterclaims are set forth below in corresponding numbered paragraphs, as follows:

## NATURE OF THE ACTION

Attentive admits that Postscript's Counterclaims assert counterclaims against Attentive. Attentive denies that Postscript is entitled to any relief whatsoever. Attentive denies any remaining allegations of Postscript's Nature Of The Action And Counterclaims.

## PARTIES

1.      On information and belief, Attentive admits that Postscript is a corporation organized and existing under the laws of Delaware, with a principal place of business at North Hayden Road, Suite 123, Scottsdale, Arizona 85251.

2.      Attentive lacks sufficient knowledge to admit or deny these allegations.

3.      Attentive admits that it is a corporation organized and existing under the laws of the state of Delaware. Attentive denies the remaining allegations of this paragraph.

4.      Attentive admits it currently owns U.S. Patent No. 11,416,887 ("the '887 Patent"), U.S. Patent No. 11,416,897 ("the '897 Patent"), and U.S. Patent No. 11,553,074 ("the '074 Patent") (collectively, "the Asserted Patents").

## JURISDICTION AND VENUE

5.      Counterclaim Paragraph 5 contains conclusions of law to which no response is required. To the extent a response is required, Attentive does not dispute that the counterclaim arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Otherwise denied.

6.      Counterclaim Paragraph 6 contains conclusions of law to which no response is required. To the extent a response is required, and for purposes of this action only, Attentive does not dispute that this Court has subject matter jurisdiction over Postscript's Counterclaims at the present time. Otherwise denied.

7.      Attentive admits that this Court has personal jurisdiction over Attentive at least because Attentive has submitted to personal jurisdiction herein by filing its Complaint in this Court.

8.      Counterclaim Paragraph 8 contains conclusions of law to which no response is required.  To the extent a response is required, and for purposes of this action only, Attentive does not dispute that venue in this jurisdiction is proper over Postscript's Counterclaims at the present time.

## BACKGROUND

9.      Attentive lacks sufficient knowledge to admit or deny these allegations.

10.      Attentive lacks sufficient knowledge to admit or deny these allegations.

11.      Attentive lacks sufficient knowledge to admit or deny these allegations.

12.      Attentive denies that "Postscript announced the launch of the Campaign Flows feature on October 13, 2021" at least because the website cited for that proposition in this paragraph (footnote 1) links to a YouTube announcement video posted on October 12, 2021. Attentive lacks sufficient knowledge to admit or deny the remaining allegations in this paragraph.

13.      Attentive denies that Magic Composer is a "copycat product" of Campaign Flows, that "Magic Composer uses Postscript's patented technology," and that Magic Composer operates "[l]ike Postscript's Campaign Flows." Attentive admits that it advertised that Magic Composer can be used to "automatically control which emails or texts someone gets based on the actions they take." Attentive lacks sufficient knowledge to admit or deny the remaining allegations of this paragraph.

A.      **Postscript's Asserted Patent**

14.      Attentive lacks sufficient knowledge to admit or deny these allegations.

15.      Attentive lacks sufficient knowledge to admit or deny these allegations.

3

16.     Admitted.

17.     Admitted.

18.     Denied. The prior art cited on the face of the '660 patent—including the references to Klaviyo products and Attentive's Journeys product—demonstrates that, before the '660 patent, automated tools existed for performing the described functionality, including automatically tracking user events from multiple sources (including Shopify) and targeting those users based on those user events.

For example, the face of the '660 patent lists a reference named "Klaviyo's Shopify Integration" from 2016, which shows that a well-known competitor named Klaviyo offered a commercial tool that automatically gathered transactional data from Shopify over half a decade before Postscript filed for the '660 patent on October 12, 2022. Even a cursory YouTube search turns up many prior art videos showing Klaviyo's prior art product performing the accused functionality. For example, a "Klaviyo for Shopify" course posted to YouTube (Exhibit 1 (https://tinyurl.com/k9e6kes2)) on October 5, 2021—before the '660 patent's earliest possible priority date of October 12, 2021—shows that Klaviyo's message management platform performed all of the accused and described functionality, including (1) defining a segment of subscribers based on Shopify events and Klaviyo events;[1] (2) enrolling that segment of subscribers

---

[1] *See* https://tinyurl.com/2vbd4czy (Klaviyo integrating with Shopify, collecting Shopify events via API, and installing a Klaviyo code snippet on the Shopify site to collect Klaviyo events); https://tinyurl.com/ms7x9j2d (Klaviyo events tracked by a "snippet of code" inserted into a Shopify store); https://tinyurl.com/4jxatw22 (Klaviyo tracking both Klaviyo events and Shopify events about a single user); https://tinyurl.com/5b3ktjjz (using Klaviyo to create segments of users based on Klaviyo events and an API, such as the Shopify integration); https://tinyurl.com/yamzckj4 (using Klaviyo to create a segment of users based on Klaviyo events and discussing Shopify integration).

in a messaging flow;[2] and (3) messaging the enrolled subscribers based on subsequent subscriber events meeting a "trigger condition" (e.g., a subscriber clicked on a link or failed to make a purchase).[3]

Likewise, the face of the '660 patent lists references showing that Attentive's Journeys product was a prior art product that likewise integrated with Shopify to monitor transactional and application events and target users based on those events.[4]

The citations on the face of the '660 patent thus show that this paragraph contains material falsehoods. For example, they show it is indisputably false that, "[p]rior to the invention of the '660 patent, merchants were unable to [] effectively" "target[] only customers who had abandoned a previous checkout[,] as well as define criteria for when additional messaging would be sent out (e.g., if a customer did not click on previous messages in a particular period of time.)." That functionality was widely available, including from Attentive Journeys[5] and from Klaviyo.

---

[2] *See* https://tinyurl.com/ynmx7zkd (using Klaviyo to create a campaign that targets a segment of users); *see also* Exhibit 2 (https://tinyurl.com/ykw69p99) (showing Klaviyo creating a segment-triggered flow as of December 1, 2020), Exhibit 3 (https://tinyurl.com/yv484uh8) (same as of September 13, 2021), Exhibit 4 (https://tinyurl.com/3xjyawfk) (same as of March 6, 2022), Exhibit 5 (https://tinyurl.com/43wdf8xc) (same as of August 17, 2022).

[3] *See* https://tinyurl.com/2p947x7m (using Klaviyo to retarget users of a segment based on a trigger condition, such as "clicked email" or "opened email").

[4] *See* Exhibit 6 (https://youtu.be/Kb4NXFpmGww) (2020 talk discussing Journeys, real-time monitoring of subscriber behavior, and Attentive's "Shopify integration"); Exhibit 7 (https://tinyurl.com/yckndbxm) (a case study of using Journeys to automate messages to subscribers triggered by subscriber behavior); Exhibit 8 (https://tinyurl.com/3t7rktce) (advertising that Journeys enables marketers to "send in-the-moment messages triggered by their customers shopping and purchasing behaviors" and thus "gives [marketers] the ability to stay engaged with customers across the entire customer lifecycle").

[5] Exhibit 9 (https://tinyurl.com/2xe898bh) (Attentive citation on face of the '660 patent showing "cart abandonment" flow); Exhibit 7 (https://tinyurl.com/yckndbxm) (Attentive citation on face of the '660 patent describing browse abandonment messaging in Attentive Journeys); Exhibit 8 (https://tinyurl.com/3t7rktce) (Attentive citation on face of the '660 patent describing "cart abandonment and browse abandonment" messaging in Attentive Journeys).

Thus, it is false that, before the '660 patent, merchants could not easily obtain transaction data from "Shopify or another eCommerce platform," or that "it was often not straightforward to associate transaction data generated by Shopify and information gleaned from a user's interactions with the merchant's app or website with the same customer or prospective customer."

19.     Denied. As shown by the references cited on the face of the '660 patent and the references cited above in response to paragraph 18, it is false that, prior to the '660 patent, "there was no way to continuously monitor [] information ["provided by an eCommerce platform and/or the merchant's app or website to target messages to customers"] across a large number of users such that it could be used to automatically retarget messages in a multi-message campaign." Both Klaviyo and Attentive had long been selling commercial tools that provided such functionality (e.g., Attentive Journeys).

20.     Attentive cannot admit or deny the functionality of unspecified "prior art systems." To the extent Postscript is alleging that, in all prior art systems "merchants could only set up messages: (1) one at a time, a time consuming and often tedious task; (2) using data from a single transaction, which limited the merchant's ability to tailor its messages to be responsive to the full user journey across multiple transactions; and (3) to a single user, meaning that it could not be used to orchestrate large marketing campaigns across a broader target audience," that allegation is denied. As shown by the references cited on the face of the '660 patent and above in response to paragraph 18, prior art systems (including Klaviyo and Attentive Journeys) could easily (1) set up multi-message flows in a non-tedious manner, (2) using data from multiple transactions so that merchants could tailor their messages to be responsive to the full user journey across multiple transactions, and (3) and send those messages to multiple users so as to orchestrate large marketing campaigns across a broader target audience. Numerous prior art systems, including the Klaviyo

and Attentive Journeys systems cited on the face of the '660 patent, did *not* "limit[] receipt of the data and any responsive action to a single transaction made by a single user."

21.     Attentive cannot admit or deny the functionality of unspecified "other prior art systems." To the extent Postscript is alleging that all prior art systems (1) "could not continuously monitor transactional events," (2) "did not allow for automatic retargeting of successive messages based on user actions occurring subsequent to the first message," (3) required users "to set up messages one at a time," and (4) "could not tailor or plan messages across the entire customer journey," those allegations are denied. As shown by the references cited on the face of the '660 patent and above in response to paragraph 18, prior art systems (including Klaviyo and Attentive Journeys) did not impose any of these limitations.

22.     Attentive denies (1) that "prior art solutions did not permit" the functionality described in this paragraph, (2) that "prior art systems could not monitor and integrate transactional event data stemming from [multiple] sources continuously for a large set of users," and (3) that "no means existed to automatically retarget messages based on trigger conditions stemming from this data." As shown by the references cited on the face of the '660 patent and above in response to paragraph 18, prior art systems (including Klaviyo and Attentive Journeys) (1) provided the described functionality, (2) could "monitor and integrate transactional event data stemming from [multiple] sources continuously for a large set of users" and (3) provided a "means … to automatically retarget messages based on trigger conditions stemming from this data."

23.     Attentive denies that "it was burdensome (or even simply impossible) for merchants to target their customer base with the desired granularity." As shown by the references cited on the face of the '660 patent and above in response to paragraph 18, prior art systems (including Klaviyo and Attentive Journeys) provided that functionality.

24.    Attentive denies that "[t]he '660 patent overcomes these problems by creating a system and method that allows merchants to plan and execute messaging campaigns (known as "flows") using a steady stream of event data coming from both application builder platforms (including eCommerce platforms) and merchant websites or applications for a plurality of users (e.g., all of the recipients of an original campaign message)" and that "[t]he '660 patent thus fills a previously existing need for an improved system architecture that ingests a continuous stream of event data from both eCommerce platforms and user computing devices accessing the merchant's website and/or application, and then permits its use by the merchant to determine a message flow that allows for different automated series of messages to be sent to a specific segment of users based on a variety of trigger conditions." As shown by the references cited on the face of the '660 patent and above in response to paragraph 18, prior art systems (including Klaviyo and Attentive Journeys) had already provided that same functionality and therefore, there was no preexisting need for the '660 patent to fill. This paragraph's description of the scope of the claims calls for legal conclusions, which requires no response.

25.    Denied. As shown by the references cited on the face of the '660 patent and above in response to paragraph 18 (discussing prior art systems, such as Klaviyo's Shopify Integration and Attentive's Journeys), the '660 patent does not claim a "system that organizes and executes messaging campaign flows more effectively than previous systems." It claims nothing more than the capabilities of the prior art cited on the face of the patent.

26.    Attentive denies that the subject matter claimed in the '660 patent constitutes an "invention," let alone that it "improve[d] the operation of computer capabilities and computer networks." As shown by the references cited on the face of the '660 patent and above in response to paragraph 18, prior art systems (including Klaviyo's Shopify Integration and Attentive's

Journeys) provided all of the functionality described in this paragraph. Attentive denies that the prior art had an "inability" to perform the recited functionality and that it was not "able to configure and carry out the flexible and personalized mass marketing campaigns that Postscript." Attentive denies that it copied that functionality from Postscript. To the contrary, as shown by the references cited on the face of the '660 patent, Attentive provided that functionality at least through its Journeys product before the '660 patent. Attentive lacks sufficient information to admit or deny whether "[d]esigning and creating the patented architecture … required months of work on the part of Postscript engineers."

27.     Denied. The claims of the '660 patent fail to claim significantly more than an abstract idea.

**B.      Attentive's Allegedly Infringing Technology**

28.     Denied.

29.     Admitted.

30.     Denied.

31.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

32.     Attentive admits that Magic Composer is a software-based application.  Otherwise, denied.

33.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

34.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

35.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

36.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

37.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

38.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

39.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

40.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

41.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

42.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

43.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

44.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

45.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

46.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

47.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

48.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

49.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

50.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

51.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

52.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

53.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

54.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

55.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

56.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

57.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

58.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

59.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

60.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

61.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

62.     No response is required because this allegation implicates a legal conclusion.  To the extent a response is required, Attentive denies the allegations of this paragraph.

### POSTSCRIPT'S COUNTERCLAIMS

### COUNTERCLAIM 1
**(Declaratory Judgment of Non-Infringement of the '887 Patent)**

63.     Attentive re-asserts each of the foregoing paragraphs as if fully set forth herein.

64.     Attentive admits that it accuses Postscript of infringing the '887 Patent. Paragraph 64 contains conclusions of law to which no response is required.  To the extent a response is required, Attentive does not dispute that a controversy exists between the parties at the present time regarding Postscript's infringement of the '887 patent.  Otherwise denied.

65.     Attentive denies the allegations of Paragraph 65 of Postscript's Counterclaims.

66.     Attentive denies the allegations of Paragraph 66 of Postscript's Counterclaims.

Attentive admits that Postscript seeks a declaration of non-infringement of the '887 Patent. Attentive denies that Postscript is entitled to any relief whatsoever.

**COUNTERCLAIM 2**
**(Declaratory Judgment of Invalidity of the '887 Patent)**

67.     Attentive re-asserts each of the foregoing paragraphs as if fully set forth herein.

68.     Attentive admits that it accuses certain of Postscript's offerings and services of infringing the '887 Patent.  Attentive admits that there is an actual and justiciable controversy between Postscript and Attentive over the infringement of the '887 Patent.  Otherwise denied.

69.     Attentive denies the allegations of Paragraph 69 of the Counterclaims.

70.     Paragraph 70 contains conclusions of law to which no response is required.  To the extent a response is required, Attentive denies the allegations of Paragraph 70.

71.     Attentive admits that Postscript seeks a declaration of invalidity of the '887 Patent. Attentive denies that Postscript is entitled to any relief whatsoever.

**COUNTERCLAIM 3**
**(Declaratory Judgment of Non-Infringement of the '897 Patent)**

72.     Attentive re-asserts each of the foregoing paragraphs as if fully set forth herein.

73.     Attentive admits that it accuses Postscript of infringing the '897 Patent. Paragraph 73 contains conclusions of law to which no response is required.  To the extent a response is required, Attentive does not dispute that a controversy exists between the parties at the present time regarding Postscript's infringement of the '897 patent.  Otherwise denied.

74.     Attentive denies the allegations of Paragraph 74 of Postscript's Counterclaims.

75.     Attentive denies the allegations of Paragraph 75 of Postscript's Counterclaims.

76.     Attentive admits that Postscript seeks a declaration of non-infringement of the '897 Patent.  Attentive denies that Postscript is entitled to any relief whatsoever.

**COUNTERCLAIM 4**
**(Declaratory Judgment of Invalidity of the '897 Patent)**

77.     Attentive re-asserts each of the foregoing paragraphs as if fully set forth herein.

78.     Attentive admits that it accuses certain of Postscript's offerings and services of infringing the '897 Patent.  Attentive admits that there is an actual and justiciable controversy between Postscript and Attentive over the infringement of the '897 Patent. Otherwise denied.

79.     Attentive denies the allegations of Paragraph 79 of the Counterclaims.

80.     Paragraph 80 contains conclusions of law to which no response is required.  To the extent a response is required, Attentive denies the allegations of Paragraph 80.

81.     Attentive admits that Postscript seeks a declaration of invalidity of the '897 Patent. Attentive denies that Postscript is entitled to any relief whatsoever.

## COUNTERCLAIM 5
### (Declaratory Judgment of Non-Infringement of the '074 Patent)

82.     Attentive re-asserts each of the foregoing paragraphs as if fully set forth herein.

83.     Attentive admits that it accuses Postscript of infringing the '074 Patent. Paragraph 83 contains conclusions of law to which no response is required.  To the extent a response is required, Attentive does not dispute that a controversy exists between the parties at the present time regarding Postscript's infringement of the '074 patent.  Otherwise denied.

84.     Attentive denies the allegations of Paragraph 84 of Postscript's Counterclaims.

85.     Attentive denies the allegations of Paragraph 85 of Postscript's Counterclaims.

86.     Attentive admits that Postscript seeks a declaration of non-infringement of the '074 Patent.  Attentive denies that Postscript is entitled to any relief whatsoever.

## COUNTERCLAIM 6
### (Declaratory Judgment of Invalidity of the '074 Patent)

87.     Attentive re-asserts each of the foregoing paragraphs as if fully set forth herein.

88.     Attentive admits that it accuses certain of Postscript's offerings and services of infringing the '074 Patent.  Attentive admits that there is an actual and justiciable controversy between Postscript and Attentive over the infringement of the '074 Patent.  Otherwise denied.

89.     Attentive denies the allegations of Paragraph 89 of the Counterclaims.

90.     Paragraph 90 contains conclusions of law to which no response is required.  To the extent a response is required, Attentive denies the allegations of Paragraph 90.

91.     Attentive admits that Postscript seeks a declaration of invalidity of the '074 Patent.  Attentive denies that Postscript is entitled to any relief whatsoever.

**COUNTERCLAIM 6**
**(Alleged Infringement of the '660 Patent)**

92.     Attentive re-asserts each of the foregoing paragraphs as if fully set forth herein.

93.     Denied.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

**PRAYER FOR RELIEF**

Attentive denies that Postscript is entitled to any relief whatsoever.

**DEMAND FOR JURY TRIAL**

Attentive demands a trial by jury on all issues so triable.

**ATTENTIVE'S AFFIRMATIVE DEFENSES**

1.      Subject to the responses above and incorporating to the extent necessary the allegations of Attentive's counterclaims below, Attentive alleges and asserts the following defenses in response to Postscript's allegations, undertaking the burden of proof only as to those

defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the affirmative defenses described below, subject to the responses above, Attentive specifically reserves all rights to allege additional defenses that become known through the course of discovery or otherwise.

2.      Attentive may rely upon other matter constituting an avoidance or affirmative defense as set forth in Federal Rule of Civil Procedure 8(c), and Attentive reserves the right to seek leave to amend this Answer to add to, amend, withdraw, or modify these defenses as its investigation continues and as discovery may require.

3.      Attentive reserves the right to file a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**FIRST AFFIRMATIVE DEFENSE**
**(Non-Infringement)**

4.      Attentive has not infringed and does not infringe, directly or indirectly, literally or under the Doctrine of Equivalents, any valid and enforceable claim of Postscript's Counterclaim Patent (i.e., the '660 Patent).

**SECOND AFFIRMATIVE DEFENSE**
**(Invalidity)**

5.      The claims of Postscript's Counterclaim Patent are each invalid for failure to meet the requirements of 35 U.S.C. §§ 101, 102, 103, 112, and 116.

**THIRD AFFIRMATIVE DEFENSE**
**(Time Limitation on Damages)**

6.      Postscript's claim for damages is limited by 35 U.S.C. § 286.

**FOURTH AFFIRMATIVE DEFENSE**
**(Marking)**

7.      Postscript is barred in whole or in part from recovering damages under 35 U.S.C. § 287 due to Postscript's failure to provide proper notice of any alleged infringement to Postscript

before service of its Counterclaim, and because Postscript has failed to mark any embodying products with the number of Postscript's Counterclaim Patent and/or has failed to require licensees to mark any embodying products with the number of Postscript's Counterclaim Patent.

### FIFTH AFFIRMATIVE DEFENSE
**(Equitable Estoppel)**

8.      Postscript's counterclaims are barred by one or more of the doctrines of equitable estoppel, waiver, acquiescence, and/or unenforceability.

### SIXTH AFFIRMATIVE DEFENSE
**(Unclean Hands)**

9.      Postscript's counterclaims are barred, in whole or in part, by the doctrine of unclean hands.  By way of example only, Postscript should not be entitled to pursue affirmative relief if and when it refuses to provide the alleged bases for its non-infringement, invalidity, and/or infringement counterclaims, even in response to timely and proper interrogatories, or disclosures required by either Local Rules or the Federal Rules of Civil Procedure.  As another nonlimiting example, Postscript should not be entitled to pursue affirmative relief as a result of its improper conduct in prosecuting and obtaining Postscript's Counterclaim Patent, as set forth below in Attentive's Sixth Affirmative Defense (the allegations of which Attentive incorporates by reference as if fully stated herein).  As another nonlimiting example and on information and belief, Postscript should not be entitled to pursue affirmative relief as a result of its improper conduct in prosecuting and obtaining Postscript's Counterclaim Patent, where Postscript intentionally obtained overly broad claims directed at Attentive's prior art products and systems for the sole purpose of targeting Attentive and asserting Postscript's Counterclaim Patent against Attentive in connection with improper litigation strategy and conduct to file a counterclaim against Attentive in this Action.  For example, lawyers of the law firm Fenwick & West LLP were acting simultaneously as both prosecution counsel during the prosecution of Postscript's Counterclaim

Patent and litigation counsel on behalf of Postscript during the pendency of this Action. Additionally, significant amendments to the then-pending claims of Postscript's Counterclaim Patent were made by lawyers of the law firm Fenwick & West LLP on April 17, 2023, when at the same time other lawyers of the law firm Fenwick & West LLP were acting as litigation counsel in this Action, which was filed January 1, 2023 (D.I. 1).

## SIXTH AFFIRMATIVE DEFENSE
### (Inequitable Conduct)

10.     Attentive incorporates by reference as if fully stated herein the foregoing allegations in Paragraphs 1-9.

11.     Postscript's Counterclaim Patent is unenforceable due to inequitable conduct that occurred during the prosecution of the application resulting in the issuance of Postscript's Counterclaim Patent.

12.     Alexander Colin Meyer, Gerardo Diaz De La Serna Formoso, Gideon Daniel VanRiette, James Quinlan, Joy Taylor Kaufman, Kameron Ahler, Lauren Leia Rouse, and Vishak Swaminathan Visvanathan (collectively, "the Named Inventors") are the alleged inventors of Postscript's Counterclaim Patent.

13.     Frederick Tsang of the law firm Fenwick & West LLP prosecuted the application that issued as Postscript's Counterclaim Patent.  Jwalant R. Dholakia of the law firm Fenwick & West LLP also prosecuted the application that issued as Postscript's Counterclaim Patent.  Rajiv Patel of the law firm Fenwick & West LLP also prosecuted the application that issued as Postscript's Counterclaim Patent.  Messrs. Tsang, Dholakia, and Patel are collectively referred to herein as "the Prosecuting Attorneys."

14.     In connection with the prosecution of Postscript's Counterclaim Patent, as set forth below, each of the Named Inventors and each of the Prosecuting Attorneys breached their "duty

18

of candor and good faith in dealing with the [United States Patent and Trademark Office ("USPTO")]. . . ."  37 C.F.R. § 1.56.

15.     Upon information and belief, each of the Named Inventors and each of the Prosecuting Attorneys acted with specific intent to deceive the USPTO in prosecuting Postscript's Counterclaim Patent in ways material to the patentability of Postscript's Counterclaim Patent because, but for the intentional and deliberate misrepresentations and omissions to the USPTO, Postscript's Counterclaim Patent would not have issued.

**Postscript's Drafting of Claims Claiming Generic Messaging and Marketing Technology that the Named Inventors Did Not Invent**

16.     The application leading to Postscript's Counterclaim Patent was ultimately filed by the Named Inventors with the specific intent to deceive the USPTO, as evidenced by the Named Inventors' false declarations, because the Named Inventors knowingly and intentionally presented claims that they knew they did not invent and, thus, were not supported by the application's specification, in order to deceive the Examiner into allowing claims that could cover generic messaging and marketing technology, which the Named Inventors knew they did not invent as the technology was known long before their purported invention.

17.     For example, as explained in Attentive's specific responses to Paragraphs 18 through 27 of Postscript's Counterclaims set forth above (which paragraphs Attentive hereby incorporates by reference as if fully stated herein), the technology claimed in Postscript's Counterclaim Patent was known long before the Named Inventors' purported invention.

18.     The Named Inventors and the Prosecuting Attorneys also used a pattern of burying highly relevant and material prior art among voluminous submissions of less relevant prior art. Indeed, the USPTO reprimanded and warned the Named Inventors and the Prosecuting Attorneys on April 27, 2023, after they submitted a mountain of largely irrelevant material and appeared to

bury highly pertinent references among the sea of less relevant references.  Exhibit 10 (Excerpts from '660 File History) at 33-34.  This pattern of conduct evidenced an intent to mislead the Examiner, or act with reckless disregard for the duty of disclosure, in order to improperly procure Postscript's Counterclaim Patent.

## Claiming Beyond the Alleged Invention

19.     Postscript's Counterclaim Patent is unenforceable due to inequitable conduct by each of the Named Inventors during the prosecution of the application that led to Postscript's Counterclaim Patent before the USPTO, U.S. Patent Application No. 17/964,825 ("the '825 Application").

20.     The '825 Application was filed on October 12, 2022, and issued on July 25, 2023, as U.S. Patent No. 11,709,660 (i.e., Postscript's Counterclaim Patent).

21.     Postscript's Counterclaim Patent does not claim the benefit of any priority application.

22.     Postscript requested and received prioritized examination under 37 C.F.R. § 1.102(e)(1). Exhibit 10 (Excerpts from '660 File History) at 1, 15-16.

23.     On October 12, 2022, the Named Inventors submitted the '825 Application via their Prosecuting Attorneys.

24.     On April 17, 2023, the Named Inventors, via their Prosecuting Attorneys, submitted significant amendments to the then-pending claims, which amendments were tantamount to submitting entirely different claims for the Examiner to consider, yet with a significantly shortened timeframe due to the prioritized examination.

25.     On information and belief, the amendments submitted in the April 17, 2023, amendment were a direct result of improper litigation strategy and conduct in an effort to obtain overly broad claims, which the Named inventors knew they had not invented, in order to obtain a

patent on which to file a counterclaim against Attentive in this Action.  Indeed, as of April 17, 2023, lawyers of the law firm Fenwick & West LLP were litigation counsel on behalf of Postscript in this Action.

26.     The claims as amended were so broad that the Named Inventors knew or should have known that such broad claim scope was not invented by them or supported by the specification.  For example, on April 17, 2023, the Named Inventors, via their Prosecuting Attorneys, submitted significant revisions to independent claims 1, 11, and 21, among other claim amendments, to the USPTO, which claims they knew or should have known were broader than their alleged invention.  Indeed, claim 11 is asserted against Attentive's Magic Composer product, which relies on the same journeys and segmenting technology used by Attentive well before the priority date and cited in the Information Disclosure Statements ("IDSs") submitted during the prosecution of Postscript's Counterclaim Patent.  At this time, the Named Inventors and the Prosecuting Attorneys knew that such claims, drafted to purportedly cover known generic messaging and marketing technology, were broader than and, thus, not supported by the specification of the '825 Application.

27.     On information and belief, the Named Inventors and the Prosecuting Attorneys knew or should have known that the claims presented in the April 17, 2023 amendment were invalid since they covered products and technology disclosed in the references cited in the various IDSs.  For example, in the April 17, 2023. IDS, the Named Inventors, through the Prosecuting Attorneys, identified certain references concerning Attentive's prior art products and systems, such as Journeys, Segmentation, and Branching on Segments, which products and systems are the foundation of and used by the accused Magic Composer product.  Exhibit 10 (Excerpts from '660 File History) at 17-26.  Then, in the May 12, 2023 IDS, the Named Inventors, through the

Prosecuting Attorneys, identified certain references concerning Attentive's Journeys, Segmentation, and Branching on Segments prior art products and systems as "most relevant" to the pending claims of Postscript's Counterclaim Patent.  Exhibit 10 (Excerpts from '660 File History) at 38, 41-42.  Yet, now, Postscript accuses Attentive's Magic Composer product, which is directly based on Attentive's prior art products and systems.

28.     In submitting and prosecuting the '825 Application, each of the Named Inventors knowingly and intentionally presented claims that they knew were broader than and, thus, not supported by the specification that accompanied the application despite the "duty of candor and good faith in dealing with the [USPTO]."  37 C.F.R. § 1.56.

29.     In connection with the prosecution of the '825 Application, on December 23, 2022, the Named Inventors, through the Prosecuting Attorneys, submitted a signed declaration to the USPTO.  In the declaration, each of the Named Inventors represented, among other things, that (i) each is "an original joint inventor of a claimed invention in the application;" and (ii) each "acknowledge[d] that any willful false statement made in this declaration is punishable under 18 U.S.C. [§] 1001 by fine or imprisonment of not more than five (5) years or both."  Exhibit 10 (Excerpts from '660 File History) at 11-14.

30.     Upon information and belief, each of the Named Inventors knowingly submitted the declaration containing false statements to the USPTO to obtain claims purportedly broad enough to cover known generic messaging and marketing technology.

31.     Submitting an unmistakably false oath or declaration regarding the scope of an invention is *per se* material.  Thus, but-for each of the Named Inventors submitting a false declaration to the USPTO, the claims of Postscript's Counterclaim Patent would not have been granted.

32.     On information and belief, each of the Named Inventors had the specific intent to deceive the USPTO because each knowingly and deliberately filed claims that they knew were broader than what they supposedly invented and, thus, not supported by the specification—all in order to improperly claim known generic messaging and marketing technology.  Had any of the Named Inventors told the Examiner they intentionally drafted the claims that issued in Postscript's Counterclaim Patent to be broader than the technology they allegedly invented, the Examiner would have rejected the claims as lacking written description support, and Postscript's Counterclaim Patent would not have issued.

33.     The most reasonable inferences from the evidence presently available is that each of the Named Inventors intended to deceive the USPTO regarding the alleged claimed subject matter and knowingly submitted false declarations to obtain patent claims that the Named Inventors did not invent.  On information and belief, discovery will further support and demonstrate that these are the most reasonable inferences to draw from the facts.

34.     As a result of the actions of each of the Named Inventors, all claims of Postscript's Counterclaim Patent, and any and all related patents, are unenforceable due to inequitable conduct committed by the Named Inventors.

### Burying of Material Prior Art

35.     Postscript's Counterclaim Patent is also unenforceable for inequitable conduct occurring during its prosecution, including, among other misconduct, burying of known material prior art.

36.     During prosecution of the '825 Application, Postscript included unreasonably voluminous prior art disclosures, having the effect of obscuring some of the most important prior art references (commonly referred to as "burying").  More specifically, Postscript identified nearly

300 cited references spanning many hundred pages via separate IDSs submitted during prosecution.

37.     As a result of requesting and receiving prioritized examination, the Examiner had less time, and apparently insufficient time, to properly assess the validity of the claims presented and to properly consider the voluminous number of prior art references submitted in the various IDSs submitted during prosecution.

38.     Among the nearly 300 cited references was a web article with embedded video about "Klaviyo's Shopify Integration" describing automated messaging that provides, *inter alia*, "ecommerce integration allow[ing] you to sync all your historical and real-time data." *See* Exhibit 11 (https://www.klaviyo.com/ecommerce-integrations/shopify); *see also* Exhibit 10 (Excerpts from '660 File History) at 8 (Cite No. C5).  The reference is prior art to Postscript's Counterclaim Patent, and the claims of Postscript's Counterclaim Patent are invalid as anticipated by "Klaviyo's Shopify Integration" under one or more sections of 35 U.S.C. § 102 and/or as obvious under § 103 in view of "Klaviyo's Shopify Integration" standing alone, or combined with the knowledge of a person of ordinary skill in the art.

39.     The subject matter and disclosure of "Klaviyo's Shopify Integration" are closely related to the subject matter and scope of the alleged inventions claimed in Postscript's Counterclaim Patent.

40.     Given the intentional drafting of the claims of Postscript's Counterclaim Patent to attempt to broadly cover generic messaging and marketing technology that none of the Named Inventors actually invented, on information and belief, each of the Named Inventors and the specifically named Prosecuting Attorneys knew that the subject matter and disclosure of

"Klaviyo's Shopify Integration" is closely related to the subject matter and scope of the alleged inventions claimed in Postscript's Counterclaim Patent.

41.     Also among the nearly 300 cited references was a web app document (with embedded video) describing the "Klaviyo: Email Marketing & SMS" web application, which is prior art to Postscript's Counterclaim Patent.  *See* Exhibit 10 (Excerpts from '660 File History) at 8 (Cite No. C4).   The document describing the "Klaviyo: Email Marketing & SMS" web application, which launched in September 2012, explains, *inter alia*, that it provides "targeted, personalized, and automated marketing across email, SMS, forms, mobile push, and reviews" and allows users to (1) "Unify data from Shopify and other apps – web activity, tags, catalog, coupons;" (2) "Create segments using historical and real-time behaviors for better targeting;" (3) "Build coupon codes for automated clows and campaigns for easier tracking;" and (4) utilize "Built-in templates like Welcome, Back in Stock, Browse Abandon, and Price Drop."  *See* Exhibit 12 (Excerpts from https://apps.shopify.com/klaviyo-email-marketing) at 3, 14, 16, 18, 20, 22, 28.  The claims of Postscript's Counterclaim Patent are invalid as anticipated by "Klaviyo: Email Marketing & SMS" web application under one or more sections of 35 U.S.C. § 102 and/or as obvious under § 103 in view of "Klaviyo: Email Marketing & SMS" web application standing alone, or combined with the knowledge of a person of ordinary skill in the art.

42.     The subject matter and disclosure of the "Klaviyo: Email Marketing & SMS" web application are closely related to the subject matter and scope of the alleged inventions claimed in Postscript's Counterclaim Patent.

43.     Given the intentional drafting of the claims of Postscript's Counterclaim Patent to attempt to broadly cover generic messaging and marketing technology that none of the Named Inventors actually invented, on information and belief, each of the Named Inventors and the

specifically named Prosecuting Attorneys knew that the subject matter and disclosure of the "Klaviyo: Email Marketing & SMS" web application is closely related to the subject matter and scope of the alleged inventions claimed in Postscript's Counterclaim Patent.

44.     Accordingly, the buried "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references were, at the very least, highly material to patentability of the alleged inventions claimed in what would become Postscript's Counterclaim Patent.

45.     Each of the Named Inventors, via the Prosecuting Attorneys, including specifically Mr. Jwalant R. Dholakia, submitted three IDSs during prosecution of the patent application that led to Postscript's Counterclaim Patent on the following dates: (1) November 7, 2022 (Exhibit 10 (Excerpts from '660 File History) at 2-10), (2) April 17, 2023 (*Id.* at 17-26), (3) May 12, 2023 (subset of April 17, 2023 IDS) (*Id.* at 40-43).  Those IDSs listed nearly 300 prior art references, a substantial number of which were, at most, minimally relevant to the alleged invention covered by the pending claims at any point during prosecution.

46.     Two examples of minimally relevant submitted references are U.S. Patent Nos. 11,416,887 and 11,416,897, the patents asserted by Attentive against Postscript in this Action.  *Id.* at 2.

47.     On April 27, 2023, in the Notice of Allowability, the Examiner objected to the extremely voluminous IDSs, stating that his review of the mountain of references submitted was only cursory and reminding that it is applicant's duty to particularly point out any relevant material amongst the references cited in the IDS:

> Regarding the IDS filed on 4/17/2023, an applicant's duty of disclosure of material and information is not satisfied by presenting a patent examiner with 'a mountain of largely irrelevant [material] from which he is presumed to have been able, with his expertise and

with adequate time, to have found the critical [material]. It ignores the real world conditions under which examiners work.' Rohm & Haas Co. v. Crystal Chemical Co., 722 F.2d 1556, 1573 [ 220 USPQ 289 ] (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984). Patent applicant has a duty not just to disclose pertinent prior art references but to make a disclosure in such way as not to '***bury***' it within other disclosures of less relevant prior art; See Golden Valley Microwave Foods Inc. v. Weaver PopcornCo. Inc., 24 USPQ2d 1801 (N.D. Ind. 1992); Molins PLC v. Textron Inc., 26 USPQ2d 1889, at 1899 (D.Del.1992); Penn Yan Boats, Inc. v. Sea Lark Boats, Inc. et al., 175 USPQ 260, at 272 (S.D.FI. 1972).

Furthermore, regarding the IDS, it is desirable to avoid the submission of long list of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents, which have been specifically brought to applicant's attention and/or are known to be of most significance. See Penn Yan Boats, Inc. v. Sea Lark Boats, Inc., 359 F. Supp. 948, 175 USPQ 260 (S.D. Fla. 1972), aff'd, 479 F.2d 1338, 178 USPQ 577 (5th Cir. 1973), cert. denied, 414 U.S. 874 (1974). But cf. Molins PLC v. Textron Inc., 48 F.3d 1172, 33 USPQ2d 1823 (Fed. Cir. 1995).

Please note that it is the applicant's duty to particularly point out any relevance material amongst the references cited in the IDS. The examiner under the condition noted above performed a cursory review of the submitted references.

Exhibit 10 (Excerpts from '660 File History) at 33-34 (emphasis added).

48.     On May 12, 2023, the Named Inventors, through the Prosecuting Attorneys, responded to the Examiner's statement of reasons for allowance, making self-serving statements and claiming they had satisfied their duty to disclose.  Further, the Named Inventors, through the Prosecuting Attorneys, filed a supplemental IDS that purportedly included "additional information regarding portions of references, including citations to specific page number of the references, believed to be the most relevant out of the references that were previously submitted in the IDS." *Id.* at 38.

49.     The supplemental IDS submitted on May 12, 2023, identified thirteen references in total.  *Id.* at 41-42.  Notably missing from this identification of the "most relevant" references were

the buried "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references.  *See id.*

50.     On information and belief, each of the Named Inventors and each of the Prosecuting Attorneys were aware of the relevance and extreme materiality of the buried "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references prior art references.  Each of the Named Inventors and each of the Prosecuting Attorneys knew of the existence of the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references prior art references because they included the references in the IDSs, and by submitting the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references in the IDSs, they acknowledged their relevance to the prosecution of the application that led to Postscript's Counterclaim Patent.

51.     On information and belief, each of the Named Inventors and each of the Prosecuting Attorneys were aware of the relevance and extreme materiality of Attentive's prior art products and systems, such as Journeys, Segmentation, and Branching on Segments, which products and systems are the foundation of and used by the accused Magic Composer product.  Each of the Named Inventors and each of the Prosecuting Attorneys knew of the existence of Attentive's Journeys, Segmentation, and Branching on Segments prior art products and systems because they included references concerning these prior art products and systems in the IDSs, and by submitting such references in the IDSs, they acknowledged their relevance to the prosecution of the application that led to Postscript's Counterclaim Patent.  Indeed, in the May 12, 2023 IDS, the Named Inventors, through the Prosecuting Attorneys, identified certain references concerning Attentive's Journeys, Segmentation, and Branching on Segments prior art products and systems as "most relevant" to the pending claims of Postscript's Counterclaim Patent.  *See* Exhibit 10

28

(Excerpts from '660 File History) at 38, 41-42.  Yet, now, Postscript accuses Attentive's Magic Composer product, which is directly based on Attentive's prior art products and systems.

52.     The knowledge of each of the Named Inventors and each of the Prosecuting Attorneys of at least the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references and their materiality to patentability at least give rise to an inference of reckless disregard for the duty of candor and the duty of disclosure, particularly after the Examiner objected to extremely voluminous prior art citations and asked that the most relevant art be identified.

53.     Although the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references were submitted into the file history in the patent application that matured into Postscript's Counterclaim Patent via citations in the IDSs, these references were buried within a large number of other less relevant or irrelevant documents, and were never brought to the Examiner's attention.

54.     Notably, despite their knowledge of the materiality and contents of the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references, each of the Named Inventors and each of the Prosecuting Attorneys failed to highlight the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references or otherwise distinguish them in any way from the other 290-plus other cited references at any point during the prosecution of what would become Postscript's Counterclaim Patent.  Further, the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references are not cumulative of other prior art relied on by the Examiner.

55.     The Named Inventors and the Prosecuting Attorneys thus buried the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references and

failed to bring those references to the Examiner's attention to intentionally mislead the Examiner, or with reckless disregard for the duty of candor and the duty of disclosure, in order to improperly procure Postscript's Counterclaim Patent, notwithstanding that Postscript was not entitled to such patent based on the "Klaviyo's Shopify Integration" or the "Klaviyo: Email Marketing & SMS" web application references under 35 U.S.C. §§ 102 and/or 103.

56.     But for the misleading conduct, and based on the extreme materiality of the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references, the Examiner would have cited either or both of the "Klaviyo's Shopify Integration" and the "Klaviyo: Email Marketing & SMS" web application references alone or in combination with other cited references to reject the pending claims of Postscript's Counterclaim Patent as invalid.

57.     This misleading conduct and breach of duties owed to the USPTO described above applies to all claims, but at least specifically asserted claim 11, of Postscript's Counterclaim Patent and any and all other patents in the same family as Postscript's Counterclaim Patent.

**ATTENTIVE'S PRAYER FOR RELIEF ON POSTSCRIPT'S COUNTERCLAIMS**

WHEREFORE, Attentive seeks the following relief:

58.     That judgment be entered in Attentive's favor, denying all relief requested by Postscript's Counterclaims;

59.     That Postscript's claim for a declaratory judgement of non-infringement of the '887 Patent be denied;

60.     That Postscript's claim for a declaratory judgement of invalidity of the '887 Patent be denied;

61.     That Postscript's claim for a declaratory judgement of non-infringement of the '897 Patent be denied;

62.     That Postscript's claim for a declaratory judgement of invalidity of the '897 Patent be denied;

63.     That Postscript's claim for a declaratory judgement of non-infringement of the '074 Patent be denied;

64.     That Postscript's claim for a declaratory judgement of invalidity of the '074 Patent be denied;

65.     That Postscript take nothing by its claims and that Postscript's claims be dismissed with prejudice;

66.     That judgment be entered finding that Attentive and Attentive's customers have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of Postscript's Counterclaim Patent, either literally or under the Doctrine of Equivalents;

67.     That judgment be entered finding that the asserted claims of Postscript's Counterclaim Patent are invalid and/or unenforceable;

68.     That judgment be entered finding that Postscript's claims are barred by waiver, acquiescence, estoppel, and/or unenforceability;

69.     That judgment be entered finding that Postscript's claims are barred by the doctrine of unclear hands;

70.     That judgment be entered finding that Postscript's Counterclaim Patent is unenforceable due to inequitable conduct;

71.     That Attentive be awarded its attorneys' fees and costs incurred in responding to Postscript's Counterclaim and defending this lawsuit; and

72.     That Attentive be awarded such other and further relief as the Court deems just and proper.

## ATTENTIVE'S COUNTERCLAIMS

Plaintiff / Counterclaim-Defendant Attentive Mobile Inc. ("Attentive") hereby asserts the following Counterclaims against Defendant / Counterclaim-Plaintiff Stodge Inc. d/b/a Postscript ("Postscript").  Attentive repeats its allegations above as if fully set forth herein.  Attentive further alleges, on knowledge as to its own actions and on information and belief as to all other matters, as follows:

### NATURE OF THE CASE

1.     Attentive seeks a declaration that Postscript's Counterclaim Patent is invalid and that Attentive does not infringe Postscript's Counterclaim Patent.

### PARTIES

2.     Attentive is a corporation organized and existing under the laws of Delaware, with its headquarters located at 221 River Street, Hoboken, NJ 07030.

3.     Upon information and belief, Postscript is a corporation organized and existing under the laws of Delaware, with a principal place of business at North Hayden Road, Suite 123, Scottsdale, Arizona 85251.

4.     Upon information and belief, Postscript is the owner by assignment of all right, title and interest in United States Patent No. 11,709,660 ("Postscript's Counterclaim Patent").

### JURISDICTION AND VENUE

5.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and under the patent laws of the United States, 35 U.S.C. §§ 1 and 271 *et seq*.

6.     This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

7.     This Court has personal jurisdiction over Postscript because Postscript invoked the jurisdiction of this Court by filing its Counterclaims.

8.      Venue in this judicial district is proper over these Counterclaims pursuant to 28 U.S.C. § 1391(b) and (c), and by Postscript filing its Counterclaims in this district, Postscript has consented to venue in this Court for Attentive's Counterclaims.

**COUNT I**
**(Declaration of Non-Infringement of Postscript's Counterclaim Patent)**

9.      Attentive repeats and realleges the allegations in paragraphs 1-8 of its Counterclaims.

10.     Attentive has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of Postscript's Counterclaim Patent, either literally or under the Doctrine of Equivalents.  For example, the accused Magic Composer product does not infringe, directly or indirectly, any asserted claim of Postscript's Counterclaim Patent at least because the accused functionality is prior art to Postscript's Counterclaim Patent.

11.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

12.     A judicial declaration is necessary and appropriate so that Attentive may ascertain its rights regarding Postscript's Counterclaim Patent.

13.     Attentive is entitled to a judicial declaration that it has not infringed and does not infringe Postscript's Counterclaim Patent.

**COUNT II**
**(Declaration of Invalidity of Postscript's Counterclaim Patent)**

14.     Attentive repeats and realleges the allegations in paragraphs 1-8 of its Counterclaims.

15.     Postscript's Counterclaim Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 102, 103, and 112.

16.     For example, Postscript's Counterclaim Patent is invalid as anticipated under 35 U.S.C. § 102 because the prior art, such as the "Klaviyo's Shopify Integration,"[6] discloses all of the limitations of the claims of Postscript's Counterclaim Patent as asserted by Postscript.

17.     As another example, Postscript's Counterclaim Patent is invalid as obvious under 35 U.S.C. § 103 because the claims of Postscript's Counterclaim Patent as asserted by Postscript would have been obvious to one or ordinary skill in the art in view of the prior art, such as Attentive's Journeys product,[7] either alone or in combination with other prior art and/or the knowledge of one of ordinary skill in the art.

18.     As another example, Postscript's Counterclaim Patent is invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103 because the accused functionality of the Magic Composer product is prior art to Postscript's Counterclaim Patent.

19.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

20.     A judicial declaration is necessary and appropriate so that Attentive may ascertain its rights regarding Postscript's Counterclaim Patent.

## JURY DEMAND

21.     Pursuant to Fed. R. Civ. P. Rule 38(b), Attentive demands a trial by jury on all issues and claims so triable.

---

[6] *See, e.g.*, Exhibit 1 (https://tinyurl.com/k9e6kes2).

[7] *See, e.g.*, Exhibit 6 (https://youtu.be/Kb4NXFpmGww); Exhibit 7 (https://tinyurl.com/yckndbxm); Exhibit 8 (https://tinyurl.com/3t7rktce).

## **PRAYER FOR RELIEF**

WHEREFORE, Attentive requests that judgment be entered in its favor and prays that the Court grant it the following relief:

22.     A declaration that Attentive has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of United States Patent No. 11,709,660, either literally or under the Doctrine of Equivalents;

23.     A declaration that United States Patent No. 11,709,660 is invalid for failure to comply with the requirements of Title 35, United States Code, including at least §§ 102, 103, and/or 112;

24.     An order declaring that this is an exceptional case, and awarding Attentive its costs and reasonable attorneys' fees under 35 U.S.C. § 285; and

25.     Such other and further relief as this Court may deem just and proper.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Christopher C. Campbell
Ryan A. Schmid
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC  20006
(202) 626-5578

Britton F. Davis
Brian Eutermoser
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO  80202
(720) 535-2300

October 16, 2023

*/s/ Michael J. Flynn*
_____
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff*
*Attentive Mobile Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 16, 2023, upon the following in the manner indicated:

David E. Moore                                          *VIA ELECTRONIC MAIL*
Bindu A. Palapura
Andrew L. Brown
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
*Attorneys for Defendant*

Eugene Novikov                                         *VIA ELECTRONIC MAIL*
Joyce C. Li
Hannah Jiam
Bethany D. Bengfort
MORRISON FOERSTER
425 Market Street
San Francisco, CA  94105
*Attorneys for Defendant*

Sara Doudar                                            *VIA ELECTRONIC MAIL*
MORRISON FOERSTER
707 Wilshire Boulevard
Los Angeles, CA  90017
*Attorneys for Defendant*

Raghav Krishnapriyan                                   *VIA ELECTRONIC MAIL*
ORRICK, HERRINGTON & SUTCLIFFE, LLP
405 Howard Street
San Francisco, CA  94105
*Attorneys for Defendant*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

-36-