## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Plaintiff / Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-87-CJB |
| | ) | |
| STODGE, INC., d/b/a POSTSCRIPT, | ) | |
| | ) | |
| Defendant / Counterclaim-Plaintiff. | ) | |

---

Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Christopher C. Campbell and Jonathan Weinberg, KING & SPALDING LLP, Washington, DC; Britton F. Davis and Brian Eutermoser, KING & SPALDING LLP, Denver, CO; Cori C. Steinmann, KING & SPALDING LLP, Austin, TX, Attorneys for Plaintiff/Counterclaim-Defendant Attentive Mobile Inc.

Daniel M. Silver and Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Timothy C. Saulsbury, Hannah Jiam and Joyce C. Li, MORRISON FOERSTER, San Francisco, CA; Sara Doudar, MORRISON FOERSTER, Los Angeles, CA; Aditya V. Kamdar, MORRISON FOERSTER, Washington, D.C.; Raghav Krishnapriyan, ORRICK, HERRINGTON & SUTCLIFFE, LLP, San Francisco, CA, Attorneys for Defendant/Counterclaim-Plaintiff Stodge Inc., d/b/a Postscript.

---

## <u>MEMORANDUM OPINION</u>

August 6, 2025
Wilmington, Delaware

*Christopher J. Burke*

**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiff/Counterclaim-Defendant Attentive Mobile Inc. ("Attentive"), Attentive alleges infringement of United States Patent Nos. 11,416,887 (the "'887 patent"), 11,416,897 (the "'897 patent") and 11,553,074 (the "'074 patent" and collectively with the other patents, the "asserted patents"). (D.I. 1 at ¶¶ 5, 9; D.I. 667 at ¶ 20) Presently pending before the Court is Defendant/Counterclaim-Plaintiff Stodge Inc. d/b/a Postscript's ("Postscript") motion for summary judgment No. 1 on Attentive's claims of infringement of the '887 patent, '897 patent and the '074 patent (the "Motion").[1] (D.I. 467) Attentive opposes the Motion. This Memorandum Opinion will address the Motion as it relates to the first of Attentive's two theories of infringement (relating to the events.ts file); as to that theory, the Motion is GRANTED.[2]

## I.      BACKGROUND

Attentive commenced this action on January 25, 2023. (D.I. 1) Postscript filed the instant Motion on December 3, 2024. (D.I. 467) The Motion was fully briefed as of January 9, 2025. (D.I. 570) The Court heard argument on the Motion on June 5, 2025. (D.I. 666 (hereinafter, "Tr.")) A 5-day jury trial is set to begin on August 25, 2025. (D.I. 645 at 4)

The Court here writes primarily for the parties, and so any facts relevant to this Memorandum Opinion will be discussed in Section III below.

## II.     STANDARD OF REVIEW

---

[1]      Postscript has filed a counterclaim asserting that Attentive infringes United States Patent No. 11,709,660. (D.I. 50 at 52-53, at ¶¶ 92-97)

[2]      The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 14)

A.    **Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). If the moving party has sufficiently demonstrated the absence of such a dispute, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks, citation and emphasis omitted). If the nonmoving party fails to make a sufficient showing in this regard, then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Facts that could alter the outcome are "material," and a factual dispute is "genuine," only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

3

A party asserting that a fact cannot be—or, alternatively, asserting that a fact is—genuinely disputed must support the assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

### B.    Patent Infringement

The patent infringement analysis consists of two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the court must determine the meaning and scope of the patent claims asserted to be infringed. *Id.* Claim construction is generally a question of law, although subsidiary factfinding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326-27 (2015). Second, the trier of fact must compare the properly construed claims to the allegedly infringing product. *Markman*, 52 F.3d at 976. This second step is a question of fact. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1319 (Fed. Cir. 2012).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). If any claim limitation is absent from the accused product, there is no literal infringement as a matter of law. *Amgen Inc. v. F. Hoffman-La Roche Ltd*, 580 F.3d 1340, 1374 (Fed. Cir. 2009). The patent owner has the burden of proving infringement, and must do so by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

4

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if at least one limitation of the asserted claim does not read on an element of the accused product. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is [ ] appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Therefore, the court may grant summary judgment of non-infringement only if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims, as construed by the Court. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## III.    DISCUSSION

Below, the Court begins by setting out some additional facts of record relevant to resolution of this portion of the Motion. Thereafter, it will address the merits of Postscript's request for summary judgment as to the pathway at issue.

### A.    Additional Factual Background

Attentive offers mobile-signup and mobile-messaging products and platforms that enable businesses to interact with mobile users through messaging. (D.I. 1 at ¶¶ 30-31; *see also* D.I. 667 at ¶¶ 97, 99) The asserted patents claim non-transitory processor-readable mediums and methods directed to Attentive's "two-tap" technology, which allows a mobile device user to sign up for promotional messages with two taps: first tapping a promotion that automatically opens a text messaging application with a pre-populated message, and then tapping "send" to complete signup. (D.I. 1 at ¶ 31; D.I. 667 at ¶¶ 97, 99) Attentive's technology includes a "click-to-text

server," a "client server" and a "mobile device[;]" the click-to-text server first sends the client server an "integration tag" which the client server includes in a webpage.  (D.I. 667 at ¶ 100)  When a user's mobile device visits the webpage and interacts with the integration tag, it sends the user's data to the client server or the click-to-text server.  (*Id.*)  The receiving server utilizes that data to generate and return to the user's mobile device a custom uniform resource identifier ("URI"); the URI, in turn, deeplinks to the mobile device's text messaging application with a customized message inviting the user to enroll in promotional messages.  (*Id.*; *see also* D.I. 489, ex. 5 at ¶¶ 37-38)  If the user chooses to send the message, the click-to-text server then enrolls the mobile device in the promotion.  (D.I. 667 at ¶ 100)

It is undisputed that the asserted claims of the asserted patents[3] require that the URI[4] must be sent (in most cases from the server) *to the end user's mobile device* (the "URI limitation").[5]  (D.I. 487 at 1, 5; D.I. 507 at 6; *see also* Tr. at 96)  That also means that if the URI is *generated on* the mobile device—instead of being *sent to* the mobile device—then there is no

---

[3]     Attentive asserts claims 1-20 of the '887 patent, claims 15-30 of the '897 patent and claims 1-30 of the '074 patent.  (D.I. 667 at ¶ 19)

[4]     The Court construed a URI to mean "a string of characters that identifies a resource and that has some form of common syntax[.]"  (D.I. 349)

[5]     All of the asserted claims of the asserted patents require the URI to be sent from the server to the end user's mobile device, except for claim 16 of the '074 patent, which just recites sending a URI to the mobile device (without specifying that the URI is sent from a server).  (*See* D.I. 487 at 5 n.3)

Additionally, the Court notes that while claim 15 of the '897 patent does not expressly recite a "URI," it requires sending from a server to a mobile device a "means for causing[.]" ('897 patent, col. 24:40-54)  Attentive's infringement expert, Dr. Nathanial Polish, has opined that the relevant "means for causing" here is a URI; therefore, all asserted claims of the asserted patents effectively require that a URI be sent to a mobile device.  (D.I. 489, ex. 7 at ¶ 362)

literal infringement of the asserted claims.  (D.I. 570 at 1 ("Attentive does not dispute that generating the URI on the mobile device is non-infringing[.]"))

Postscript is a marketing company that offers SMS marketing products and services to companies engaged in online commerce ("merchants"); these products and services include methods that allow visitors to the merchants' webpages ("end user(s)" or "user(s)") to opt in to receiving marketing messages.  (D.I. 489, ex. 5 at ¶¶ 42-43, 53-54)  Attentive accuses one such method known as "Two Touch" of infringing the asserted claims of the asserted patents.[6]

Postscript's Two Touch software utilizes a "popup," which is a dialog box that appears when an end user visits a merchant's webpage and which allows the end user to opt in to receiving marketing messages via email or SMS.  (*Id.* at ¶¶ 54, 57; *id.*, ex. 6 at 64-66)  The popup includes a button referred to as a "call-to-action button" that the user can tap, which causes the user's text messaging application to open with an opt-in message that the user can send to sign up for SMS marketing messages.  (*Id.*, ex. 5 at ¶¶ 58, 84, 88-89, 96; *id.*, ex. 6 at 159)

The popups at issue are created by Postscript's software development kit ("SDK"), which is a set of code written in JavaScript programming language that is:  (1) downloaded to an end user's browser when he accesses a merchant's webpage and (2) then executed on the end user's browser.  (*Id.*, ex. 5 at ¶¶ 52, 68, 83; *id.*, ex. 7 at ¶¶ 140, 143)  Postscript's SDK contains a file called "events.ts" (the "events.ts file") that is downloaded onto the end user's mobile device and then executed by the mobile device.  (*Id.*, ex. 5 at ¶ 85 n.44; *id.*, ex. 6 at 100)

With its Motion, Postscript argues that summary judgment of non-infringement should be granted because use of Two Touch does not involve *sending a URI from a server to the end*

---

[6]    Postscript has asserted that it discontinued Two Touch in June 2024.  (D.I. 489, ex. 5 at ¶¶ 57, 60)

*user's mobile device*—instead, Two Touch operates by *generating the URI on the end user's mobile device*.  (D.I. 487 at 1, 5-6; D.I. 570 at 1; Tr. at 96)[7]  In response to this, Attentive argues that there two different pathways as to how Two Touch infringes the URI limitation—both of which preclude grant of summary judgment of non-infringement.  (D.I. 507 at 9-12; D.I. 489, ex. 7 at ¶ 182 (Dr. Polish setting out "two source code pathways" in Two Touch for the sending of a URI to the mobile device); Tr. at 100-01; Attentive's Summary Judgment Slides, Slide 3)[8]  The first pathway involves the events.ts file (the "events.ts theory") referenced above; the second pathway involves what is referred to as the SMSRedirectTest() function, which is found in the api\resources\_init_.py file (the "SMSRedirectTest() theory").  (D.I. 489, ex. 7 at ¶ 182)  In this Memorandum Opinion, the Court will address the Motion as it relates to Attentive's infringement theory regarding the first pathway—i.e., the events.ts theory.[9]

### B.     Discussion

With respect to the events.ts theory, Postscript contends that when an end user visits a merchant's webpage with Two Touch functionality:  (1) the user's mobile device downloads

---

[7]     Postscript asserts that, in contrast to Two Touch, Attentive's own products generate the URI at the server and send it to the user's mobile device, which is a "purposeful choice" that has particular advantages.  (D.I. 489, ex. 5 at ¶ 329; *see also* D.I. 487 at 6 & nn.4-5; D.I. 489, ex. 10 at 58-59 (Attentive's inventor testifying that Attentive's server defined and sent a URI to the mobile device, as "[t]here's an understanding that, generally, things done on a server are safer and less open to manipulation"))

[8]     In its briefing, Attentive had also argued that its doctrine of equivalents theory for the URI limitation (the "DOE theory") precluded summary judgment of non-infringement.  (D.I. 507 at 12-14 (citing D.I. 515, ex. C at ¶ 202))  However, on May 30, 2025, the Court issued an order striking Attentive's DOE theory as untimely.  (D.I. 657)  Therefore, Attentive's DOE theory is no longer in the case, and thus the Court need not consider it here.

[9]     The remaining portion of the Motion, relating to Attentive's infringement theory regarding the second pathway—i.e., the SMSRedirectTest() theory—will be taken up in a forthcoming Memorandum Opinion.

Postscript's SDK; (2) one of the SDK files, events.ts, contains code that is run if the user clicks on the call-to-action button of a popup; and (3) this code[10] creates the URI (on the user's mobile device). (*Id.*, ex. 5 at ¶¶ 68, 84-89, 306; D.I. 487 at 6-8; D.I. 570 at 1; Tr. at 100)[11]  According to Postscript, while "Two Touch popups are . . . created by sending code from a server to a mobile device, [] that code is not a URI" itself. (D.I. 487 at 9-10)  Because the URI referenced above is itself never sent from a server to the user's mobile device—and instead "comes into existence on the mobile device"—Postscript argues that there can be no infringement of the asserted claims pursuant to the events.ts theory. (*Id.* at 8)

Attentive, for its part, argues that Postscript's use of Two Touch does satisfy the URI limitation.  This is purportedly because when an end user visits the webpage of a merchant that makes use of Two Touch functionality and downloads Postscript's SDK: (1) Postscript's servers *separately* send to the user's mobile device the "string" that "*is* the URI"—a string that includes "the 'sms' header, the 'phone number' and the 'message body'" that make up the URI; and (2) the user's mobile device thereafter executes the events.ts file, which merely decides "how to display that URI on the mobile device." (D.I. 507 at 6-7 (emphasis in original); *see also id.* at 10 (Attentive arguing that Postscript's servers "send *the URI*" to the mobile device) (certain

---

[10]    The relevant lines of code in the events.ts file include lines 275-81. (D.I. 489, ex. 5 at ¶ 85 & n.44)

[11]    The code generates a URI by determining what type of mobile device the end user has and then selecting one of three possible formats for the URI that is then created. (*Id.* at ¶ 86 & n.44; *id.*, ex. 7 at ¶ 197)  While certain pieces of a URI will be the same for all URIs (such as beginning with the string "sms:" that enables the user's text message application to be loaded), other pieces of the URI will differ (such as the phone number and message they contain). (*Id.*, ex. 5 at ¶¶ 85-86 & n.44)

emphasis omitted, certain emphasis in original))  But this argument is not supported by the evidence that Attentive cites in support.  (*See* D.I. 570 at 2-5)

To bolster its assertion that Postscript's servers send to the user's mobile device a "string" that constitutes the URI (separately from the events.ts file), Attentive first quotes from a portion of paragraph 199 of Dr. Polish's opening report.  In that paragraph, Dr. Polish states that "the components comprising the URI are put together by Postscript's API or SDK servers and sent to the mobile device."  (D.I. 507 at 7 (quoting D.I. 515, ex. C at ¶ 199); *see also id.* at 10) But as Postscript retorts, a careful read of paragraph 199 demonstrates that the quoted language refers to the SMSRedirectTest() function, which is different than the events.ts file (and which will be discussed in a separate Memorandum Opinion).  (D.I. 570 at 2-3)  Indeed, the very next sentence of paragraph 199 tells us that this is so, when it begins "As the SMSRedirectTest() function demonstrates, however, the 'string' that corresponds to the URI is put together . . . ." (D.I. 515, ex. C at ¶ 199)  Later in paragraph 199, Dr. Polish makes clear that he is *then* turning to address the events.ts pathway, explaining that "[s]imilarly, the *code that puts together the components of the URI* in 'events.ts' is . . . *downloaded to the mobile device* as part of Postscript's SDK from Postscript's SDK servers."  (*Id.* (emphasis added); Tr. at 144-45 (Attentive's counsel acknowledging that Dr. Polish discusses both pathways in paragraph 199, and that it is clear that therein, Dr. Polish transitions to discussing the events.ts file theory as of the sentence beginning with "[s]imilarly"))  And indeed, this portion of paragraph 199 (particularly the part emphasized above in italics) actually bolsters *Postscript's* position here— because it states that the events.ts file contains the code that generates the URI, and that it does so only after this code is downloaded onto the mobile device.  In other words, the URI that Dr. Polish is describing in this part of paragraph 199 is not itself *sent to* the mobile device (i.e., from

10

a server); instead, it is *generated on* that very mobile device by code that has previously been downloaded to the device.  (D.I. 570 at 1; *see also* D.I. 489, ex. 6 at 100, 172-73 (Dr. Polish testifying that:  (1) events.ts is a file that is part of Postscript's SDK, that it is downloaded onto a user's mobile device, and is then run by that device; and (2) the code in the events.ts file is "going to assemble these pieces, and it's going to generate that string [that is the URI] and return it"))

Attentive also cited in support to paragraph 194 (and a few surrounding paragraphs) of Dr. Polish's opening report.  (D.I. 507 at 7, 11 (Attentive asserting that paragraphs 194 through 197 of Dr. Polish's opening report "analyz[e] a Postscript pop-up that invokes the file 'events.ts' and demonstrates a 'URI originating from Postscript's SDK' server"))  And during oral argument—when the Court asked Attentive's counsel why Dr. Polish's discussion of events.ts (and how the code therein is downloaded to the mobile device and then puts together the components of the URI) did not amount to an admission of non-infringement—counsel again directed the Court to paragraph 194.  (Tr. at 145)  But this paragraph too does not do the work that Attentive asks of it.  In Paragraph 194, Dr. Polish:  (1) states that "[m]y investigation of the header file associated with the above popup also shows that the Request Initiator Chain shows a URI originating from Postscript's SDK as shown below"; and (2) then includes a screenshot that is very difficult to read.  (D.I. 515, ex. C at ¶ 194)  Contrary to Attentive's assertion, Paragraph 194 says nothing about Postscript's *servers*, or about whether those servers actually send a URI to a mobile device.  It simply says that the URI "originat[es] from Postscript's SDK"—a fact that is undisputed, and that does not demonstrate that the URI is generated on Postscript's *servers*.

11

(D.I. 570 at 3; Tr. at 146-47)[12]  Indeed, in other portions of Dr. Polish's report, he refers to Postscript's SDK as "client-side" code that is downloaded to the user's mobile device.  (D.I. 489, ex. 7 at ¶¶ 140, 199; *see also* D.I. 570 at 3)

Attentive next cites in support to paragraph 173 of Dr. Polish's opening report.  Here, Dr. Polish states that "the message body created at Postscript's servers when defining and sending the URI related to the two-touch mobile pop-ups constitute a 'custom [text] message' at least because the content of the message created depends on the identity of the shop for which it is created."  (D.I. 507 at 7, 10 (quoting D.I. 515, ex. C at ¶ 173) (emphasis added))  While this opinion states that the *message body* is created at Postscript's servers, it does not clearly say that the *URI* is created at Postscript's servers.  (D.I. 570 at 3)  And to the extent it does mean to suggest that, the paragraph cites to absolutely nothing in support.  (D.I. 489, ex. 7 at ¶ 173)

Attentive also cites to paragraph 202 of Dr. Polish's opening report; this paragraph contains Dr. Polish's now-stricken DOE theory.  (D.I. 507 at 11; *see also supra* n.8)  This paragraph only supports *Postscript's* position.  In it, Dr. Polish opines that while the server

---

[12]     During oral argument, Attentive's counsel admitted that Dr. Polish did not use the term "server" in paragraph 194.  (Tr. at 146-47)  But counsel attempted to argue that the unintelligible language in the screenshot somehow depicts a URI originating and being sent from Postscript's server "because [Dr. Polish] is pointing to the URL off Postscript's SDK server." (*Id*.; *see also* Attentive's Summary Judgment Slides, Slide 12)  This assertion is nothing more than attorney argument.  Nowhere in paragraph 194 does Dr. Polish affirmatively state that the screenshot depicted therein somehow provides evidence that a URI is being sent from a Postscript server to a mobile device.  And such a conclusion is not indicated to the Court simply from its own analysis of the screenshot.  Thus, paragraph 194 cannot suffice to demonstrate a genuine issue of material fact regarding whether Two Touch infringes the URI limitation pursuant to the events.ts theory.  *See, e.g.*, *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1326 (Fed. Cir. 2002) (affirming summary judgment of no literal infringement, where the plaintiff relied on: (1) an expert declaration that did not clearly state that the accused product infringed the relevant limitation; (2) blurred and indistinct photographs of the accused product; and (3) a conclusory statement in the expert declaration that each and every limitation of the claims are found in the accused product).

defines "the components of the URI[,]" those components are "put together client-side[.]" (D.I. 489, ex. 7 at ¶ 202; *see also* D.I. 570 at 3)

Next, Attentive relies on paragraph 381 of Dr. Polish's opening report, in support of the proposition that "a string of characters" that is the URI is downloaded to the user's mobile device from Postscript's servers. (D.I. 507 at 7, 10 (quoting D.I. 515, ex. C at ¶ 381)) But the evidence that Dr. Polish cites in paragraph 381 in support of this assertion does not support it at all. To back up the notion that the events.ts file sends a "string [that] is a 'URI'" from "Postscript's servers" to the user's "mobile device[,]" Dr. Polish first cites to a document that is actually code for the SMSRedirectTest(), which, again, is a separate file from events.ts. (D.I. 515, ex. C at ¶ 381 (citing POSTSCRIPT_SC0000053-55); D.I. 575, ex. 30) Dr. Polish then cites to pages of the deposition testimony of Colin Turner, Postscript's corporate representative and co-founder. (D.I. 515, ex. C at ¶ 381 (citing Colin Turner Dep. Tr. at 160-61, 181, 188-89)) But the first citation to Mr. Turner's deposition (in which he states that particular lines of code "appear[] to redirect to a string that . . . . [is] a URI"), when read in context, relate to a discussion of SMSRedirectTest(), not events.ts. (D.I. 575, ex. 28 at 159-61)[13] The next citation is merely to a question from Attentive's counsel. (*Id.* at 181) And the final two citations relate only to Mr. Turner's explanation that events.ts is part of the SDK and that it is likely that some of the file's functions are used in Two Touch—a discussion that does not equate to an assertion that Postscript's servers send a string that is a URI to the user's mobile device. (*Id.* at 188-89)

---

[13]    Indeed, in a nearly identical earlier paragraph discussing SMSRedirectTest(), Dr. Polish cites to this same evidence in support of the notion that Postscript's servers send the user's mobile device a string that is the URI. (D.I. 515, ex. C at ¶ 375)

Finally, in its briefing, Attentive: (1) states that "[a]fter receiving the string containing the URI from Postscript's servers, the user's mobile device [then separately] executes the file 'events.ts,' which [simply] makes a decision about how to display that URI on the mobile device"; and (2) cites to paragraph 388 of Dr. Polish's opening report to provide examples of how the URI is tailored to comport to the user's operating system. (D.I. 507 at 7) But while Dr. Polish does state in paragraph 388 that the "URI [is] defined at Postscript's server" and makes a few other references to a "URI defined at the server[,]" these simply amount to conclusory assertions. Nowhere in paragraph 388 does Dr. Polish support these assertions with citations to any evidence actually demonstrating that the URI in question is sent from a Postscript server to a user's mobile device. (D.I. 515, ex. C at ¶ 388)

In sum, Attentive has not established a genuine dispute of material fact as to whether Two Touch infringes the URI limitation pursuant to Attentive's events.ts theory. Instead, the record conclusively demonstrates that Two Touch does not infringe the URI limitation with respect to its utilization of the events.ts file. Infringement of the asserted claims requires that a URI be sent to the user's mobile device. But the undisputed evidence makes clear that "*the code that puts together the components of the URI in 'events.ts' is . . . downloaded to the mobile device as part of Postscript's SDK from Postscript's SDK servers*" and then the URI "is generated on the mobile device[.]" (D.I. 515, ex. C at ¶ 199 (emphasis added); D.I. 489, ex. 5 at ¶ 87)[14] Thus, the Court grants Postscript's Motion with respect to the events.ts theory of

---

[14]    In its opening brief, Postscript argued that sending code that ultimately generates a URI from a server to a mobile device is not the same thing as sending a URI itself. (D.I. 487 at 9-10) But in response, Attentive does not seem to disagree. Instead, it argues that Postscript's servers send to the mobile device a string that *is* a URI—and send that string separately from the code (events.ts) that makes a decision about how the URI is to be displayed on the device. (D.I. 507 at 6-7, 10 ("Attentive's position is *not*, as Postscript contends, that Postscript's servers *send*

14

infringement.  *Cellspin Soft, Inc. v. Fitbit, Inc.*, Case No. 4:17-CV-05928-YGR, 2022 WL 2784467, at *5 (N.D. Cal. June 15, 2022) (granting the defendant's motion for summary judgment of non-infringement with respect to a particular claim limitation, where the record evidence did not support the plaintiff's theory of infringement), *aff'd sub nom. Cellspin Soft, Inc. v. Fitbit LLC*, No. 2022-2025, 2024 WL 4648069 (Fed. Cir. Nov. 1, 2024).

## IV.    CONCLUSION

For the foregoing reasons, the Court orders that Postscript's Motion is GRANTED as to Attentive's infringement theory regarding the events.ts pathway.  An appropriate Order will issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion.  Any such redacted version shall be submitted no later than **August 13, 2025** for review by the Court.  It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Opinion.

---

*code that generates the URI* (i.e. the 'events.ts' file) . . . but that those servers separately *send the URI* to the mobile device.") (emphasis in original))  Therefore, the Court need not address this argument further.