IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ATTENTIVE MOBILE INC., ) | |
| ) | |
|     Plaintiff / Counterclaim- ) | |
|     Defendant, ) | |
| ) | |
|     v. ) | Civil Action No. 23-87-CJB |
| ) | |
| STODGE, INC., d/b/a POSTSCRIPT, ) | |
| ) | |
|     Defendant / Counterclaim- ) | |
|     Plaintiff. ) | |

Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Christopher C. Campbell and Jonathan Weinberg, KING & SPALDING LLP, Washington, DC; Britton F. Davis and Brian Eutermoser, KING & SPALDING LLP, Denver, CO; Cori C. Steinmann, KING & SPALDING LLP, Austin, TX, Attorneys for Plaintiff/Counterclaim-Defendant Attentive Mobile Inc.

Daniel M. Silver and Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Timothy C. Saulsbury, Hannah Jiam and Joyce C. Li, MORRISON FOERSTER, San Francisco, CA; Sara Doudar, MORRISON FOERSTER, Los Angeles, CA; Aditya V. Kamdar, MORRISON FOERSTER, Washington, D.C.; Raghav Krishnapriyan, ORRICK, HERRINGTON & SUTCLIFFE, LLP, San Francisco, CA, Attorneys for Defendant/Counterclaim-Plaintiff Stodge Inc., d/b/a Postscript.

**MEMORANDUM OPINION**

August 6, 2025
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiff/Counterclaim-Defendant Attentive Mobile Inc. ("Attentive"), Attentive alleges infringement of United States Patent Nos. 11,416,887 (the "'887 patent"), 11,416,897 (the "'897 patent") and 11,553,074 (the "'074 patent" and collectively with the other patents, the "asserted patents"). (D.I. 1 at ¶¶ 5, 9; D.I. 667 at ¶ 20) Presently pending before the Court is Defendant/Counterclaim-Plaintiff Stodge Inc. d/b/a Postscript's ("Postscript") motion for summary judgment No. 1 on Attentive's claims of infringement of the '887 patent, '897 patent and '074 patent (the "Motion").[1] (D.I. 467) Attentive opposes the Motion. This Memorandum Opinion will address the Motion as it relates the second of Attentive's two theories of infringement (relating to the "SMSRedirectTest() theory"). As to that theory, the Motion is GRANTED.[2]

## I.    BACKGROUND

The Court incorporates by reference its discussion of the background of this case and the instant Motion, which is found in its Memorandum Opinion dated August 6, 2025 (the "August 6 MO"). (D.I. 703 at 2) The Court also here writes primarily for the parties, and so any additional facts relevant to this Memorandum Opinion will be discussed in Section III below.

## II.   STANDARD OF REVIEW

---

[1] Postscript has filed a counterclaim asserting that Attentive infringes United States Patent No. 11,709,660. (D.I. 50 at 52-53, at ¶¶ 92-97)

[2] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 14)

The Court incorporates by reference its discussion of the legal standards relating to summary judgment motions and to the infringement analysis, which were also set out in the August 6 MO.  (*Id.* at 3-5)

## III. DISCUSSION

### A. Introduction

In the August 6 MO, the Court described the technology at issue in the asserted patents, as well as how all of the asserted claims of those patents require that a URI must be sent (in most cases from the server) to the end user's mobile device (the "URI limitation").  (*Id.* at 5-7)  It also described therein Postscript's accused Two Touch software ("Two Touch") and how it utilizes certain "popups" that are created by Postscript's software development kit ("SDK").  (*Id.* at 7)  The Court incorporates by reference this discussion, and will assume familiarity with it herein.

As the August 6 MO explained, in response to the Motion, Attentive argues that there are two different pathways as to how Two Touch infringes the URI limitation, each precluding summary judgment of non-infringement.  (*Id.* at 8)  In the August 6 MO, the Court addressed the Motion as it relates to the first pathway—involving the "events.ts theory"—and concluded that the Motion should be granted in that regard.  Herein, the Court addresses the Motion as it relates to the second pathway, i.e., the SMSRedirectTest() theory.

### B. Discussion

Attentive's SMSRedirectTest() theory is that:  (1) the SMSRedirectTest() function is invoked by Postscript's Two Touch software and Postscript's own Two Touch popups; (2) the SMSRedirectTest() function resides at Postscript's servers, and it causes Postscript's servers to send a URI string to the user's mobile device; and (3) Attentive's infringement expert Dr. Polish determined this by examining a Postscript popup at the webpage threeshipsbeauty.com.  (D.I.

507 at 8, 11-12) Postscript, on the other hand, contends that: (1) SMSRedirectTest() is not used with respect to the accused Two Touch functionality, but instead is only used with a different unaccused Postscript feature called Opt-In Links (and Postscript's expert has provided an unchallenged opinion as to why the use of Postscript's Opt-In Links does not infringe); (2) the popup that Dr. Polish examined at threeshipsbeauty.com is a popup created not by Postscript, but instead by third-party Klaviyo; and (3) Dr. Polish offers no infringement theory for how the use of a Klaviyo popup could be infringing. (D.I. 487 at 12-14; D.I. 570 at 5-6)

In the end, it was undisputed in the parties' briefing that whether Attentive's SMSRedirectTest() theory is viable boils down to whether the popup used by threeshipsbeauty.com is a first-party Postscript popup, or a third-party Klaviyo popup. (D.I. 487 at 12-14; D.I. 507 at 11-12; D.I. 570 at 5-6; Tr. at 108, 110-12, 116 (Postscript's counsel noting that the sole argument in Attentive's brief with respect to its SMSRedirectTest() theory is that the popup associated with threeshipsbeauty.com is a Postscript popup); Tr. at 142-43 (Attentive's counsel asserting that "[i]f threeshipsbeauty.com is merely a third-party popup, then the SMS[]Redirect[Test()] pathway is sort of moot, but . . . we have presented affirmative evidence that [it] is a first-party popup"))[3] And as discussed below, Attentive has not demonstrated a

---

[3] For the first time at oral argument, Attentive's counsel at times suggested that at least certain asserted claims do not depend on whether the popup on threeshipsbeauty.com is a Postscript popup or a third-party Klaviyo popup—and so there it doesn't matter for purposes of Attentive's SMSRedirectTest() theory whose popup it is. (Tr. at 123, 132-33, 141-42; Attentive's Summary Judgment Slides, Slide 10) However, as noted above, this argument was made nowhere in Attentive's briefing with regard to this portion of the Motion. (D.I. 507 at 8, 11-12; Tr. at 142) A party may not make new arguments during oral argument that were not made in its brief; such arguments are waived or forfeited, as is Attentive's late-made argument here. *See, e.g.*, *In re Selman*, Civil Action No. 23-895-CJB, 2024 WL 1092025, at *2 n.4 (D. Del. Mar. 13, 2024).

genuine dispute of material fact as to whether threeshipsbeauty.com utilized a Postscript popup. To the contrary, the evidence is one-sided that it did not.

To that end, on Postscript's side of the ledger, there is plenty of evidence (including lots of evidence generated *by Attentive and its own expert*) demonstrating that the popup associated with threeshipsbeauty.com is a Klaviyo popup:

- Back in the fall of 2024, a discovery dispute arose between the parties relating to third-party popup providers that Postscript's customers could use to opt-in users so that users would receive marketing messages. (D.I. 352 at 1-2) Attentive sought to compel Postscript to produce documents relating to the use of these third-party providers. (*Id.* at 2) Attentive noted that its infringement contentions expressly contemplated circumstances where Two Touch had been outsourced to third-party popup providers; in doing so, Attentive made reference to the "specific example of 'Three Ships Beauty,' a Postscript customer that utilizes a *third-party popup provider* to opt-in subscribers using the accused two-tap functionality." (*Id.* (emphasis added)) Postscript responded that "Three Ships Beauty does use a Klaviyo popup" but disputed that Attentive had disclosed any infringement theories relating to third-party popups. (D.I. 365 at 1-2);[4]

- Dr. Polish directly opines in his opening report that threeeshipsbeauty.com uses a "two-touch popup created by Kla[viy]o[.]" (D.I. 489, ex. 7 at ¶ 141);

- Dr. Polish testified in his deposition that Klaviyo wrote the code for the popup associated with threeshipsbeauty.com. (*Id.*, ex. 6 at 160-61);

- Postscript's expert, Barbara Frederiksen, visited threeshipsbeauty.com and confirmed that the popup on the webpage is a Klaviyo popup. (D.I. 575, ex. 27 at ¶¶ 231-37) She also confirmed that threeshipsbeauty.com used a Klaviyo popup at the time that Dr. Polish conducted his infringement analysis. (*Id.* at ¶¶ 238-80); and

---

[4] The Court denied Attentive's motion to compel because Attentive had not sufficiently disclosed any theory as to how Postscript was guilty of infringement based on popups provided by third parties. (D.I. 430)

5

- When asked during his deposition if he could point to "any evidence of the SMSRedirectTest[()] being called from a source other than Postscript Opt-in Link[, such as Two Touch,]" Dr. Polish responded "I don't think so, no." (D.I. 489, ex. 6 at 180)[5]

So what does Attentive point to in support of its position that threeshipsbeauty.com *does* utilize a Postscript popup—i.e., in order to attempt to show why there is a genuine issue of material fact as to whether the SMSRedirectTest() function is used with Two Touch? Here, Attentive's brief cites to paragraphs 152 through 156 and paragraphs 185 through 189 of Dr. Polish's opening report; Attentive asserts that these paragraphs demonstrate why the popup located at threeshipsbeauty.com is a Postscript popup. (D.I. 507 at 11-12) The Court will examine these paragraphs in turn.

The Court turns first to paragraphs 185 through 189. They are not particularly helpful to Attentive. It is true that paragraph 185 references a "Postscript pop-up" and that the paragraphs that follow discuss threeshipsbeauty.com. (D.I. 515, ex. C at ¶¶ 185-89) But paragraph 185 is about what happens *after* a user taps a sign-up button in a Postscript popup—it is not about who created the popup used at threeshipsbeauty.com. (*Id.* at ¶ 185 ("Once consumers click the button, for example a 'Sign Up' button, within a Postscript pop-up, the 'client server,' i.e. the servers that implement the Postscript customer's point of sale, e.g. Shopify, webpage, send a HTTP GET request (a data retrieval request) to Postscript's API servers[.]"); *see also* Tr. at 118) Nor do the remainder of these paragraphs demonstrate that the threeshipsbeauty.com popup is a Postscript popup. (D.I. 515, ex. C at ¶¶ 186-89; Tr. at 130 (Attentive's counsel acknowledging

---

[5]   Attentive does not dispute that the use of Klaviyo popups with Postscript Opt-In Links does not infringe. (*See* D.I. 487 at 14 (citing D.I. 489, ex. 5 at ¶¶ 186-226); D.I. 507 at 11-12; D.I. 570 at 5; Tr. at 111-12)

that in these paragraphs, "it's not as clear that" the threeshipbeauty.com popup is a Postscript popup)) Thus, these paragraphs do not establish a genuine dispute of material fact as to the key issue at play here.

Attentive relies most heavily on paragraphs 152 through 156 of Dr. Polish's report. (Tr. at 122-30) In these paragraphs, Dr. Polish explains, *inter alia*, that the code on threeshipsbeauty.com "shows that the Shopify server communicates with Postscript's SDK" and that "[i]n conjunction with the customer website's connection to the Postscript SDK, a mobile popup is created on the customer's website using an <iframe> that retrieves data from 'sdk.postscript.io/mobile.html' to create a clickable button and link to the Postscript[] servers[.]" (D.I. 515, ex. C at ¶¶ 152, 155) These paragraphs also display snippets of source code that seem to reference Postscript's SDK (e.g., "sdk.postscript.io"). (*Id*. at ¶¶ 152-56)

A key difficulty for Attentive is that nowhere in these paragraphs does Dr. Polish flatly or clearly state that the "popup is a Postscript popup," or even that "Postscript's SDK creates the popup." (Tr. at 156; D.I. 570 at 6)[6] Additionally, the record otherwise demonstrates that simply because a customer's device "communicates with Postscript's SDK[,]" this does not necessarily mean that a *Postscript* popup is generated. (D.I. 489, ex. 5 at ¶¶ 169, 266-67 (Ms. Frederiksen explaining that a merchant can choose to include code to download Postscript's SDK for other reasons than creating popups); *see also* Tr. at 155-56) Nor did Attentive's briefing walk through

---

[6]     Indeed, even Attentive's counsel characterized paragraphs 152 and 153 as showing that "the website threeshipsbeauty.com uses the Postscript SDK" which, he claims, "as you heard from [Postscript's] counsel, [] means that the Postscript threeshipsbeauty.com popup being used here is a first-party Postscript popup." (Tr. at 122) But Postscript's counsel did not state that mere use by a website of Postscript's SDK means that the website's popup is a Postscript popup. Instead, Postscript's counsel stated that if a Postscript popup invoked SMSRedirectTest(), then Postscript's SDK would have some sort of reference to SMSRedirectTest(). (*Id.* at 120)

these five paragraphs in Dr. Polish's report and cogently explain how they demonstrated that the threeshipsbeauty.com popup is a Postscript popup. (D.I. 507 at 12) And perhaps most importantly, as was previously noted above, just 11 paragraphs earlier—in paragraph 141 of his report—Dr. Polish directly stated that threeshipsbeauty.com uses a "two-touch pop-up *created by Kla[viy]o*[.]" (D.I. 489, ex. 7 at ¶ 141 (emphasis added)) In light of that unambiguous assertion—and in light of the lack of any clear indication to the contrary in paragraphs 152-56—these paragraphs just cannot be read to convey that threeshipsbeauty.com utilized a Postscript popup, instead.

During oral argument, Attentive's counsel seemed to try to put a different spin on Dr. Polish's report and what it was trying to say. There, counsel asserted that "there were two different threeshipsbeauty.com popups"—one created by Klaviyo that Dr. Polish analyzed for "purposes of induced infringement" (i.e., in paragraph 141), and another created by Postscript "that Dr. Polish is actually using for the purposes of direct infringement" (i.e., in paragraphs 152 through 155). (Tr. at 136-38, 140) *This late-made argument is nowhere to be found in in Attentive's brief.* (*See* D.I. 507 at 11-12; Tr. at 155) And so it is waived. *See supra* n.3. Even were it not waived, counsel's assertion is not made clear by Dr. Polish's report at all. In other words, it is not as if in paragraph 141, or in paragraphs 152-56, or anywhere in between, Dr. Polish actually states that there are two different threeshipsbeauty.com popups that he would be analyzing—one created by a third party, and one created by Postscript. Instead, he unambiguously says in paragraph 141 that the threeshipsbeauty.com popup is a Klaviyo popup, and in paragraphs 152-55, he never clearly says that threeshipsbeauty.com "had a Postscript popup." (D.I. 570 at 6; Tr. at 155-56) Moreover, as noted above, when asked in his deposition if threeshipsbeauty.com uses a popup created by Klaviyo, Dr. Polish responded that "it looks like

8

Klaviyo offered the code of the pop-up, but it's . . . accessing Postscript's servers to perform the functions to register the user. . . . Klaviyo wrote the Javascript code, but then it accesses . . . Postscript's infrastructure to . . . do the registration." (D.I. 489, ex. 6 at 160-61) Dr. Polish did not qualify his response by adding that threeshipsbeauty.com *also* has used a Postscript popup.

For all of the reasons set out above, the collective record here would not permit a reasonable jury to conclude that threeshipsbeauty.com made use of a Postscript popup in addition to a Klaviyo popup. The Court therefore grants Postscript's Motion with respect to the SMSRedirectTest() theory. *See, e.g.*, *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 873-75 (Fed. Cir. 2024) (affirming the district court's grant of summary judgment of non-infringement, where the claim limitation at issue required that information used by the Timeline backend system must be stored by TimelineDB, and where (1) the defendant presented focused, concrete evidence with respect to the non-infringement of the limitation at issue, while (2) the plaintiff's evidence, including the testimony of its expert, did not reasonably support that TimelineDB stored all of the information used by the Timeline backend system); *Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.*, 239 F. Supp. 3d 822, 831 (D. Del. 2017) (explaining that plaintiff's expert did not "directly express" the plaintiff's position, and instead merely suggested it, and so the opinion was "at best, a mere scintilla of evidence in support of Reckitt's position, and is insufficient to raise a genuine dispute of material fact"), *aff'd*, 737 F. App'x 537 (Fed. Cir. 2018).

IV.   **CONCLUSION**

For the foregoing reasons, the Court orders that Postscript's Motion is GRANTED as to Attentive's infringement theory regarding the SMSRedirectTest() pathway, meaning that the Motion has now been granted in its entirety. An appropriate Order will issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion. Any such redacted version shall be submitted no later than **August 13, 2025** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Opinion.