# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Plaintiff / Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-87-CJB |
| | ) | |
| STODGE, INC., d/b/a POSTSCRIPT, | ) | |
| | ) | |
| Defendant / Counterclaim-Plaintiff. | ) | |

---

Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Christopher C. Campbell and Jonathan Weinberg, KING & SPALDING LLP, Washington, DC; Britton F. Davis and Brian Eutermoser, KING & SPALDING LLP, Denver, CO; Cori C. Steinmann, KING & SPALDING LLP, Austin, TX, Attorneys for Plaintiff/Counterclaim-Defendant Attentive Mobile Inc.

Daniel M. Silver and Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Timothy C. Saulsbury, Eric C. Wiener, Hannah Jiam, Bethany Bengfort, Joyce C. Li, MORRISON FOERSTER, San Francisco, CA; Sara Doudar, MORRISON FOERSTER, Los Angeles, CA; Aditya V. Kamdar, MORRISON FOERSTER, Washington, D.C.; Raghav Krishnapriyan, ORRICK, HERRINGTON & SUTCLIFFE, LLP, San Francisco, CA, Attorneys for Defendant/Counterclaim-Plaintiff Stodge Inc., d/b/a Postscript.

---

## MEMORANDUM OPINION

August 12, 2025
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiff/Counterclaim-Defendant Attentive Mobile Inc. ("Attentive"), Defendant/Counterclaim-Plaintiff Stodge Inc. d/b/a Postscript ("Postscript") filed an amended Answer, asserting that Attentive infringes United States Patent No. 11,709,660 (the "'660 patent"). (D.I. 50 at 52-53, at ¶¶ 92-97) Presently pending before the Court is Attentive's motion for summary judgment of non-infringement of the '660 patent (the "Motion"). (D.I. 476) Postscript opposes the Motion. For the reasons set forth below, the Motion is DENIED.[1]

## I.   BACKGROUND

Attentive commenced this action on January 25, 2023. (D.I. 1) Postscript filed the operative amended Answer and counterclaims on August 25, 2023. (D.I. 50)

Attentive filed the instant Motion on December 3, 2024. (D.I. 476) The Motion was fully briefed as of January 9, 2025. (D.I. 579) A 5-day jury trial is set to begin on August 25, 2025. (D.I. 645 at 4)

The Court here writes primarily for the parties, and so any facts relevant to this Memorandum Opinion will be discussed in Section III below.

## II.   STANDARD OF REVIEW

The Court incorporates by reference the standard of review for summary judgment motions and the summary judgment-related legal standards relating to claims of patent infringement, which it set out in its August 6, 2025 Memorandum Opinion. (D.I. 703 at 3-5)

---

[1]     The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 14)

2

## III.    DISCUSSION

The '660 patent is entitled "Integrated Third-Party Application Builder Trigger for Message Flow," and it claims systems and methods involving a message management platform that allows merchants to create and send targeted multi-message campaigns to a segment of their subscribers (in order to, for example, induce their subscribers to make a purchase).  ('660 patent, Abstract; *id.*, cols. 2:26-28, 5:4-9, 21:66-22:2; *see also* D.I. 480, ex. 1 at ¶ 16 ("The '660 patent enables merchants to create multi-message campaigns where performance of the campaign can be monitored and tracked across a series of different messages, and where follow-up messages can be tailored based on user actions, such as clicking a link or making a purchase."))  The invention calls for follow-up messages to be sent to a subset of subscribers based on a "trigger condition."  ('660 patent, cols. 22:9-13, 23:32-37, 32:44-53)  Accordingly, all of the asserted claims require "monitoring [a] trigger condition in the message flow in response to the first subscriber being enrolled in the segment of subscribers" (the "monitoring limitation").  (*Id.*, col. 32:44-46; *see also id.*, col. 27:23-26)  Claim 1 of the '660 patent is representative:

> **1.** A system, comprising:
> at least one memory; and
> at least one processor coupled with the at least one memory, the at least one memory storing code comprising instructions, the instructions when executed by the at least one processor cause a message management platform to perform steps comprising:
> presenting a user interface configured to receive, from an application operator, a configuration of a message flow, the message flow comprising recipient criteria defining a segment of subscribers to receive messages from the message flow, at least one message in the message flow associated with a trigger condition;
> subscribing to, on behalf of the application operator, at least one application programming interface (API) notification channel of an application builder platform, the application builder platform operational as a backend component of an application controlled by the application operator;

3

receiving a plurality of API notifications from the application builder platform, the plurality of API notifications comprising respective API payloads that include information describing events associated with a plurality of users of the application builder platform;

receiving a plurality of code-snippet notifications describing events associated with a plurality of user computing devices, a code-snippet notification being received from a user computing device of the plurality of user computing devices via a corresponding code snippet incorporated in an instance of the application operated at the user computing device, the user computing device being associated with a corresponding subscriber with a corresponding subscriber identifier used by the message management platform;

identifying a plurality of user identifiers in the plurality of API payloads from the application builder platform;

determining that the plurality of user identifiers in the plurality of API payloads correspond to a plurality of subscriber identifiers used by the message management platform;

storing, for a first subscriber associated with a first subscriber identifier, subscriber events, the subscriber events comprising one or more events described in one or more API notifications associated with the first subscriber and one or more events described in one or more code-snippet notifications from one of the user computing devices associated with the first subscriber identifier;

determining, based on a plurality of the stored subscriber events associated with the first subscriber, that the first subscriber satisfies the recipient criteria;

enrolling the first subscriber to the segment of subscribers who are to receive messages from the message flow in response to the determination that the recipient criteria is satisfied;

*monitoring the trigger condition in the message flow in response to the first subscriber being enrolled in the segment of subscribers;*
receiving one or more new subscriber events associated with the first subscriber;

determining that the one or more new subscriber events meet the trigger condition in the message flow; and

transmitting the at least one message in the message flow that is associated with the trigger condition to the first subscriber.

('660 patent, cols. 31:53-32:53 (emphasis added))

Postscript accuses Attentive's Campaign Composer product ("Campaign Composer") of infringing claims 4, 6, 10 and 14 of the '660 patent. (D.I. 690 at ¶ 2) Campaign Composer is an

application that allows merchants to send single- or multi-message campaigns to the merchant's subscriber list (or a portion thereof).  (D.I. 480, ex. 1 at ¶¶ 18-19; *id.*, ex. 2 at ¶ 343)  For example, a merchant may send a first message to a group of users, and then send a second, follow-up message to users who clicked on the previous message but did not purchase a product.  (*Id.*, ex. 1 at ¶¶ 37-38)  Postscript's expert, Barbara Frederiksen, points to this scenario—i.e., one where the user clicked on a link in the first message but did not purchase the product—as a relevant trigger condition (the "click but did not buy trigger condition").  (*Id.* at ¶¶ 38, 100)

With its Motion, Attentive argues that:  (1) the monitoring limitation, when properly construed, requires "constant supervision or tracking" of a trigger condition; (2) Campaign Composer does not literally practice the monitoring limitation because it does not constantly monitor trigger conditions (nor does it engage in the requisite "monitoring" in any other way); and (3) Campaign Composer cannot be found to practice the monitoring limitation under the doctrine of equivalents ("DOE") either, because Postscript's DOE argument vitiates the limitation.  (D.I. 477 at 1, 7-14 (emphasis omitted); D.I. 579 at 4)  Below, the Court will explain why Attentive's Motion cannot be granted on any of these grounds.

### A.    Claim Construction of the Monitoring Limitation

As an initial matter, Attentive's proposed claim construction for the monitoring limitation is not supported by the intrinsic record.  Attentive's Motion is premised in part on its assertion that the monitoring limitation requires *constant* supervision or tracking of a trigger condition to determine whether it has been satisfied.  (D.I. 477 at 7-8, 11 ("The proper construction of the [monitoring limitation] requires that, in order to infringe, Campaign Composer must *constantly*

engage or track the subscriber events.") (emphasis added))[2]  To that end, it argues that "monitoring the trigger condition in the message flow in response to the first subscriber being enrolled in the segment of subscribers" should be construed to mean "active engagement, *constant* supervision, or tracking of subscriber events to *constantly* calculate whether to send a message to a subscriber the instance a trigger event is detected." (*Id.* at 8 (internal quotation marks and brackets omitted; certain emphasis in original, certain emphasis added))[3]

Postscript retorts that "monitoring" a trigger condition does not *require* a process that is constant, but instead can encompass periodic or repeated detection. (D.I. 530 at 3, 8-12)[4]  The Court easily agrees with Postscript that "monitoring" doesn't require *constantly* tracking a subscriber event and calculating whether to send a message.

In support of its "constant[]" requirement, Attentive first points to the opinion of its expert, Dr. Nathaniel Polish. (D.I. 477 at 8 (citing D.I. 480, ex. 2 at ¶ 403))  Dr. Polish states that "[g]enerally, in the relevant field of art, 'monitoring' requires active engagement and constant surveillance of an object." (D.I. 480, ex. 2 at ¶ 403)  But the only evidence that Dr. Polish cites in support of this assertion is column 27, lines 23-28 of the patent specification.

---

[2]     During the claim construction phase of the case, the parties had agreed that no terms from the '660 patent required construction. (*See* D.I. 126)  But now one does.

[3]     The Court has often set out the relevant legal standards for claim construction, including in *Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*, Civil Action No. 20-333-LPS-CJB, 2021 WL 4621866, at *2-3 (D. Del. Oct. 7, 2021).  The Court hereby incorporates by reference its discussion in *Vytacera Bio* of these legal standards and will follow them herein.

[4]     Postscript contends that "monitoring the trigger condition in the message flow in response to the first subscriber being enrolled in the segment of subscribers" should be construed to mean "tracking whether a trigger condition for a message has occurred through the continuous, repeated, or periodic detection of one or more event trigger candidates associated with the trigger condition." (D.I. 530 at 9 (internal quotation marks omitted))

That part of the patent states that "the application builder platform **130** may detect trigger events that are being monitored by the message management platform **110** in one or more launched flow plans and transmits the event payload when an instance of the trigger event is detected." ('660 patent, col. 27:23-28 (*cited in* D.I. 480, ex. 2 at ¶ 403))  This passage does not tell us that monitoring requires constant tracking.  Instead, it simply advises that in the described embodiment, the message management platform monitors trigger events, and transmits an event payload (which describes details of the event) when an instance of the trigger event is detected. (*See id.*, cols. 25:52-57, 27:23-28)

In its briefing, Attentive also makes the following assertion in support of its position: "[c]ombining 'monitoring' with 'trigger condition,' therefore, requires active engagement, constant supervision, or tracking of subscriber events to *constantly* calculate whether to send a message to a subscriber the 'instance a trigger event is detected.'"  (D.I. 477 at 8 (quoting D.I. 480, ex. 2 at ¶ 403 (quoting '660 patent, col. 27:27-28)) (emphasis in original))  In this part of its opening brief, Attentive is quoting from Dr. Polish's report—and in that report, for this proposition, Dr. Polish is quoting from the same portion of column 27 that the Court just discussed above.  (*Id.*)  But this portion of column 27 does not say what Attentive claims it says—i.e., that the message management platform transmits a *message* to the subscriber *the instant* a trigger event is detected.  (*See* D.I. 530 at 11)  Instead, again, this portion of the specification states only that the platform transmits an "event payload" (not a "message") when "*an* instance *of the trigger event* is detected" (not "*the* instance *a trigger event* is detected").

('660 patent, col. 27:23-28 (emphasis added))  And so Attentive's misreading and misquoting of the patent cannot help it here.[5]

Attentive also points to two other portions of the specification in support of its view that the claims require constant monitoring.  Here, citing to column 27, lines 6-12 and 23-24 of the specification, Attentive asserts that "[t]he '660 patent agrees" that "'monitoring' requires active engagement with or constant supervision of data" because the patent states that "the system must 'track[] user activity' or 'track[] the activities of [a customer website's] visitors.'"  (D.I. 477 at 8 (quoting '660 patent, col. 27:6-12, 27:23-24))  But as Postscript suggests, (D.I. 530 at 10), all these portions of the specification say is that the system at issue must "track[]" this activity, so that it is able to detect that a trigger event has occurred.  ('660 patent, col. 27:6-12, 27:23-24)  The Court is unsure how Attentive is making the leap to conclude that "track[ing]" user activity or the activity of a website's visitors must be *constant*.  These portions of the specification (nor anything else that Attentive points to) surely do not say that.  (*See* D.I. 530 at 10)

Indeed, as Postscript points out, the record demonstrates that the plain and ordinary meaning of "monitoring" is "regularly or repeatedly checking the status of" something (as opposed to *constantly* checking the status of something).  (*Id.* at 9 (citing D.I. 533, ex. 1 at 2 (Oxford English Dictionary defining "monitor[ing]" as "measur[ing] or test[ing] at intervals"); *id.*, ex. 2 at 1 (American Heritage Dictionary defining "monitor[ing]" as "test[ing] or sampl[ing], especially on a regular or ongoing basis"); *id.*, ex. 6 at 3-4 (website describing "monitoring" in the software context as "regularly poll[ing]" systems to collect metrics)); *see also id.*, ex. 7 at 1);

---

[5]    Even if this portion of the patent did say that the system sends a follow-up message the instant a trigger event is *detected*, the Court is not sure how that would necessarily resolve this claim construction dispute (one that relates to how frequently the system *monitors* to determine whether a trigger condition *occurred* in the first place) in Attentive's favor.

*cf. TransAmerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 550 F. Supp. 2d 865, 956 (N.D. Iowa 2008) (relying in part on the Oxford English Dictionary definition of "monitoring" as meaning "to measure or test at intervals").

And as Postscript also notes, the specification tells us that messages associated with trigger conditions are *not* required to be sent the instant such a trigger condition is detected. (D.I. 530 at 11-12) To the contrary, the specification explains that "[i]n some cases, the message series starts immediately after a trigger condition is met. In other cases, the message series is scheduled based on the timing and date." ('660 patent, col. 15:43-46; *see also id.*, col. 26:48-60 (describing an embodiment whereby the merchant may "schedule" messages to be sent or can "launch" the messages immediately))

For these reasons, the Court rejects Attentive's proposed construction of the monitoring limitation. It instead construes the term "monitoring the trigger condition in the message flow in response to the first subscriber being enrolled in the segment of subscribers" to mean (as Postscript proposed) "tracking whether a trigger condition for a message has occurred through the continuous, repeated, or periodic detection of one or more event trigger candidates associated with the trigger condition."

### B.    Literal Infringement

Attentive's literal infringement argument here does not win the day either. In its opening brief, Attentive explains this argument in the following way:

- The trigger condition that Postscript points to is the click but did not buy trigger condition—and so in order to satisfy the monitoring limitation under Postscript's theory, Campaign Composer must monitor the subscriber event data that conveys whether or not the subscriber clicked the previous message but did not purchase the product, (D.I. 477 at 9 (citing D.I. 480, ex. 1 at ¶ 100));

9

- But the deposition testimony of Attentive's 30(b)(6) witness, Jesse Greenberg, demonstrates that Campaign Composer does not "listen[] to" the subscriber event data that indicates whether the subscriber clicked the previous message but did not purchase the product (the "Greenberg deposition testimony"), (*id.* (citing D.I. 480, ex. 3 at 160));

- Postscript's expert, Ms. Frederiksen, "attempts to circumvent this deposition testimony but fails to provide any opinion to rebut the testimony or create a genuine issue of material fact." (*Id.* at 10 (citing D.I. 480, ex. 1 at ¶¶ 101-04))  To that end, Attentive asserts that Ms. Frederiksen fails to opine on Campaign Composer's source code—she does not discuss "what the source code does or how the source code operates" or most importantly, "how the source code *monitors* the trigger conditions[;]"  (*Id.* (emphasis in original)); and

- Therefore, with "uncontroverted testimony" showing that Campaign Composer does not practice the monitoring limitation, Attentive argues that summary judgment of no literal infringement is proper here.  (*Id.* at 11)

The glaring problem with Attentive's argument in this regard is that it wholly fails to address the *substance* of Ms. Frederiksen's actual opinion as to how Campaign Composer satisfies the monitoring limitation.  Although Attentive characterizes Ms. Frederiksen as saying essentially nothing about how Campaign Composer reads on this limitation (even while Attentive cites to key paragraphs 101 through 104 of her report), a closer look at those very paragraphs demonstrates that this is not the case.  Paragraphs 101 and 102 set out in detail Ms. Frederiksen's opinion regarding how Campaign Composer meets the monitoring limitation:

> 101. Campaign Composer captures the events associated with particular trigger conditions in real time, and dynamically updates the segment of subscribers associated with the trigger condition.[] This *allows the application operator to see an estimate* of the number of subscribers who will receive the message associated with the trigger condition at any given time.[] . . . [screenshots of Campaign Composer included] . . .

10

102. As shown above, there are multiple pages in the user interface that show the current segment size. Each of these pages makes an API request for the current segment size every time the page is drawn. *This means that the trigger condition is evaluated when the user visits the page, and at potentially multiple times during the session as the user moves to different pages or refreshes the page. The trigger condition is therefore "monitored" over time prior to the message being sent in order to update and visually display the size of the associated segment.* And it does so in "response" to being enrolled in the segment of subscribers who are to receive messages from the message flow because enrollment in the message flow is one of the necessary predicates for satisfying the trigger condition.

(D.I. 480, ex. 1 at ¶¶ 101-02 (emphasis added)) Paragraphs 103 and 104 then lay out the source code for Campaign Composer that is assertedly responsible for the functionality discussed in paragraphs 101 and 102. (*Id.* at ¶¶ 103-04) Additional paragraphs in Ms. Frederiksen's report explain how it is that Campaign Composer dynamically updates the segment of subscribers associated with the trigger condition. (D.I. 533, ex. 4 at ¶¶ 40, 45-49, 58-63, 76-77, 105; *see also* D.I. 530 at 13-14) Postscript's answering brief pointed all of this out, including that "Attentive does not engage with the substance of Ms. Frederiksen's opinions[.]" (D.I. 530 at 15; *see also id.* at 17 (noting that "Attentive does not address" Ms. Frederiksen's opinion [in paragraphs 99-105 of her report] that Campaign Composer's "process of calculating, updating, and displaying the estimated recipients is what involves 'monitoring' a trigger condition associated with the retargeted message"))

In its reply brief, Attentive finally did actually engage with the substance of what Postscript and its expert were pointing to in Campaign Composer as satisfying the monitoring limitation. There, Attentive acknowledged that "to show infringement of the 'monitoring' limitation, Postscript falls back on an ancillary user interface feature called 'estimated recipients.'" (D.I. 579 at 4) And then Attentive spent about a page of its reply brief arguing

about why that feature does not meet the monitoring limitation (including that the feature does not determine exactly who should be sent a message at the scheduled time, nor is it used to transmit a message to the subscribers). (*Id.* at 4-5 (citing, *inter alia*, to paragraph 102 of Ms. Frederiksen's report at issue))

But Attentive makes this argument too late, and thus has waived or forfeited the argument in connection with its summary judgment motion. Attentive could have and should have addressed the *content* of Ms. Frederiksen's opinion about how Campaign Composer meets the monitoring limitation *in its opening brief*. Indeed, it cited to the key paragraphs of Ms. Frederiksen's report therein, but then merely brushed them off as not saying anything of substance—instead of addressing their *actual substance* in the opening brief itself. That is not fair, because it left Postscript with no opportunity to appropriately respond to Attentive's assertions about why the estimated recipients feature cannot meet the monitoring limitation. And so Attentive's Motion cannot be granted on this ground. *See Sysmex Corp. v. Beckman Coulter, Inc.*, Civil Action No. 19-1642-JFB-CJB, 2022 WL 1786526, at *6 (D. Del. May 26, 2022) (explaining that such a failure in this context "is particularly important, because [the movant] is asking the Court to grant summary judgment in its favor on a case-dispositive issue when the Court does not have the benefit of good, full briefing on that issue—and the reason for that *is [the movant's] fault*") (emphasis in original) (citing cases); *see also Baxter Healthcare Corp. v. Nevakar Injectables, Inc.*, Civil Action No. 21-1184-CJB, Civil Action No. 21-1186-CJB, 2025 WL 823224, at *11 (D. Del. Mar. 14, 2025) (same).[6]

---

[6] The Court also pauses here briefly to address the Greenberg deposition testimony that Attentive points to as demonstrating that Campaign Composer does not practice the monitoring limitation (i.e., in which Mr. Greenberg testifies that Campaign composer is not "listening" to subscriber event data that indicates for a given subscriber whether he clicked a

12

## C.    Doctrine of Equivalents

Attentive's DOE[7] argument also fails.  That argument is mainly premised on Attentive's

incorrect claim construction for the monitoring limitation.  (*See* D.I. 530 at 18)  According to

Attentive, Postscript's DOE argument vitiates the monitoring limitation[8] because "it replaces the

constant engagement and calculation requirement for the 'monitoring' step with a one-time static

collection and calculation."  (D.I. 477 at 13-14)  But as explained above, there is no such

---

message).  (D.I. 477 at 9 (citing D.I. 480, ex. 3 at 160))  This testimony is not dispositive of the issue in the Court's view.  (*See* D.I. 530 at 15-17)  Mr. Greenberg testified further that Campaign Composer operates by writing the subscriber events to a "data lake" where they can then be "queried[.]"  (D.I. 533, ex. 5 at 160)  Another Attentive employee testified that Campaign Composer includes functionality that "allows Attentive to monitor whether the subscriber has clicked on a link in a previous message or purchased something after receiving the message[.]" (*Id.*, ex. 8 at 18)  And Ms. Frederiksen opines that nothing in the patent requires that Campaign Composer must "maintain a materialized segment of subscribers" and even if it does, the system necessarily must store an "indicator of which subscribers received the initial message."  (*Id.*, ex. 4 at ¶¶ 93-94)

[7]    A product that does not literally infringe a patent claim may still infringe under the DOE if any differences between the claimed invention and the accused product are insubstantial.  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014).  As with literal infringement, the patentee bears the burden to prove equivalency on a limitation-by-limitation basis, and summary judgment is proper as to a DOE theory where the evidence is such that no reasonable jury could determine two elements to be equivalent.  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016).

[8]    The United States Court of Appeals for the Federal Circuit has held that "[v]itiation" is "a legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent."  *Brilliant Instruments, Inc. v. GuideTech, LLC,* 707 F.3d 1342, 1347 (Fed. Cir. 2013) (quoting *Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349, 1356 (Fed. Cir. 2012)) (internal quotation marks omitted).  "If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents."  *Id.* (quoting *Deere,* 703 F.3d at 1356).

"constant" requirement for the monitoring step.  Therefore, Attentive's position on DOE also is without merit.[9]

## IV.    CONCLUSION

For the foregoing reasons, Attentive's Motion is DENIED.  An appropriate Order will issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion.  Any such redacted version shall be submitted no later than **August 19, 2025** for review by the Court.  It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a

---

[9]    Attentive makes two other DOE-related arguments that are not persuasive.  First, Attentive argues that Postscript's DOE argument changes the temporal requirement in the claims (which provide that "monitoring" occurs in response to subscribers' enrollment in a segment) because Ms. Frederiksen opines that "checking" whether a subscriber should be enrolled satisfies the monitoring limitation.  (D.I. 477 at 13 (citing D.I. 480, ex. 1 at ¶ 107))  But Ms. Frederiksen opines that Campaign Composer first defines a segment of subscribers that will receive messages, then sends those subscribers a message, and then thereafter checks, "before sending a *subsequent message*, whether a particular trigger condition has occurred for any subscriber belonging to the segment of subscribers that *received the initial message*"—and that this satisfies the monitoring limitation under the DOE.  (D.I. 533, ex. 4 at ¶ 107 (emphasis added))  Thus, it appears that Ms. Frederiksen's DOE argument here involves an enrollment step that occurs well before the monitoring step; the Court does not understand Attentive's argument to the contrary. (D.I. 530 at 19)

Second, Attentive claims that Postscript's DOE argument must fail because it is not based on particularized testimony and does not explain away any differences of insubstantiality.  (D.I. 477 at 14 (citing *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342-43 (Fed. Cir. 2016) (affirming a grant of summary judgment of no infringement under DOE, where, *inter alia*, the plaintiff's expert's relevant DOE opinion consisted of one broad, conclusory sentence that failed to articulate how the accused process operated in substantially the same way)))  But Ms. Frederiksen's DOE opinion does not suffer from these flaws.  (D.I. 533, ex. 4 at ¶¶ 107-110; *see also* D.I. 530 at 20)

factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Opinion.