**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ATTENTIVE MOBILE INC., | ) |
|  | ) |
|     Plaintiff / Counterclaim-Defendant, | ) |
|  | ) |
|     v. | ) Civil Action No. 23-87-CJB |
|  | ) |
| STODGE INC., d/b/a POSTSCRIPT, | ) |
|  | ) |
|     Defendant / Counterclaim-Plaintiff. | ) |

Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Christopher C. Campbell and Jonathan Weinberg, KING & SPALDING LLP, Washington, DC; Britton F. Davis and Brian Eutermoser, KING & SPALDING LLP, Denver, CO; Cori C. Steinmann, KING & SPALDING LLP, Austin, TX, Attorneys for Plaintiff/Counterclaim-Defendant Attentive Mobile Inc.

Daniel M. Silver and Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Timothy C. Saulsbury, Eric C. Wiener, Bethany D. Bengfort, Hannah Jiam and Joyce C. Li, MORRISON FOERSTER, San Francisco, CA; Sara Doudar, MORRISON FOERSTER, Los Angeles, CA; Aditya V. Kamdar, MORRISON FOERSTER, Washington, D.C.; Raghav Krishnapriyan, ORRICK, HERRINGTON & SUTCLIFFE, LLP, San Francisco, CA, Attorneys for Defendant/Counterclaim-Plaintiff Stodge Inc., d/b/a Postscript.

**MEMORANDUM OPINION**

August 13, 2025
Wilmington, Delaware

**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiff/Counterclaim-Defendant Attentive Mobile Inc. ("Attentive"), Defendant/Counterclaim-Plaintiff Stodge Inc. d/b/a Postscript ("Postscript") filed an amended Answer, asserting a counterclaim of infringement by Attentive of its United States Patent No. 11,709,660 (the "'660 patent"). (D.I. 50 at 52-53, at ¶¶ 92-97) Presently pending before the Court is Attentive's motion for summary judgment of invalidity of the '660 patent (the "Motion"). (D.I. 482) Postscript opposes the Motion. For the reasons set forth below, the Motion is DENIED.[1]

**I.      BACKGROUND**

Attentive commenced this action on January 25, 2023. (D.I. 1) Postscript filed the operative amended Answer and counterclaims on August 25, 2023. (D.I. 50)

Attentive filed the instant Motion on December 3, 2024. (D.I. 482) The Motion was fully briefed as of January 9, 2025. (D.I. 582) A 5-day jury trial is set to begin on August 25, 2025. (D.I. 645 at 4)

The Court here writes primarily for the parties, and so any facts relevant to this Memorandum Opinion will be discussed in Section III below.

**II.     STANDARD OF REVIEW**

The Court incorporates by reference the standard of review for summary judgment motions, which it set out in its August 6, 2025 Memorandum Opinion. (D.I. 703 at 3-4)

---

[1] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 14)

The burden of proving invalidity rests with the patent challenger at all times, who must establish a patent's invalidity by clear and convincing evidence in order to prevail. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Clear and convincing evidence places within the mind of the fact finder "an abiding conviction that the truth of [the] factual contentions are highly probable." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)) (alteration in original).

## III.   DISCUSSION

With the Motion, Attentive contends that the '660 patent is invalid under 35 U.S.C. § 102(a)(1) ("Section 102(a)(1)"). Pursuant to Section 102(a)(1), a patent is invalid, *inter alia*, if, in a circumstance like the one at issue here, the claimed invention was "in public use" more than one year before the effective filing date of the claimed invention (the "public use bar"). 35 U.S.C. §§ 102(a)(1), (b)(1).[2] For an accused infringer to prove that the public use bar applies, the record must show by clear and convincing evidence that the claimed invention was in public use before the patent's critical date. *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009). Whether a patent is invalid based on the public use bar is "a question of law based on underlying facts[,]" *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008), and indeed, the inquiry is typically seen as being a particularly fact-intensive one, *see Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1357 (Fed. Cir. 2013) ("The 'public use' inquiry is replete with factual considerations[.]").

On summary judgment, once the accused infringer presents facts sufficient to establish a *prima facie* case of public use, the patentee must come forward with some evidence raising a

---

[2]   This one-year date is referred to as the "critical date." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 57 (1998).

3

genuine issue of material fact to the contrary. *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320-21 (Fed. Cir. 2002). "[A] third party's use of an invention will not be deemed public if it is secret, subject to a pledge of confidentiality, or experimental in nature." *Ingenico Inc. v. IOENGINE, LLC*, Civil Action No. 18-826-WCB, 2022 WL 20814960, at *21 (D. Del. Dec. 9, 2022), *aff'd*, 136 F.4th 1354 (Fed. Cir. 2025); *see also Clock Spring, L.P.*, 560 F.3d at 1326 ("[S]omething that would otherwise be a public use may not be invalidating if it qualifies as an experimental use.").[3]

Before assessing the parties' arguments as to the Motion, the Court first sets out the key undisputed facts relevant thereto:

- The effective filing date of the '660 patent is October 12, 2022, (D.I. 485 at ¶ 1; D.I. 524 at ¶ 1; D.I. 486, ex. 1 at ¶ 40), meaning that the critical date for purposes of Section 102(a)(1) is October 12, 2021, (*see* D.I. 483 at 3).;

- On September 28, 2021 (before the critical date), Postscript released a "beta" version of its Campaign Flows product ("Campaign Flows Beta") to a "small, select" group of Postscript customers for them to use the product and provide feedback on their use. (D.I. 485 at ¶ 3; D.I. 524 at ¶ 3; D.I. 486, ex. 1 at ¶¶ 1008, 1012-14);

- Campaign Flows Beta embodies all asserted claims of the '660 patent. (D.I. 485 at ¶ 4; D.I. 524 at ¶ 4; D.I. 486, ex. 1 at ¶ 1008);

- Postscript imposed confidentiality obligations on its customers using the Campaign Flows Beta, via its standard Terms of Service ("TOS"). (D.I. 485 at ¶ 6; D.I. 524 at ¶ 6; D.I. 486, ex. 3 at 19);

---

[3] With regard to the experimental use exception, "[a] use may be experimental only if it is designed to (1) test claimed features of the invention or (2) to determine whether an invention will work for its intended purpose—itself a requirement of patentability." *Clock Spring, L.P.*, 560 F.3d at 1327.

- All Postscript customers were subject to Postscript's standard TOS (not just users of the Campaign Flows Beta). (D.I. 485 at ¶¶ 6-7; D.I. 524 at ¶ 7; D.I. 486, ex. 3 at 19); and

- On October 13, 2021—approximately two weeks after the Campaign Flows Beta was released to a subset of Postscript's customers—Postscript released Campaign Flows to all of its customers. (D.I. 485 at ¶ 10; D.I. 524 at ¶ 10; D.I. 486, ex. 1 at ¶ 1008)

The parties dispute whether Postscript's customers' use of the Campaign Flows Beta was a public use or (if it was) whether that use was merely experimental. (D.I. 483 at 4; D.I. 523 at 1; D.I. 582 at 3) Attentive argues that summary judgment of invalidity is warranted because: (1) Postscript's TOS did not impose any confidentiality obligations on the use of the Campaign Flows Beta, and therefore there is no genuine dispute of fact that the use was public; and (2) Postscript has failed to prove "that the *only* purpose of a public use before the critical date was experimental in nature." (D.I. 483 at 5-6 (emphasis in original)) For the reasons discussed below, Attentive cannot prevail on its position regarding Postscript's TOS, and its Motion therefore cannot be granted on that ground alone.

Attentive makes three arguments as to why the Court should find, as a matter of law, that Postscript's TOS imposed no confidentiality obligations on customers' use of the Campaign Flows Beta (and that the use was therefore indisputably public): (1) the same TOS "applied to *all* Postscript customers and *all* Postscript products[;]" (2) there is no evidence that the term "Confidential Information" in the TOS applied to customers' use of the Campaign Flows Beta; and (3) Postscript has identified no evidence that the specific customers who used the Campaign Flows Beta agreed to the TOS. (*Id.* at 4-6 (emphasis in original))

As for Attentive's first argument, the Court does not understand how the fact that the TOS applied to all Postscript customers means that "as a matter of law and undisputed fact, the

5

beta participants were not precluded from sharing details about the operation of the beta[.]" (D.I. 523 at 4)  In other words, despite Attentive's suggestion to the contrary, just because all of Postscript's customers were required to agree to the TOS (including those using the Campaign Flows Beta), it does not logically follow that the customers using the Campaign Flows Beta were thus "under no limitation, restriction or obligation of secrecy" with respect to the invention. *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

Turning to Attentive's second argument, the TOS defines "Confidential Information" to include "the Postscript Platform, all documentation related to and the product of all Services, and Postscript's financial, security, architectural, or similar information" as well as Postscript's "technology and technical information" and "product plans and designs[.]"  (D.I. 486, ex. 4 at § 5.1.1)  The "Postscript Platform" is earlier defined to mean "the software program supplied by Postscript to Customer, including when obtained as an application from the Shopify App Store." (*Id.* at § 1.4)  A reasonable jury could certainly determine that the definition of "Confidential Information" in the TOS would thus apply to the Campaign Flows Beta, i.e., that it constituted Postscript's Platform, and/or that it could be considered to be a part of Postscript's "technology and technical information" as well as its "product plans and designs." (*See* D.I. 523 at 5)[4]

As for Attentive's final argument—that Postscript put forward "no evidence that the specific customers" who used the Campaign Flows Beta agreed to the TOS—it too does not

---

[4]   In its reply brief, Attentive asserts that Postscript and its customers discuss their use of Postscript's product and its features on Postscript's website; it argues that this means that "neither Postscript nor its customers understand these [TOS] as precluding discussion of their use of Postscript's platform." (D.I. 582 at 4)  This is an argument that Attentive would need to make to a jury.

warrant summary judgment. Postscript points to evidence that all of its customers—including the customers who used the Campaign Flows Beta—were subject to the TOS. (D.I. 529, ex. A at 19; D.I. 527 at ¶¶ 2-4; D.I. 528 at ¶¶ 2-3; *see also* D.I. 486, ex. 5 at 8) Indeed, as Postscript points out, (D.I. 523 at 5), Attentive's own Concise Statement of Facts, offered in support of its Motion, states that Postscript did impose "confidentiality obligations on customers using the Campaign Flows Beta" via "Postscript's terms of service[,]" (D.I. 485 at ¶ 6).

In light of the record, then, factual disputes exist as to whether Postscript's customers' use of the Campaign Flows Beta was public, in light of the TOS. These disputes preclude summary judgment. *See, e.g.*, *LKQ Corp. v. Gen. Motors Co.*, No. 20 CV 2753, 2024 WL 4093240, at *15 (N.D. Ill. May 17, 2024) (denying summary judgment of invalidity based on Section 102(a)(1) because there was a factual dispute as to whether use of the relevant vehicle grille design at consumer clinics was public, where the patentee pointed to testimonial and documentary evidence demonstrating that the clinics were "confidential events subject to restrictions on sharing information" in that attendees signed non-disclosure agreements, even though the patentee did not produce any "signed confidentiality agreements"); *see also Dey, L.P.*, 715 F.3d at 1357 ("Because a finder of fact could conclude that the study was conducted with a reasonable expectation of confidentiality as to the nature of the formulations being tested, summary judgment on the public use issue was inappropriate."); *BAM BAGS, LLC v. ZIP-IT LTD.*, 15 Civ. 2172 (ER), 2019 WL 2615611, at *5 (S.D.N.Y. June 26, 2019) ("[S]ummary judgment on a public-use inquiry is inappropriate when the circumstances show a reasonable expectation of confidentiality.").[5]

---

[5] Because there is a genuine issue of fact regarding whether the use of the Campaign Flows Beta was public, the Court need not address whether its use in the relevant

## IV. CONCLUSION

For the foregoing reasons, Attentive's Motion is DENIED. An appropriate Order will issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion. Any such redacted version shall be submitted no later than **August 20, 2025** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a

---

circumstance meets the experimental use exception. *Cf. Stoller Enters., Inc. v. Fine Agrochemicals Ltd.*, 705 F. Supp. 3d 774, 791 n.7 (S.D. Tex. 2023); *see also* (D.I. 523 at 5).

That said, the Court pauses to note a legal issue that came up in this portion of the briefing. In discussing the application of the experimental use exception, Attentive's briefing states that Postscript "must prove that the *only* purpose of [its customers' use of the Campaign Flows Beta] before the critical date was experimental in nature" in order to avoid the public use bar. (D.I. 483 at 6) That is not correct. (D.I. 523 at 5-7) Instead, the United States Court of Appeals for the Federal Circuit has explained that "the question posed by the experimental use doctrine" is whether the "*primary purpose*" of the use is experimental in nature. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1354 (Fed. Cir. 2002) (emphasis added); *see also Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1210, 1212-13 (Fed. Cir. 2005) (making this point and assessing evidence of experimentation with respect to both the public use and on-sale bars).

The cases that Attentive primarily relies upon do not counsel otherwise. (D.I. 483 at 6-7) *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317 (Fed. Cir. 2009) sets out a list of factors "for determining commercial versus experimental uses" and one of them is "the degree of commercial exploitation during testing[.]" 560 F.3d at 1327. The case never states that an experimental use cannot have any commercial purpose. And in *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361 (Fed. Cir. 2008), where the accused infringer was asserting invalidity due to the on-sale bar, the Federal Circuit explained that to determine whether the suspect activities were experimental (as opposed to commercial), the court must assess whether "the *primary purpose* of the offers and sales was to conduct experimentation." 516 F.3d at 1365 (emphasis added).

factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Opinion.