IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ATTENTIVE MOBILE INC., )<br>)<br>    Plaintiff / Counterclaim- )<br>    Defendant, )<br>)<br>    v. )<br>)<br>STODGE, INC., d/b/a POSTSCRIPT, )<br>)<br>    Defendant / Counterclaim- )<br>    Plaintiff. ) | Civil Action No. 23-87-CJB |

## MEMORANDUM ORDER

The Court has reviewed the parties' recently-filed letter briefs. (D.I. 716; D.I. 719) These briefs relate to the question of whether the Court's August 6, 2025 Order (the "August 6 Order")—an Order that granted "Defendant/Counterclaim-Plaintiff Stodge Inc. d/b/a Postscript's ['Postscript'] motion for summary judgment No. 1 on Plaintiff/Counterclaim-Defendant Attentive Mobile, Inc.'s ('Attentive') claims of infringement of United States Patent Nos. 11,416,887, 11,416,897 and 11,553,074" as to "the second of Attentive's two theories of infringement (regarding the 'SMSRedirectTest() theory')"—applies to Attentive's claims of *induced infringement* (the "induced infringement claims") of its asserted patents premised on the use of SMSRedirectTest. (D.I. 710) The Court also heard argument from the parties about this issue during the pre-trial conference held on August 8, 2025. *See* Transcript of Pre-trial Conference (Aug. 8, 2025) (hereafter, "Tr.") at 5-26. For the reasons set out below, the Court agrees with Postscript that the August 6 Order does apply to Attentive's induced infringement claims at issue here. (D.I. 716 at 1-2) Relatedly, the Court also agrees with Postscript that Attentive waived or forfeited any argument to the contrary by failing to address any induced

infringement claims in its answering brief regarding Postscript's motion for summary judgment No. 1 (hereafter, "Postscript's Motion").[1] (*Id.*)

As an initial matter, the text of Postscript's motion for summary judgment No. 1 ("Postscript's Motion" or "Motion") and its accompanying proposed Order should have fairly put Attentive on notice that the Motion encompassed *all* of Attentive's claims that Postscript infringed Attentive's asserted patents—including any induced infringement claims that Attentive may have been pressing in this case. *See* Fed. R. Civ. P. 56(a) (explaining that when a party moves for summary judgment, it should "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought"). The title of Postscript's Motion facially states that it applies to "ATTENTIVE'S CLAIMS OF INFRINGEMENT" of the three Attentive asserted patents. (D.I. 467) The body of the Motion similarly states that it seeks relief on all of Attentive's "claims of infringement" of those patents. (*Id.*) And in the proposed Order that Postscript attached to its Motion, it sought "entry of judgment in [Postscript's] favor that U.S. Patent Nos. 11,416,887, 11,416,897, and 11,553,074 *are not infringed*." (D.I. 467-1 (emphasis added))

In the Court's view, this language—i.e., language asserting that the Motion was putting at issue all of Attentive's "claims of infringement"—was important. There are various ways that an accused infringer in a patent litigation can be said to have engaged in "infringement" of a patent: e.g., via direct infringement, indirect infringement (which includes induced infringement, at issue here, and contributory infringement), joint infringement and/or willful infringement. *See* 35 U.S.C. §§ 271(a), (b), (c); *Groove Digit., Inc. v. Jam City, Inc.*, Civil

---

[1] Postscript has also argued that Attentive should not be permitted to press its induced infringement claims because Attentive never properly advanced such a theory in this case. (D.I. 716 at 2) But the Court need not reach that issue to resolve the instant dispute.

Action No. 1:18-cv-01331-RGA, 2019 WL 351254, at *3-4 (D. Del. Jan. 29, 2019). If an accused infringer files a motion that facially seeks summary judgment on all of the patentee's "claims of infringement" against it—and if in that case the patentee has a claim of *induced* infringement—then the patentee should be on alert that its induced infringement claim is among the "claims of infringement" that is being put at issue by that motion. (D.I. 716 at 1 ("Postscript's motion could not have been clearer that it was seeking 'summary judgment on Attentive's claims of infringement of [Attentive's asserted patents], not just some of them.'")) After all, induced infringement is (along with, e.g., direct infringement) simply one of a number of "types of patent infringement"—if a party is guilty of any of them, then it is guilty of "infringement" of a patent. *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, 19-CV-6036W, 2021 WL 2906372, at *8 n.8 (W.D.N.Y. July 9, 2021) (referring to "direct infringement" and "induced infringement" as "two types of patent infringement"); *see also Decurtis LLC v. Carnival Corp.*, Case No. 20-22945-Civ-SCOLA/TORRES, 2021 WL 1968327, at *8 (S.D. Fla. Jan. 6, 2021) (same), *report and recommendation adopted as modified*, 2021 WL 1540518 (S.D. Fla. Apr. 20, 2021); *Bel IP LLC v. Boomerangit Inc.*, Civil Action No. 2:11cv188, 2011 WL 13228482, at *4 (E.D. Va. Sept. 27, 2011) (same); 35 U.S.C. § 271(b) (the Patent Act, noting that a party that engages in induced infringement is "liable as an infringer").[2]

   That said, Postscript's opening brief in support of its Motion was important too. After all, no matter what Postscript's Motion (and its accompanying proposed Order) said, if

---

[2] In its letter brief and during argument on this issue at the pre-trial conference, Attentive took the position that a reference to a claim of "infringement" should only be understood as putting at issue a claim of *direct* infringement. (D.I. 719 at 1 ("Thus, Postscript's MSJ1 on 'Attentive's claims of infringement,' means what it says—infringement—and does not, as a matter of law, put Attentive's separate statutory claims of inducement at issue."); Tr. 19-21) For the reasons the Court has set out above, it does not think that such an understanding is correct from either a linguistic or legal perspective.

Postscript's opening brief only focused on *one type of* claim of infringement (i.e., a claim that Postscript *directly* infringed the asserted patents)—and did not include content fairly indicating that *other* claims of infringement against Postscript (e.g., a claim for *induced* infringement) were being joined—then Attentive might have been misled into thinking that it did not need to address induced infringement claims in its answering brief (i.e., by explaining why such claims should survive the summary judgment process). (Tr. at 20-21, 23)

But here, in the Court's view, Postscript *did* make it clear that its opening brief covered *all possible* claims of patent infringement against it—including the claims of induced infringement that Attentive now wants to preserve.

In part, that is because in its opening brief, Postscript continued to use language indicating it was putting all claims of "infringement" against it at issue. Therein, it repeatedly referred to its Motion as seeking a "JUDGMENT OF NON-INFRINGEMENT OF THE ATTENTIVE PATENTS." (D.I. 487 at Table of Contents, i; *see also id*. at 1 ("Postscript moves for summary judgement of non-infringement . . . .")) And nowhere in Postscript's brief did it limit its non-infringement arguments to "direct infringement" scenarios. (*See generally id.*)[3]

But more importantly, Postscript's opening brief also explained why it believed that Attentive could not bring any claims of infringement against it—including claims like the induced infringement claims now at issue. To explain why that is so, the Court notes that

---

[3] It is true that, as Attentive notes, Postscript's opening brief did not use the phrase "induced infringement." (Tr. at 12, 18) That said, Postscript may well have been a little unsure about how seriously Attentive meant to press any induced infringement claims at trial. That is because in his opening expert report, Attentive's infringement expert Dr. Nathaniel Polish addresses how Postscript infringes the asserted patents in a total of 369 pages, which include approximately 605 paragraphs. (D.I. 667 at 45-414, at ¶¶ 139-744) And yet according to Attentive, Dr. Polish made reference to a claim of induced infringement in just two of those paragraphs. (*Id*. at ¶¶ 141-42 (*cited in* D.I. 719 at 2)) The word "induces" is mentioned in just one line of one of those two paragraphs. (*Id*. at ¶ 142)

Attentive has described its induced infringement claims as somehow implicating: (1) the use by alleged direct infringer Three Ships Beauty ("TSB") of a popup generated by another third-party, Klaviyo; (2) wherein this Klaviyo popup includes "integration tags with a 'Postscript Opt-In link'" ("Opt-In Links") that in turn (3) "runs [Postscript's] SMSRedirect[Test]" function in a manner causing Postscript's servers to take certain additional action. (D.I. 716, ex. A at 133-34; D.I. 719 at 2; Tr. at 8, 10-11)

And in its opening brief on the Motion, Postscript explained why it could not be guilty of infringement of any type vis-à-vis the use of its SMSRedirectTest functionality—including when that functionality is called by a Klaviyo popup. More specifically, in this part of its opening brief, Postscript did the following:

- Postscript first explained why infringement allegations involving the use of its SMSRedirectTest functionality could not be viable—in that that function is not used with *Postscript's own* accused Two Touch popups. (D.I. 487 at 12) Instead, it asserted that the SMSRedirectTest function is only used by a separate unaccused functionality—Opt-In Links— and that its expert Barbara Frederiksen had provided unchallenged opinions as to why Opt-In Links cannot infringe Attentive's patents. (*Id.*) In doing so, Postscript noted that while its Opt-In Links are not used with Postscript's own popups, some third parties like Klaviyo offer merchants the ability to create popups on their websites that make use of Postscript's Opt-In Links. (*Id.* at 13)

- Postscript then went on to explain why Attentive could not have a viable infringement argument against it that involved a *third party company's use of a third-party popup, including a Klaviyo popup*. (*Id.* at 13-14) Here, it argued that Attentive's expert, Dr. Polish, had not attempted to map the use of a Klaviyo popup with an Opt-In Link against the asserted claims, and that when a "Klaviyo popup is used with Postscript Opt-In Links, the only client-side code used is *Klaviyo* code, not Postscript code." (*Id.* (emphasis in original)) Postscript then stated that "Dr. Polish offers no joint infringement *or other theory* for how *use of a Klaviyo popup could be infringing*[.]" (*Id.* at 14 (certain emphasis added, certain emphasis omitted))

5

> Because no such theory of infringement of this type had been put forward, Postscript concluded by stating that "SMSRedirectTest[] cannot be used *to show infringement*[.]" (*Id.* (emphasis added); *see also* D.I. 716 at 1)

In light of this, if Attentive had any type of "theory" as to how Postscript was guilty of any type of "infringement" involving a third party's (like TSB's) use of a Klaviyo popup that makes use of Postscript's SMSRedirectTest functionality, then Attentive needed to address that theory in its answering brief. Therein, it should have explained why such a theory existed, and why the record suggests that it should survive Postscript's Motion.

But Attentive did not do so. Instead, in its answering brief, when it came to the SMSRedirectTest theory, Attentive simply argued that Postscript's Motion was not well taken, because TSB actually featured a "*Postscript two-touch popup*"—and so Postscript would be liable for direct infringement of the asserted patents. (D.I. 507 at 11-12 (emphasis added)) Attentive never suggested in its answering brief—in response to Postscript's prior challenge—that it *did also* have a viable "other theory" as to how Postscript could be guilty of "infringement" (i.e., induced infringement) based on TSB's use of a *Klaviyo popup* and SMSRedirectTest. (*Id.*; *see also* D.I. 716 at 1-2 (Postscript noting that "Attentive never countered Postscript's argument that no one (whether Postscript or anyone else) would infringe (whether directly or indirectly) *if [TSB] used a Klaviyo popup*") (emphasis in original))[4] Instead, Attentive only obliquely made reference to its claims of indirect infringement during the hearing on Postscript's Motion. (D.I. 666 at 134, 136, 139-40)[5]

---

[4] Indeed, because of this, in the Court's August 6, 2025 Memorandum Opinion resolving the relevant portion of Postscript's Motion, the Court noted that "Attentive does not dispute that the use of Klaviyo popups with Postscript Opt-In Links does not infringe." (D.I. 709 at 6 n.5) And thus, when it resolved the Motion, the Court did not understand Attentive to have any viable claims of patent infringement (of any type) left at issue in the case. (Tr. at 6, 22)

6

That was too late. (Tr. at 12-17; D.I. 716 at 1-2) As our Court has previously and repeatedly noted, a party waives or forfeits an argument when it could have made the argument in its briefing, did not do so, and then raised the issue for the first time thereafter, such as at oral argument on the motion. *See, e.g.*, *Satius Holding, Inc. v. Samsung Elecs. Co.*, Civil Action No. 18-850-CJB, 2024 WL 5090284, at *4 (D. Del. Dec. 12, 2024) (citing cases); *Int'l Bus. Machs. Corp. v. Rakuten, Inc.*, Civil Action No. 21-461-GBW, 2022 WL 17848779, at *11 n.7 (D. Del. Dec. 22, 2022); *Kiger v. Mollenkopf*, Civ. No. 21-409-RGA, 2021 WL 5299581, at *2 n.2 (D. Del. Nov. 15, 2021) (citation omitted). "Oral argument is not the time for a party to spring new positions regarding important issues on its opponent and on the Court" as "[c]ountenancing a contrary position would render motion briefing meaningless [and would] turn motion hearings into free-for-alls." *Satius Holding, Inc.*, 2024 WL 5090284, at *4; *see also Tomasko v. Ira H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) ("It would be unfair to permit Weinstock to prevail on arguments raised for the first time at oral argument, a method of proceeding that can deprive one's opponent of any meaningful opportunity to respond.").[6]

---

[5] During that hearing, while Attentive's counsel mentioned claims of indirect infringement, he did so in service of explaining why Attentive's expert had provided enough evidence to suggest that Postscript was guilty of direct infringement (i.e., via TSB's use of a Postscript popup). (D.I. 666 at 134, 136, 139-40) Indeed, at the end of this discussion, Attentive's counsel seemed to suggest that if the Court found that the evidence indicated that the popup utilized by TSB was not a Postscript popup, and instead was a Klaviyo popup, then Attentive's claims of infringement that make use of the "SMS_Redirect pathway [are] sort of moot[.]" (*Id.* at 143)

[6] This was not the first time that Attentive raised or made reference to a new argument (i.e., one not made in its briefing) during oral argument on Postscript's Motion. (*See, e.g.*, D.I. 709 at 4 n.3; *id.* at 8) Nor were these instances the first time in this case where Attentive has belatedly raised arguments about theories that it had not previously disclosed in a timely fashion. (*See* D.I. 358; D.I. 430; D.I. 657; D.I. 658; D.I. 659)

7

Therefore, the Court's August 6 Order resolved in Postscript's favor any and all "claims of infringement of [Attentive's asserted patents] as it relates to . . . Attentive's . . . SMSRedirectTest[] theory"—including the induced infringement claims at issue here.  (D.I. 710)  All of Attentive's claims of patent infringement (of any type) have now been resolved in Postscript's favor.  (*See also* D.I. 704)

Dated: August 14, 2025

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE