IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STODGE INC., d/b/a POSTSCRIPT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-87-CJB |
| | ) |
| ATTENTIVE MOBILE INC., | ) |
| | ) |
| Defendant. | ) |

Daniel M. Silver and Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Timothy C. Saulsbury, Eric C. Wiener, Hannah Jiam and Joyce C. Li, MORRISON FOERSTER, San Francisco, CA; Sara Doudar, MORRISON FOERSTER, Los Angeles, CA; Aditya V. Kamdar, MORRISON FOERSTER, Washington, D.C.; Raghav Krishnapriyan, ORRICK, HERRINGTON & SUTCLIFFE, LLP, San Francisco, CA, Attorneys for Plaintiff Stodge Inc., d/b/a Postscript.

Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Christopher C. Campbell and Jonathan Weinberg, KING & SPALDING LLP, Washington, DC; Britton F. Davis and Brian Eutermoser, KING & SPALDING LLP, Denver, CO; Cori C. Steinmann, KING & SPALDING LLP, Austin, TX, Attorneys for Defendant Attentive Mobile Inc.

**MEMORANDUM OPINION**

August 18, 2025
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Defendant Attentive Mobile Inc. ("Attentive"), Plaintiff Stodge Inc. d/b/a Postscript ("Postscript") filed an amended Answer, asserting that Attentive infringes United States Patent No. 11,709,660 (the "'660 patent"). (D.I. 50 at 52-53, at ¶¶ 92-97)[1] Presently pending before the Court is Attentive's motion for summary judgment of invalidity of the '660 patent under 35 U.S.C. § 101 ("Section 101") (the "Motion"). (D.I. 469) Postscript opposes the Motion. For the reasons set forth below, the Motion is DENIED.[2]

1. Attentive argues that the asserted claims (claims 4, 6, 10 and 14) of the '660 patent are invalid under Section 101. (D.I. 471 at 4-18; D.I. 690 at ¶ 2)[3] For brevity's sake, the Court assumes familiarity with the intrinsic record of the '660 patent, as well as the parties' briefs on the Motion, (D.I. 471; D.I. 516, D.I. 576), and the documents cited therein.

2. The Court has previously set out the relevant legal standards for review of a summary judgment motion brought on Section 101 grounds in *S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A v. Rhapsody Int'l Inc.*, Civil Action No. 18-69-MN-CJB, Civil Action No. 18-70-MN-CJB, 2019 WL 1102683, at *2-4 (D. Del. Mar. 8, 2019). The Court hereby incorporates its discussion of these legal standards in *S.I.SV.EL.* and will follow those standards herein.

---

[1] The Court has resolved Attentive's claims of infringement in Postscript's favor, and the case caption has subsequently been amended to reflect that the only claim of patent infringement left in the case relates to the '660 patent. (D.I. 744)

[2] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 14)

[3] At the time that the Motion was briefed, Postscript asserted claims 1, 2, 4, 6-12, 14-15 and 17-20, (D.I. 471 at 4; D.I. 474, ex. 4 at ¶ 8), but has subsequently narrowed that to claims 4, 6, 10 and 14, (D.I. 690 at ¶ 2).

3. In its briefing, Attentive argued that claim 11 is representative for the eligibility analysis. (D.I. 471 at 4) While Postscript no longer asserts that claim, Postscript continues to assert, *inter alia*, claim 14, which depends from claim 11, so the Court sees no issue in addressing claim 11 as representative. ('660 patent, col. 34:38-40)

4. At step one of the *Alice* test—which is where the parties focused much of their attention in their briefing, (*see* D.I. 471 at 4-14; D.I. 516 at 5-11)—the Court must "determine whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). Attentive argues that the asserted claims are directed to the abstract idea of "messaging users in response to relevant events[.]" (D.I. 471 at 1; *see also id.* at 6) Postscript does not dispute that "messaging users in response to relevant events" is a "longstanding commercial practice[,]" (*see* D.I. 474, ex. 2 at ¶ 93), thus rendering it an abstract idea, *see, e.g.*, *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1377 (Fed. Cir. 2021). But Postscript argues that this characterization overlooks the specificity of the actual claim requirements. (D.I. 516 at 5) To that end, it contends that the asserted claims of the '660 patent are directed to an "improved system architecture" for creating "multi-message campaigns in which subscribers are enrolled into a segment . . . that receives messages, with subsequent messages retargeted to certain subscribers based on monitoring events in the meantime" with the segments constructed by correlating data from two different sources ("API notifications" and "code-snippet notifications"). (D.I. 516 at 1, 5-6 (emphasis omitted); *see also* D.I. 521, ex. 1 at ¶ 93)

5. In this type of a case, the Court's step one inquiry considers whether the claims are directed to an improvement in computing devices or other technology (in which case the claims would be patent-eligible), or whether they are simply directed to a "process that qualifies

3

as an 'abstract idea' for which computers are invoked merely as a tool" (in which case they would be directed to an abstract idea, and the Court would then proceed to *Alice*'s step two). *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery.").

6. Attentive asserts that the asserted claims "do no more" than simply automate the process of messaging users in response to relevant events. (D.I. 471 at 1; *see also* D.I. 576 at 8) This makes it seem as if the claims broadly and generically cover *any process* of messaging users in response to relevant events that takes place on a computer. But in grossly oversimplifying the claim, Attentive (a) ignores its actual requirements while (b) assuming that the claimed invention involves the use of entirely conventional technology (despite that being hotly contested by Postscript). Below the Court further discusses these two problems, and how they ultimately indicate that there are factual disputes at step one that preclude the grant of summary judgment.

7. First, despite Attentive's suggestion to the contrary, the asserted claims do not cover *any* computerized process of messaging users in response to relevant events. Instead, the claims recite a specific computer-implemented method (or system) for building a message campaign that has several particular requirements. This can be easily seen by looking at claim 11, which provides for:

    a. Receiving from a merchant a configuration of a message flow that is comprised of recipient criteria defining a segment of subscribers to receive messages from the message flow, with at least one message associated with a trigger condition;

b. Subscribing to, on behalf of the merchant, an application programming interface ("API") notification channel of an application builder platform that serves as a back-end component of an application controlled by a merchant;

c. Receiving API notifications from the application builder platform that comprise API payloads, which include information describing events associated with users of the application builder platform;

d. Receiving code-snippet notifications describing events associated with user computer devices from such devices via a corresponding code snippet incorporated in an application accessed by the device, with the devices belonging to subscribers that have subscriber identifiers used by the message management platform;

e. Identifying user identifiers in the API payloads and determining that they correspond to subscriber identifiers;

f. Storing, for a first subscriber, subscriber events comprising events described in API notifications associated with the first subscriber and events described in code-snippet notifications from that subscriber's computing device;

g. Determining based on the stored subscriber events that the first subscriber satisfies the recipient criteria;

h. Enrolling the first subscriber to the segment of subscribers that are to receive messages from the message flow in response to the determination that the recipient criteria is satisfied;

i. Monitoring the trigger condition in response to the first subscriber's enrollment in the message flow;

j. Receiving new subscriber events associated with the first subscriber;

k. Determining that the new subscriber events meet the trigger condition; and

l. Transmitting at least one message in the message flow that is associated with the trigger condition to the first subscriber.

('660 patent, cols. 33:38-34:30; *see also id.*, col. 2:26-29, 5:4-9)[4]

8.  Second, the thrust of Attentive's step one argument seems to be that *all software* that messages users in response to relevant events must obtain messaging rules, learn of user-related events, and message a user when the relevant events satisfy the messaging rules—and that the '660 patent accomplishes these functions in ways that were merely conventional and generic. (D.I. 471 at 6-14) In other words, Attentive seems to argue that it need not reference specific requirements of the claims in its articulation of what the claims are directed to, because these specific requirements are just conventional add-ons that add nothing inventive. (*Id.* at 5-6) Indeed, at various points in its briefing, Attentive contends that the inventors of the '660 patent merely copied prior art systems (such as Attentive Journeys and Klaviyo Flows) that message users based on relevant events in the same ways as the claimed invention. (*Id.* at 7 (citing D.I. 474, ex. 1 at ¶ 132) (Attentive's expert asserting that Attentive Journeys and Klaviyo Flows "received the messaging rules as a 'message flow,' exactly as claimed"); *id.* at 11-12 (arguing that it was "indisputably conventional for prior art message flow systems to receive event notifications from the same sources claimed and in the same way" and that the inventors copied the Klaviyo system); *see also* D.I. 576 at 4 n.1 (asserting that "the type of retargeting messages that Postscript claims to have invented" were "conventional at the time the '660 patent was filed"); *id.* at 5 ("The purported innovation at the heart of the '660 patent—the ability to send retargeted campaign messages to a segment of users based on subsequent user events—was conventional and available on the Attentive platform years before the '660 patent was filed"))

9.  But Postscript, for its part, vigorously disputes that the inventors of the '660 patent

---

[4] Asserted claim 14, which depends from claim 11, requires that the API notifications be webbook notifications. ('660 patent, col. 34:38-40)

simply copied prior art systems and left itself with a claimed invention that is entirely conventional. Instead, Postscript argues that the claimed invention amounted to a significant improvement over prior art systems that created messaging marketing campaigns. (D.I. 516 at 1) Postscript cites to record evidence in support of its claim that: (1) the prior art systems were limited to either (a) message flows sent to individual subscribers that performed an action or (b) to single messages sent at once to a group of subscribers; and (2) the '660 patent covers "*multi-message campaigns* in which subscribers are enrolled into a *segment* . . . that receives messages, with subsequent messages *retargeted* to certain subscribers based on monitoring events in the meantime." (*Id.* at 1 (emphasis in original); *see also id.* at 8; D.I. 521, ex. 1 at ¶ 93 (Postscript's expert asserting that the prior art did not consist of a "combination of elements that permits merchants to set up multi-message campaigns for groups of users and capitalize on streams of event data (from an application builder platform and the merchant's website) to retarget messages within the campaign to distinct user groups") (emphasis omitted), ¶¶ 94-105 (Postscript's expert opining the '660 patent does not recite the same functionality as Klaviyo Flows and Attentive Journeys))

   10. The record, therefore, is rife with genuine disputes of material fact as to whether the '660 patent claims a messaging system that is conventional. And so Attentive has not met its burden of demonstrating that the patent is directed to an abstract idea at step one. (*See, e.g.*, D.I. 518 at ¶¶ 4, 7-9, 16; D.I. 577 at ¶¶ 4, 7-9, 16); *see also Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1369 (Fed. Cir. 2024) ("[W]e have recognized that it may be necessary to analyze conventionality at step one as well as step two, such as to determine . . .what the patent asserts is the claimed advance over the prior art. . . . Put another way, analyzing the conventionality of the claimed content management system and templates at step one is proper

for the purpose of determining what the claims are directed to."); *Sysmex Corp. v. Beckman Coulter, Inc.*, Civil Action No. 19-1642-JFB-CJB, 2022 WL 1808325, at *5 & n.7 (D. Del. June 2, 2022) (explaining on summary judgment at step one that "[i]f the claimed body fluid mode amounts to an unconventional utilization of computer technology/functionality, then claim 16 will be patent eligible" and "the record indicates that there is at least a material dispute of fact on that question") (citing cases), *report and recommendation adopted*, 2022 WL 2119109 (D. Del. June 13, 2022); *cf. Apple Inc. v. Masimo Corp. & Sound United, LLC*, C.A. No. 22-1377 (JLH), C.A. No. 22-1378 (JLH), 2024 WL 4452466, at *3 (D. Del. Oct. 9, 2024) (finding that claims were not directed to an abstract idea at step one where the representative claim was "directed to an *improved* user interface in computing devices with a *particular manner* of presenting information to the user") (emphasis added).

11. Because the Court finds that summary judgment is not warranted at step one, there is no need to proceed to step two of the *Alice* test.

12. An appropriate Order will issue.