IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STODGE INC. d/b/a POSTSCRIPT, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 23-087 (CJB) |
| | ) | |
| v. | ) | |
| | ) | |
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>FINAL JURY INSTRUCTIONS</u>**

## TABLE OF CONTENTS

1.    GENERAL INSTRUCTIONS.....................................................................1
      A.    INTRODUCTION.....................................................................1
      B.    JURORS' DUTIES...................................................................2
      C.    USE OF NOTES .....................................................................3
      D.    EVIDENCE DEFINED ...........................................................4
      E.    DIRECT AND CIRCUMSTANTIAL EVIDENCE............................6
      F.    CONSIDERATION OF EVIDENCE..........................................7
      G.    CREDIBILITY OF WITNESSES...........................................8
      H.    EXPERT TESTIMONY.............................................................9
      I.    DEPOSITION TESTIMONY ...................................................10
      J.    NUMBER OF WITNESSES....................................................11
      K.    EXHIBITS AND DEMONSTRATIVES.......................................12
      L.    BURDENS OF PROOF.............................................................13
2.    THE PARTIES AND THEIR CONTENTIONS..................................14
3.    SUMMARY OF THE PATENT ISSUES.........................................15
4.    PATENTS...........................................................................................16
      A.    THE ROLE OF CLAIMS IN A PATENT ...................................16
      B.    INDEPENDENT AND DEPENDENT CLAIMS.............................17
      C.    CONSTRUCTION OF CLAIM TERMS.......................................18
5.    INFRINGEMENT ...........................................................................19
      A.    INFRINGEMENT GENERALLY...............................................19
      B.    DIRECT INFRINGEMENT .....................................................20
6.    INVALIDITY ...................................................................................21
      A.    LEVEL OF ORDINARY SKILL IN THE ART..............................22
      B.    PRIOR ART .........................................................................23
      C.    PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO.......................................................................24
      D.    INVALIDITY – ANTICIPATION .............................................25

E.      INVALIDITY – OBVIOUSNESS .......................................................26

7.      DAMAGES .........................................................................................29

A.      DAMAGES – GENERALLY ...........................................................29

B.      REASONABLE ROYALTY—ENTITLEMENT ..............................30

C.      REASONABLE ROYALTY – DEFINITION....................................31

D.      REASONABLE ROYALTY – RELEVANT FACTORS .................32

E.      REASONABLE ROYALTY –
        ATTRIBUTION/APPORTIONMENT ...............................................35

F.      REASONABLE ROYALTY – TIMING ...........................................36

8.      DELIBERATION AND VERDICT ..................................................37

A.      INTRODUCTION ...............................................................................37

B.      UNANIMOUS VERDICT ..................................................................38

C.      DUTY TO DELIBERATE..................................................................39

D.      SOCIAL MEDIA................................................................................40

E.      COURT HAS NO OPINION ..............................................................41

1.      **GENERAL INSTRUCTIONS**

A.      **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**B.    JURORS' DUTIES**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes any instructions I gave you before and during the trial and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias or prejudice you may feel toward one side or the other influence your decision in any way.

### C.    USE OF NOTES

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is a tendency to attach undue importance to matters that have been written down.  Some testimony that is considered unimportant at the time presented, and therefore not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are not a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### D.    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case only includes what the witnesses said while they were testifying under oath (including any deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any stipulations to which the parties have agreed.

The attorneys showed you certain slides, charts and graphics to illustrate testimony from witnesses. Those are called demonstratives. The purpose of those demonstratives was to summarize or otherwise help you understand certain evidence in the case. Unless I have specifically admitted them into evidence, those demonstratives are not evidence themselves, even if they refer to, identify, or summarize evidence.

Nothing else is evidence. The following things are not evidence: statements, arguments, and questions by the lawyers; objections by lawyers; any testimony I have told you to disregard; and anything you may have seen or heard about this case outside the courtroom. The arguments of the lawyers are offered solely as an aid to help you assess the evidence presented at trial. If I sustained an objection during the trial, you should ignore the question that was asked. If I overruled an objection, you should treat the answer to the question like any other. Whether sustained or overruled, the objections themselves that the lawyers made should be ignored. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence, but those objections are not evidence themselves. Do not consider the fact that I sustained or denied an objection as any indication of my opinion of the case or of what your verdict should be.

A further word about statements and arguments of counsel. The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the

law. An attorney may argue all reasonable conclusions from evidence in the record. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion that an attorney has offered during opening or closing statements, or at any other time during the course of the trial. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

If you were instructed that an item of evidence was received for a limited purpose, you must follow that instruction.

If I ordered testimony or exhibits stricken from the record and instructed you to disregard such testimony or exhibit, you should not consider any such stricken or excluded testimony or exhibit. Do not speculate about what a witness might have said or what an exhibit might have shown.

You are to make your decision based only on the evidence, as I have defined it here, and nothing else.

### E.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is evidence like the testimony of an eyewitness, which if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**F.     CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### G.    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### H.    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

## I.    DEPOSITION TESTIMONY

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

**J.      NUMBER OF WITNESSES**

Do not weigh the evidence based only on the number of witnesses who testified. Instead, consider how credible each witness was, and how much weight you think their testimony deserves.

### K.    EXHIBITS AND DEMONSTRATIVES

During the course of the trial, you have seen many exhibits, and many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room during your deliberations.

There are other exhibits (including charts and animations presented by attorneys and witnesses) that were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, the underlying testimony of the witness that you heard when you saw the demonstrative exhibits is the evidence.

### L.    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

This is a civil case in which Postscript is the owner of a patent (the "Postscript Asserted Patent") that it alleges Attentive infringes. A party asserting patent infringement has the burden of proving infringement, whether that infringement was willful, and the amount of monetary damages by a preponderance of the evidence. That means the party asserting infringement has to produce evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party asserting infringement must make the scales tip somewhat on its side. If the scale should remain equal or tip in favor of the alleged patent infringer, you must find for the alleged patent infringer.

As I noted earlier, Attentive contends that the Postscript Asserted Patent is invalid. A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the asserted claims are invalid. Clear and convincing evidence means that it is highly probable that the fact sought to be proved by the evidence is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence needed to prove infringement.

Those of you who are familiar with criminal cases may have heard the term "proof beyond a reasonable doubt." That is a stricter standard of proof that applies only in criminal cases. It does not apply in a civil case such as this and you should, therefore, put it out of your mind.

## 2.     THE PARTIES AND THEIR CONTENTIONS

I will now review for you the subject matter of this case, who the parties are, and what each of them contends.

This is a patent case. Postscript alleges patent infringement against Attentive.  You have heard evidence regarding the Postscript Asserted Patent in this case. Postscript contends that Attentive infringes claims 4, 6, 10, and 14 of U.S. Patent No. 11,709,660 (the "Postscript Asserted Patent") by making, using, selling, and offering for sale Attentive's Campaign Composer (formerly known as Magic Composer). In this case, we referred to these asserted claims together as the "Postscript Asserted Claims." Postscript seeks damages for the alleged infringement. Attentive denies that it infringes any of the Postscript Asserted Claims and contends that the Postscript Asserted Claims are invalid.

14

**3.      SUMMARY OF THE PATENT ISSUES**

You must decide the following issues in this case according to the instructions that I give you:

1. Whether Postscript has proven by a preponderance of the evidence that Attentive infringes one or more of the Postscript Asserted Claims.

2. Whether Attentive has proven by clear and convincing evidence that one or more of the Postscript Asserted Claims are invalid.

3. If you decide that any Postscript Asserted Claim is infringed and not invalid, what monetary damages Postscript has proven by a preponderance of the evidence that it is entitled to.

4.     PATENTS

A.     THE ROLE OF CLAIMS IN A PATENT

Before you can decide the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed, not other portions of the patent.

The claims are intended to define, in words, the boundaries of the invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers. Each of the claims must be considered individually.

Each claim is made up of claim elements (also referred to as claim limitations). A claim "element" (or claim "limitation") is another word for a requirement of a claim. For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim. A patent claim is infringed only if an accused product includes each and every element in that patent claim.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

16

## B.    INDEPENDENT AND DEPENDENT CLAIMS

There are two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, all of the Postscript Asserted Claims are dependent claims. A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

### C.    CONSTRUCTION OF CLAIM TERMS

Before deciding if there is any infringement of the asserted claims, you will first need to understand what each claim covers. The law says that it is my role to define the terms of the claims and it is your duty to apply my definitions. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity. You must ignore any different interpretation that you may either believe is true or different interpretations referenced by the witnesses or by the attorneys.

The following claim term has the following constructions:

| Claim Term | Patent/Claim(s) | Court's Construction |
|---|---|---|
| "monitoring the trigger condition" | '660 patent: claims 1, 11 | "tracking whether a trigger condition for a message has occurred through the continuous, repeated, or periodic detection of one or more event trigger candidates associated with the trigger condition." |

You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

For any claim term that I have not provided a definition, you should use that term's ordinary meaning within the context of the patent in which the claim term is used.

18

**5.**  **INFRINGEMENT**

   **A.**  **INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not a patent owner has proven that an alleged infringer has infringed an asserted patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

As I stated earlier, Postscript alleges that Attentive infringes the Postscript Asserted Claims.

## B.    DIRECT INFRINGEMENT

To prove direct infringement of the asserted claims in this case, the patent owner must prove by a preponderance of the evidence, i.e., that it is more likely than not, that the alleged infringer made, used, sold, or offered for sale within the United States a product or process that meets all of the requirements of a claim without the patent owner's permission during the time the asserted patents were in force. You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the accused product or process meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

20

6.     **INVALIDITY**

I will now instruct you on the rules you must follow in deciding whether or not an alleged infringer has proven that any of the asserted claims in this case are invalid.

To prove that any claim of a patent is invalid, the alleged infringer must persuade you by clear and convincing evidence; that is, you must be left with a clear conviction that the claim is invalid.

I previously told you that infringement must be assessed on a claim-by-claim basis. That is also true for invalidity. Invalidity must be determined on a claim-by-claim basis.

## A.    LEVEL OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.

You must determine the level of ordinary skill in the field of the invention. You must consider and assess this factor before reaching your conclusion in this case. In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of the inventor and other persons actively working in the field;

2. The types of problems encountered in the field;

3. Prior art solutions to those problems;

4. Rapidity with which innovations are made; and

5. The sophistication of the technology.


It is up to you to decide the knowledge and perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.

## B.    PRIOR ART

In order for someone to be entitled to a patent, the invention must actually be new and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the asserted claims are anticipated or obvious. To be prior art, the item or reference must have been publicly known, publicly used, published, or patented, before the priority date of the asserted claim against which it is evaluated.

An alleged infringer has the burden to prove something is prior art by clear and convincing evidence.

### C.    PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO

Regardless of whether particular prior art references were considered by the Patent Examiner during the prosecution of the application that matured into the '660 Patent, Attentive must prove invalidity by clear and convincing evidence. This burden of proof on Attentive never changes regardless of whether or not the Patent Examiner considered the reference.

Where Attentive is relying on prior art that was not considered by the Patent Examiner during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Examiner did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether Attentive has carried its clear-and convincing burden of proving invalidity.

### D.     INVALIDITY – ANTICIPATION

An invention must be new to be entitled to patent protection under the U.S. patent laws. To prove anticipation, an alleged infringer must prove that it is highly probable that the claimed invention is not new. If a product or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is said to be "anticipated" by the prior art.

Anticipation is like infringement—you will be asked to determine whether one prior art reference included each and every element of an asserted claim. For anticipation, each and every element in the claim must be present in a single prior art reference, and arranged or combined in the same way as recited in the claim. You may not combine two or more prior art references to find anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art device, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular prior art device.

### E.    INVALIDITY – OBVIOUSNESS

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.

An alleged infringer may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed

26

invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others had tried and failed to make the claimed invention;

d. Whether others invented the claimed invention at roughly the same time;

e. Whether others copied the claimed invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g. Whether the claimed invention achieved unexpected results;

h. Whether others in the field praised the claimed invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

7.      **DAMAGES**

A.      **DAMAGES – GENERALLY**

If you find that any valid claim asserted in this case is infringed, you must then consider what amount of damages to award to patent owner. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate the patent owner for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put the patent owner in approximately the same financial position that it would have been in had the infringement not occurred.

The patent owner has the burden to establish the amount of its damages by a preponderance of the evidence. While the patent owner is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that a patent owner may be entitled to recover. In this case, Postscript seeks a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and that the patent owner would have accepted just before infringement began. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

You must be careful to ensure that any damages award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that a patent owner is entitled to recover no less than a reasonable royalty for each infringing act.

## B.  REASONABLE ROYALTY—ENTITLEMENT

If you find that a patent claim is infringed and not invalid, then the patent holder is entitled to at least a reasonable royalty to compensate it for that infringement.

Postscript is seeking damages in the amount of a reasonable royalty.

### C.    REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent owner in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent owner and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the asserted patents were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

### D.    REASONABLE ROYALTY – RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1.    The royalties received by the patent owner for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7.    The duration of the patent and the term of the license.

8.    The established profitability of the product made under the patents, its commercial success, and its current popularity.

9.      The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion and testimony of qualified experts.

15.     The amount that a licensor (such as the patent owner) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patent owner who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would

33

have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

### E.    REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or a defendant's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

## F.    REASONABLE ROYALTY – TIMING

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, and profits earned by the infringer.

**8.     DELIBERATION AND VERDICT**

**A.     INTRODUCTION**

That concludes my instructions on the law. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone other than your fellow jurors how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.

### B.    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But you should not give up your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict. Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.

I will remind you that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

### C.     DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

**D.    SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, TikTok, Snapchat or Twitter, now known as X. You should not communicate to anyone any information about this case or conduct any research about this case, until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

### E.    COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier.  Nothing that I may have said or done was intended to indicate, or should be taken by you as indicating, what your verdict should be. You must decide the case yourselves based on the evidence presented.