# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

STODGE INC. d/b/a POSTSCRIPT,

|  |  |  |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 23-87-CJB |
| v. | ) | |
| | ) | |
| ATTENTIVE MOBILE INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>JOINT STATUS REPORT</u>

Pursuant to the Court's September 2, 2025 oral order (D.I. 796), the parties, by and through their undersigned counsel, hereby submit this Joint Status Report, indicating their proposals on how the case should proceed and identifying the post-trial motions each side intends to file.

## I.    POST-TRIAL PROCEDURE

Postscript believes that there should be a short supplemental discovery period which would close no later than October 24, 2025, for document discovery related to Postscript's motions for an ongoing royalty (in the event Postscript's request for a permanent injunction is denied) and supplemental damages.  The supplemental discovery that Postscript seeks concerns (1) Attentive's U.S. messaging revenues from July 1, 2025 through present; and (2) information about the number of retargeted messages sent through Campaign Composer.  This includes both the overall volume of retargeted messages, as well as the number of messages sent based on specific trigger conditions.

Attentive agrees to provide:

(1) U.S. messaging revenues from July 1, 2025, through present; and

(2) information about the number of retargeted messages sent through Campaign Composer, including:

(a) the overall volume of messages sent by Attentive,

(b) the overall volume of messages sent using the "Retarget previous message recipients" function in Campaign Composer, and,

(c) to the extent available, the number of messages sent based on specific dropdown menu options available for "Retarget previous message recipients" in Campaign Composer.

## II.    POST-TRIAL MOTIONS

Postscript anticipates filing the following post-trial motions:

- Motion for a permanent injunction;

- Motion for an ongoing royalty;[1]

- Motion for supplemental damages, including an accounting of infringing sales that occur between the jury's verdict and the Court's decision on Postscript's motion for a permanent injunction;

- Motion for pre-judgment and post-judgment interest;

- Motion for attorneys' fees; and

- Motion for costs.

Postscript reserves the right to file any additional post-trial motion(s) permitted by law.

Attentive anticipates filing the following post-trial briefs:

- Rule 50(b) motion on noninfringement, or in the alternative a Rule 59 motion for a new trial;

- Rule 50(b) motion on invalidity of claims 11 and 14 under Attentive's Journeys, or in the alternative a Rule 59 motion for a new trial;

- Post-trial motion on patent ineligibility under 35 U.S.C. § 101 (subject to the Court's resolution of the disputes in Section IV, *supra*); and

- Motion to Stay Execution of Judgment Pending Appeal.

Attentive reserves the right to file any additional post-trial motion(s) permitted by law.

---

[1] Postscript intends to file a motion for an ongoing royalty as a form of alternative relief if its motion for permanent injunction is denied.

### III.     DEADLINES AND PAGE LIMITATIONS FOR POST-TRIAL MOTIONS

The parties stipulate and agree as follows regarding the procedure for filing motions following the Court's entry of judgment:

- Pursuant to Federal Rule of Civil Procedure 50(b), no later than twenty-eight days after the entry of judgment, each party shall file any renewed motion under Rule 50(b) and/or motion for a new trial under Rule 59. Each motion shall summarize the grounds for judgment as a matter of law or for a new trial but shall not include a memorandum of points and authorities in support of the motions.

- The parties shall thereafter file their respective memoranda of points and authorities in support of their motions. The deadline for filing those memoranda shall be determined by whether the Court adopts Attentive's proposed procedure for post-trial briefing (i.e., that opening briefs only be filed after the Court's resolution of the issue of ineligibility under 35 U.S.C. § 101) or Postscript's proposed procedure (i.e., that all post-trial opening briefs be filed after the supplemental discovery period), pursuant to the briefing schedule disclosed below.

- Any motions for attorneys' fees and any motion pursuant to 35 U.S.C. § 285 be deferred until 21 days following issue of a mandate following any appeal, or, if no party files an appeal, 21 days after the expiration of the time to file a notice of appeal.

The parties have conferred and provide their respective proposals below regarding Attentive's defense of ineligibility under 35 U.S.C. § 101:

Attentive proposes that the Court hold a limited evidentiary hearing. Following the Court's determination of whether to hold a hearing and/or briefing on ineligibility, the parties shall propose a briefing schedule for the issue of ineligibility under 35 U.S.C. § 101 and hold other post-trial briefing in abeyance pending resolution of the issue. However, to the extent that Postscript seeks to execute on the judgment prior to the resolution of the parties post-trial briefing, Attentive's motion to stay execution would not be subject to the above briefing schedule. If the Court chooses to consider the issue of eligibility under 35 U.S.C. § 101 first, as Attentive proposes, the parties will propose a briefing schedule following the Court's resolution of the eligibility issue that is similarly spaced to the schedule Postscript proposes below. If the Court chooses to consider the issue of eligibility concurrently with all other post-trial issues, then Attentive agrees to the briefing schedule Postscript proposes below.

Postscript does not agree to this process. Even if the Court resolves the dispute below regarding Attentive's 35 U.S.C. § 101 defense in Attentive's favor and chooses to hold an evidentiary proceeding, there is no reason to hold any other post-trial briefs (apart from motions for attorneys' fees) in abeyance. Postscript proposes that all opening post-trial briefs shall be filed on November 25, 2025, with opposition briefs due January 13, 2026, and reply briefs due February 11, 2026. Postscript's proposal puts the parties in a position such that they will be fully prepared to present argument on any post-trial briefs concurrently with any evidentiary hearing, allowing the Court to address all issues together in a single proceeding.

Pursuant to Paragraph 7 of the operative Scheduling Order (D.I. 645), the parties agree that each side is limited to a combined maximum of 20 pages for all opening briefs, a combined maximum of 20 pages for all answering briefs, and a combined maximum of 10 pages for all reply briefs relating to any post-trial motions filed by that side, no matter how many such

motions are filed.  Briefing on Attentive's Section 101 defense is not included in these page limits, subject to the Court's resolution of the dispute below.

## IV.    THE PARTIES' POSITIONS REGARDING ATTENTIVE'S 35 U.S.C. § 101 DEFENSE

### A.    POSTSCRIPT'S POSITION

The patent eligibility of the '660 patent is no longer part of this litigation, and there is no need to schedule further proceedings to address it.

That is because Attentive made the strategic decision to remove it from the Final Pretrial Order, which "shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice."  D.I. 769 at 23.  Attentive said that it did so not because it wanted its § 101 defense to be decided by this Court (rather than by a jury), but because it believed it was able to challenge this Court's order denying its motion for summary judgment before the Federal Circuit.

Now Attentive wants to reverse course and have the Court decide patent eligibility.  But litigants do not get a "do-over" whenever they come to think better of their litigation decisions. *Ninivaggi v. Univ. of Delaware*, No. 20-CV-1478-SB, 2021 WL 5822191, at *1 (D. Del. Dec. 3, 2021).  This case does not warrant making an exception to that rule.  Attentive points to no intervening developments or changes in circumstances that justify re-adding § 101 into the case. It has not sought modification of the Final Pretrial Order—and could not in any event meet the demanding standard for doing so.  And while there would be no basis for granting Attentive's request even if it had come before trial, doing so at this juncture would be particularly prejudicial because it would deprive Postscript of the ability to have the relevant facts decided by the jury in the context of its full infringement case.  Attentive should be held to the choice it made with its eyes open, and the Court should find that Attentive's § 101 defense is out of the case.

### 1. Attentive Chose to Remove the Section 101 Issue from the Final Pretrial Order

The parties' draft pretrial filings in this case prominently featured the issue of subject matter eligibility under 35 U.S.C. § 101 until Attentive chose to remove it at the last minute.

The parties filed their initial proposals for the Final Pretrial Order and jury instructions on July 31, 2025. D.I. 690, 690-1, 694. In its Statement of Contested Facts, Attentive included several facts directed to the § 101 issue, including that "[t]he claims of the '660 Patent are directed to the abstract idea of messaging users based on relevant events" and that various aspects of the patent were "both abstract and conventional." D.I. 690-1, Ex. 2 ¶¶ 42–47. And in the proposed final jury instructions, the parties agreed that the jury should be instructed on patent eligibility, with Attentive proposing additional language on the issue. D.I. 694 at 55.

On August 8, 2025, the Court held the pretrial conference. In light of the fact that it had recently granted summary judgment of noninfringement in Postscript's favor (D.I. 703, 704, 709, 710), the Court ordered the parties to file revised versions of the pretrial filings, including the Final Pretrial Order and final jury instructions, by close of business on August 19, 2025. D.I. 715. The parties proceeded to work on revising the pretrial filings. Attentive's initial draft, sent on August 15, 2025 (Ex. 13, Aug. 15, 2025 at 6:22 pm H. Ndai correspondence), included § 101 among its contested issues of law (Ex. 1 ¶¶ 10, 13-14), its statement of intended proofs (Ex. 2 ¶ 1), its proposed verdict form (Ex. 3 at 3-4), and the proposed final jury instructions (Ex. 4 at 40).

On August 18, 2025, the Court denied Attentive's motions for summary judgment and for judgment on the pleadings that the '660 patent claimed patent-ineligible subject matter. D.I. 746, 747, 748. The Court found that there were "factual disputes at step one that preclude the grant of summary judgment." D.I. 746 at 4. The Court explained that "[t]he record … is rife with genuine

disputes of material fact as to whether the '660 patent claims a messaging system that is conventional." *Id.* at 7.  The Court underscored that its ruling was based on the existence of factual disputes at step one by citing a prior case denying summary judgment on the same basis. *Id.* at 8 (citing *Systmex Corp. v. Beckman Coulter, Inc.*, No. 19-cv-1642-JFB-CJB, 2022 WL 1808325, at *5 & n.7 (D. Del. June 2, 2022)).

Well into August 19, Attentive continued to provide drafts of the pretrial filings that included the § 101 issues.  *See, e.g.*, Ex. 14 (Aug. 19, 2025 at 10:41 am H. Ndai correspondence); Ex. 5 at 40 (Aug. 19, 2025 at 10:41 am Attentive Final Jury Instructions). At 2:55 pm, however, Attentive provided a revised version of the verdict form that specified that the jury was only being asked to decide invalidity under §§ 102 and 103.  Ex. 6 (Aug. 19, 2025 at 2:55 pm Proposed Verdict Form).  Shortly thereafter, at 4:22 pm, Attentive sent over a revised version of the final jury instructions and contested issues of law that removed all references to § 101 issues.  *See* Ex. 7 (Aug. 19, 2025 at 4:22 pm Email from H. Ndai); Ex. 8 (Aug. 19, 2025 at 4:22 pm Proposed Final Jury Instructions); Ex. 9 (Aug. 19, 2025 at 4:22 pm Proposed Contested Issues of Law).

Postscript proceeded to ask Attentive five different times whether, in light of its edits to the pretrial filings, Attentive was dropping its § 101 defense, explaining that Postscript needed to know Attentive's position so that Postscript could prepare the attachments for the Final Pretrial Order, which was due to be filed that very day.  *See* Ex. 10 (Aug. 19, 2025 at 3:02 pm T. Pasvantis Email); Ex. 11 (Aug. 19, 2025 at 5:16 pm T. Pasvantis Email); Ex. 12  at 3–4 (Aug. 19, 2025 at 6:27 pm A. Joyce email); *id.* at 2-3 (Aug. 19, 2025 at 7:02 pm A. Joyce Email; *id.* at 2 (Aug. 19, 2025 at 7:16 pm T. Pasvantis Email).  Finally, after Postscript said that in the absence

of a response it would assume Attentive was dropping its § 101 defense, Attentive responded, saying:

> To be clear, Attentive is not withdrawing its ineligibility defense from the case. Instead, Attentive does not intend to present evidence regarding ineligibility (specifically step two of the Alice test) *at trial* because the Court's definitive step one determination sufficiently preserved the 101 issue for appeal without requiring additional evidence at trial.

Ex. 12 at 1–2 (Aug. 19, 2025 at 7:28 pm H. Ndai email).  Attentive's email did not suggest that Attentive intended to seek to have the Court resolve the § 101 issue ***after*** the jury trial; instead, it indicated that it believed the § 101 issue was "preserved … for appeal without requiring additional evidence at trial."  *Id.*  Given that the revised pretrial filings were due that same evening, Postscript responded:

> We understand that you will not be submitting Section 101 to the jury. Given that, and without agreeing with your characterization of the court's order, we will remove our 101 instructions and get the pretrial documents on file.

*Id.* at 1 (Aug. 19, 2025 at 8:55 pm T. Pasvantis Email).  The final versions of the proposed pretrial filings, the Final Pretrial Order, and the final jury instructions adopted by the Court and read to the jury accordingly contained no reference to § 101.  D.I. 769; 789.

Almost a week after Attentive deleted § 101 from the Final Pretrial Order, at 12:58 am on August 25, 2025, the morning of the first day of trial, Attentive filed a letter brief "seek[ing] clarification on the issue of patent eligibility …."  D.I. 781 at 1.  Attentive suggested that "to the extent there are underlying factual questions concerning patent eligibility, Attentive requests that they be addressed at a bench trial or hearing that would occur after the jury trial at a time suitable for the Court."  *Id.*  Attentive did not request that the pretrial order be modified to re-add § 101 into the case.  Postscript responded a few hours later, explaining that the Court's summary judgment order was clear in finding disputed issues of material fact that precluded summary

judgment, that if Attentive had not dropped the § 101 issue those disputes would have been for the jury, and that it was now too late to put those questions to the jury or to re-insert § 101 into the case. D.I. 782. Attentive never sought a ruling from the Court on its "motion for clarification" before trial began.

### 2.    Attentive's § 101 Defense Is No Longer in the Case Because It Was Not Included in the Final Pretrial Order

Both the Federal Rules of Civil Procedure and the rules of this Court provide for a Final Pretrial Order that supersedes the pleadings and governs the future course of the litigation. Fed. R. Civ. P. 16(d)–(e). Consistent with those rules, the controlling pretrial order in this case ended by stating that it would "control the subsequent course of the action":

> **IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

D.I. 769 at 23.[2]

Only now has Attentive asked for a modification to the Final Pretrial Order, and both the Final Pretrial Order and Rule 16(e) of the Federal Rules of Civil Procedure make clear that it is to be modified only when the demanding standard of "manifest injustice" is satisfied. Fed. R. Civ. P. 16(e).

The advisory committee notes on Rule 16 explain that the purpose of this rule is to narrow the issues for trial and that the Court should use its power to deviate from the pretrial order "sparingly":

---

[2] This language is also reflected in the Court's form pretrial order. *See* Proposed Final Patent Pretrial Order – Revised 04/14 at 11, *available at* https://www.ded.uscourts.gov/sites/ded/files/chambers/CJB-PatentPTO.pdf.

[Language regarding the court's power to identify the litigable issues] has been added in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone. … Counsel bear a substantial responsibility for assisting the court in identifying the factual issues worthy of trial. ***If counsel fail to identify an issue for the court, the right to have the issue tried is waived***. Although an order specifying the issues is intended to be binding, it may be amended at trial to avoid manifest injustice. See Rule 16(e). However, ***the rule's effectiveness depends on the court employing its discretion sparingly***. …

In the case of the final pretrial order … a more stringent standard [for amendments] is called for and the words "to prevent manifest injustice," which appeared in the original rule, have been retained. They have the virtue of familiarity and adequately describe ***the restraint the trial judge should exercise***.

Fed. R. Civ. P. 16, advisory committee's notes (emphases added).[3]

Accordingly, courts in this district regularly find that a party has abandoned defenses and theories that were not included in the Final Pretrial Order. *Babby v. City of Wilmington Dep't of Police*, 614 F. Supp. 2d 508, 510–11 (D. Del. 2009); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. CV 18-462 (MN), 2020 WL 1443215, at *7 (D. Del. Mar. 24, 2020); *Endo Pharms. Inc. v. Amneal Pharms.*, LLC, 224 F. Supp. 3d 368, 387 (D. Del. 2016); *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived."); *Petree v. Victor Fluid Power, Inc.*, 831

---

[3] Attentive attempts to rely below on boilerplate reservations of rights in its Statement of Contested Issues of Law that refer generally to all the pleadings and discovery responses in the case—effectively arguing that its removal of the § 101 issues from the pretrial filings had no effect, contrary to what it itself contended at the time.  D.I. 763, Ex. 4.  Permitting reliance on such blanket reservations of rights would obviously render the narrowing function of the Final Pretrial Order a dead letter.  *Sadowski v. Bombardier Ltd.*, 539 F.2d 615, 621 (7th Cir. 1976) (noting that "proper implementation of the rule requires that pretrial orders should not become mere boilerplate"); *In re Caprock Wine Co., L.L.C.*, No. 09-50576-RLJ-11, 2012 WL 1123230, at *9 (Bankr. N.D. Tex. Apr. 3, 2012) ("Condoning such a blanket reservation of rights in a pretrial order would undermine the purpose of a pretrial order.").  In any event, nothing in Attentive's pretrial filings purported to reserve the right to present *additional evidence* on § 101.

F.2d 1191, 1194 (3d Cir. 1987) ("The finality of the pretrial order contributes substantially to the orderly and efficient trial of a case."). [4]

### 3.    Attentive Should Have Proposed Any Bench Trial Procedures in the Final Pretrial Order

Attentive may argue against waiver by contending that the § 101 issues did not need to be included in the Final Pretrial Order because they were for the Court, not the jury. That suggestion should be rejected for three reasons. First, even if Attentive believed the § 101 issues were more appropriately resolved by the Court, it should have proposed that procedure in the Final Pretrial Order, instead of removing them from the litigation by deleting them from the Final Pretrial Order. Second, just because § 101 is ultimately an issue of law does not mean that factual disputes underlying that determination need to be resolved by the Court. On the contrary, those factual disputes are appropriately resolved by a jury. Third, Attentive in fact removed the § 101 issues from the Final Pretrial Order not because it intended to have them resolved by the Court at a later date, but because it intended to appeal them directly. It should not be permitted to revisit that strategic choice, especially given the absence of any intervening developments.

---

[4] *Jang v. Bos. Sci. Corp.*, 872 F.3d 1275, 1289 (Fed. Cir. 2017), which Attentive cites below, does not stand for the general proposition that issues of law need not be included in the Final Pretrial Order—if that were the case, there would be no need for the Final Pretrial Order to include a statement of contested issues of law. *Jang* involved a situation where "the district court … notified the parties before trial that it would resolve [the question of whether the patentee's doctrine of equivalents argument impermissibly ensnared the prior art], if necessary, outside of the trial." *Id.* Crucially, the parties had expressly agreed to that procedure before trial, *see* Case No. 16-1275, D.I. 49-4 at Appx10658 at lines 3-6 (Fed. Cir.), and the Federal Circuit had previously held that a bench proceeding was *required* to decide both the facts and the ultimate issue of law in the unique context of the ensnarement exception to the doctrine of equivalents, *see DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009). None of those circumstances are present here.

**a.    Attentive Dropped § 101 from the Proceedings Before This Court by Removing It from the Pretrial Order Regardless of Whether the Issue Was for the Court or a Jury**

There is no basis for any suggestion that the Final Pretrial Order only encompassed issues for the jury trial, rather than all issues that remained to be decided in the case.  Rule 16(d) makes clear that the Final Pretrial Order "controls the course of the ***action***," not just the jury trial.  Fed. R. Civ. P. 16(d) (emphasis added).  The Final Pretrial Order likewise makes clear that it "shall control the subsequent course of the ***action***[.]"  D.I. 769 at 23 (emphasis added).  Nothing limits the narrowing effect of the Final Pretrial Order to just ***jury issues***.

In any event, Attentive cannot consistently take the position that the Final Pretrial Order was limited to jury issues because it included in the order other issues that are indisputably for the Court.  For example, its Statement of Contested Facts included "[w]hether costs should be awarded to either party, and if so, the dollar amount of such costs" and whether fees would be available under 35 U.S.C. § 285.  D.I. 769-1, Ex. 2 ¶¶ 18–19.  Similarly, its Statement of Issues of Law included those questions, as well as pre- and post-judgment interest and Postscript's entitlement to an injunction, all of which are indisputably issues for the Court, not a jury, to decide.  *Id.*, Ex. 4 ¶¶ 21–23, 32–40.

If Attentive's position was that the § 101 issue should be resolved by the court after the jury trial, the proper course was to propose that procedure in the Final Pretrial Order, not to delete it entirely.  Rule 16 specifically notes that the "Matters for Consideration" in "any pretrial conference" include "ordering a separate trial under Rule 42(b) of a … particular issue."

Attentive made no such proposal, and as discussed below, that was because it intended to appeal the issue without pursuing it further before *either* the district court or a jury.[5]

### b.    The Facts Underlying Subject-Matter Eligibility Are Properly Resolved by a Jury

Any suggestion by Attentive that the Court should resolve the factual issues underlying subject-matter eligibility because the ultimate issue is one of law should be rejected.  "While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  Among these factual questions is whether the patented invention is drawn to well-understood, routine, and conventional activities previously known to the industry.  *See id.*  The Court's order denying Attentive's motion for summary judgment made clear that the record was "rife with genuine disputes of material fact as to whether the '660 patent claims a messaging system that is conventional," and that was precisely what precluded a grant of summary judgment.  D.I. 746 at 7.  Indeed, the Court observed at trial that "it baffles me either side could have thought that I definitively resolved the Section 101 issue," and that its order said "about [as] clearly as you [can]" that "even at Step 1 … there can be disputed fact issues" and that in this case "there's just a factual dispute."  Trial Tr. 872:2–9.

---

[5] Attentive's suggestion below that "the Court rejected Postscript's suggestion that the defense had been waived" is not accurate.  The Court noted that since no party had asked it to resolve the issue of waiver, it was not issuing a ruling, and the issue was still open: "I think understandably that one of the two of those positions was going to prevail. Waived, so it's done, or still in, but it would be decided post-trial."  Trial Tr. 885:11–14; *see also id.* 891:20–24.

Factual disputes are normally decided by a jury, with limited exceptions not relevant here.[6] *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 624–25 (1991) ("In the federal system, the Constitution itself commits the trial of facts in a civil cause to the jury."); *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 657 (1935) ("issues of law are to be resolved by the court and issues of fact are to be determined by the jury"). There is no basis to depart from that rule in the context of Section 101:

> The disagreement between the parties centers on Plaintiff's argument that Section 101 is a question of law and thus, not a triable issue of fact for a jury. However, ***Plaintiff has failed to point to any Court of Appeals' decision saying that the judge must decide Section 101 issues***.
>
> … The language cited by Plaintiff merely articulates that the ultimate question of the validity of a patent is considered to be a question of law. However, Plaintiff ignores the fact that there may be underlying factual questions that the jury must answer in order to reach a conclusion on validity. *See Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055–56 (Fed. Cir. 1992) ("Whether a claim is directed to statutory subject matter is a question of law. Although determination of this question may require findings of underlying facts specific to the particular subject matter and its mode of claiming, in this case there were no disputed facts material to the issue."). Thus, where the issue of validity depends upon the resolution of a factual dispute, a jury is permitted to decide the issue. Once

---

[6] In the patent context, the Supreme Court and Federal Circuit have expressly created exceptions providing that the court is to decide factual questions subsidiary to claim construction, the ensnarement limitation to the doctrine of equivalents, and prosecution history estoppel. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325-27 (2015); *DePuy*, 567 F.3d at 1323-24. As Attentive acknowledges below, the Federal Circuit has never carved out such an exception for factual questions underlying the § 101 determination. *See infra* at IV.b.2 (citing *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 967-68 (Fed. Cir. 2018)). As a result, the normal rule that factual disputes are for the jury applies.

In any event, if Attentive wanted to argue for the creation of a new exception to the jury trial right, this is not an appropriate procedural posture to do so. Attentive should have made its argument in advance of trial, when there was still the possibility of putting the issue to the jury after the Court had sufficient time to give this important question its due. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.").

the underlying questions of fact are answered by the jury, the validity issue is resolved.

*VS Techs., LLC v. Twitter, Inc.*, No. 2:11CV43, 2012 WL 1481508, at *4 (E.D. Va. Apr. 27, 2012) (emphasis added).  A parallel is obviousness, which, like § 101, is ultimately a legal conclusion with subsidiary factual findings. The Federal Circuit has held that "it is not error to submit the question of obviousness to the jury," because there is "[n]o warrant [] for distinguishing the submission of legal questions to a jury in patent cases from such submissions routinely made in other types of cases."  *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547 (Fed. Cir. 1983). When an issue of law has been submitted to the jury upon disputed facts, the court presumes "that the jury resolved the underlying factual disputes in favor of the verdict winner and leave those presumed findings undisturbed if they are supported by substantial evidence." *Bombardier Recreational Prods. Inc. v. Arctic Cat Inc.*, 785 F. App'x 858, 866 (Fed. Cir. 2019) (quoting *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir. 1991)).  Attentive recognized as much by initially including a question on its proposed verdict form asking the jury to decide patent eligibility under § 101.  Ex. 3 (Aug. 15, 2025 Attentive proposed verdict form) at 3–4.

Attentive's repeated insistence that both § 101, in general, and step one of the *Alice* inquiry, in particular, are legal issues is therefore true but irrelevant.  Whether or not the ultimate issue is one of law, the Court's summary judgment order made clear that there are factual disputes that need to be resolved before the ultimate legal issue can be decided.  Those factual issues are properly decided by a jury.

### c.    Attentive Should Not Be Permitted to Revisit a Strategic Choice

The removal of § 101 from the proceedings before this Court was entirely at *Attentive's* behest.  Attentive, not Postscript, decided the afternoon the revised pretrial order was due to

remove all references to § 101 from the pretrial filings, and it was Attentive that chose not to try to re-add them in the intervening days before trial, or indeed at any point before now.[7]

Attentive now proposes to have the Court decide any disputed factual issues in a bench trial.  Attentive did not propose any such post-trial procedure when it deleted the § 101 issues from the pretrial filings because, at the time, it did not intend to litigate the issue further before this Court.  Instead, it believed it had "sufficiently preserved the 101 issue for appeal without requiring additional evidence at trial."  Ex. 12 at 1–2 (Aug. 19, 2025 at 7:28 pm H. Ndai email).  Thus, Attentive's position then was that the § 101 motion should be removed from the Final Pretrial Order because its next stop was the Federal Circuit.[8]

Whether that decision was wise or not is not a matter for either Postscript or the Court to second-guess.  For purposes of deciding what, if anything, to do about § 101, what matters is that *nothing has changed* in the meantime.  Since dropping the § 101 issue, Attentive has said that "[a]fter additional review of the Court's order" it "[was] unclear to Attentive whether" the Court "definitively ruled that the claims are patent eligible at Step One as a matter of law."  D.I. 781 at 1-2 & n.1.  But the text of the Court's order was the same on August 19 as it is now, and allowing a party to revisit litigation decisions simply because it says it now *reads* an existing order differently would result in virtually no litigation decision being final.

---

[7] The letter brief Attentive filed the morning of the first day of trial (D.I. 781) on its face only asks for "clarification" of the Court's order, but did not seek to modify the pretrial filings or make the necessary showing of "manifest injustice" to do so.

[8] Postscript made clear on August 19 itself that it did not agree with Attentive's reading of the Cout's summary judgment order, and if Attentive attempts to pursue its § 101 arguments at the Federal Circuit, Postscript reserves the right to argue that Attentive did not properly preserve this argument for appeal.  But the resolution of *that* dispute is for the Federal Circuit.

That would be reason enough to deny Attentive's current request even if it had come sufficiently in advance of trial, but allowing Attentive's change of course *now*, several weeks after trial, would be particularly prejudicial to Postscript.  If Attentive had made clear on August 19 that it intended to ask the Court to decide the § 101 issue on a bench trial instead of suggesting that it simply intended to take an appeal, Postscript would have opposed that request.[9] Postscript had a right to have at least the factual issues underlying the § 101 determination be decided by a jury in the context of its full infringement and invalidity presentation, and a substantial interest in doing so—because those issues overlap substantially with Postscript's evidence that the '660 patent was novel and non-obvious, because Postscript also had a right to have a jury act as factfinder, and because it would be far more efficient and less costly to have one trial instead of two.  Instead, by first suggesting—mere hours before the Final Pretrial Order was due—that it intended to leave the § 101 issue be until appeal, and then trying to add it back into the case after it was too late to have a jury decide it,[10] Attentive has acted in a way maximally prejudicial to Postscript, without offering *anything* by way of justification. Although Attentive below castigates the argument that it waived as "extreme" and "extraordinary," it is *Attentive* that is in effect arguing that Postscript waived its right to a jury

---

[9] Attentive now suggests below that Postscript's "own hands are not clean" because Postscript should have somehow been able to divine that Attentive intended to propose a bench trial on § 101 from its August 19 email.  All that Attentive points to for this assertion is the email's statement that Attentive was "not withdrawing its ineligibility defense from the case."  But the very next sentence of the email makes clear that this referred to Attentive's belief that it could pursue the ineligibility defense before the Federal Circuit, since it was "preserved … for appeal."

[10] By the time Attentive filed its letter early the morning of August 25 first suggesting that it intended to have this Court resolve both factual and legal issues underlying § 101, there would have been insufficient time to make the necessary changes to opening statements, witness presentations, and pretrial filings even if the Court had immediately ruled that there was a jury trial right and that the parties should therefore make their cases on § 101 to the jury.

trial—under circumstances where no litigant could reasonably be understood to have made such a waiver.  *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1358 n.6 (Fed. Cir. 2012) ("The right to jury trial is too important and the usual procedure for its waiver is too clearly set out by the Civil Rules for courts to find a knowing and voluntary relinquishment of the right in a doubtful situation." (quoting *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998))).

    This filing is the very first time that Attentive has asked to modify the Final Pretrial Order on the grounds that not doing so would lead to manifest injustice.  The reasons above show why it cannot satisfy that demanding standard.  In considering "manifest injustice," courts consider: "(1) the prejudice or surprise in fact to the nonmoving party, (2) the ability of that party to cure the prejudice, (3) the extent to which the waiver of the rule would disrupt the orderly and efficient trial of the case, and (4) bad faith or willfulness on the part of the movant."  *Bowytz v. Skolnick*, 113 F.R.D. 635, 636 (D. Del. 1987).  All these factors preclude finding manifest injustice here: (1) Postscript would be substantially prejudiced by not being able to have a jury decide factual issues germane to § 101 in the context of its full case;[11] (2) it is not possible to cure that prejudice because the jury trial has now been completed; (3) allowing Attentive to belatedly litigate § 101 in the context of a bench trial would result in duplicative proceedings by forcing the parties to spend additional resources litigating an issue that could already have been

---

[11] Attentive suggests below that there is no prejudice because the jury would merely provide an "advisory factual decision."  But while sometimes termed an "advisory jury," any factual issues *decided* by a jury on the factual issues underlying § 101 would be binding if supported by substantial evidence, and Postscript therefore did suffer prejudice from being deprived of its right to obtain decisions on those factual disputes from a jury.  *See Kinetic Concepts*, 688 F.3d at 1358–59.

litigated to finality; and (4) the parties are only in this position because Attentive chose to remove § 101 from the pretrial filings.

There is no unfairness in holding Attentive to its original decision not to pursue its § 101 arguments before this Court.

### B.    ATTENTIVE'S POSITION

Postscript's extreme position that Attentive intentionally and completely dropped from this case its defense that the asserted claims of the '660 patent are not patent eligible under 35 U.S.C. § 101 should be rejected for the reasons discussed below.  The record establishes that the patent-ineligibility issue remains live, and should be resolved by the Court after a limited, post-trial evidentiary hearing and briefing by the parties (as detailed further below):

- On August 18, 2025, the Court denied Attentive's Section 101 motion for summary judgment regarding the '660 patent, citing "factual disputes *at step one* that preclude the grant of summary judgment."  D.I. 746 at 4 (emphasis added); *id.* at 7.

- Given its understanding that Step One of the two-step test for patent eligibility under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), is a pure "legal question," Attentive's initial interpretation of the Court's decision was that the Court had necessarily decided that legal question in Postscript's favor—finally resolving the issue for purposes of appeal.  *See, e.g.*, *CardioNet, LLC v. Infobionic, Inc.*, 955 F.3d 1358, 1372 ("*Alice step one presents a legal question* . . . .") (emphasis added).  As a result, Attentive removed patent eligibility from the pretrial order and corresponding documents.  As Postscript acknowledges, however, on August 19, 2025, Attentive unequivocally advised Postscript that "[t]o be clear, Attentive is not withdrawing its ineligibility defense from the case."  Ex. 12 at 1-2 (8/19/25 H. Ndai email).

- Attentive subsequently conducted further review of the Court's Section 101 decision and found that the issue required clarification.  Days later, on August 25, 2025, Attentive sought clarification from the Court, stating that to the extent there are underlying factual questions concerning patent eligibility, Attentive requests that they be addressed at a bench trial or hearing that would occur after the jury trial at a time suitable for the Court."  D.I. 781 at 1; *see also id.* at 2.

- The case then proceeded to trial.  Before presenting its case-in-chief, Attentive again sought clarification as to whether the Court wished to hear evidence relating to its Section 101 defense.  In response, the Court rejected Postscript's suggestion that the defense had been waived, and specifically advised Attentive to address its Section 101 defense *post*-trial:  "I don't know that I've seen enough to suggest that Attentive's waived this defense and so what I think that would mean is, I would have to take it up post-trial in an appropriate form or fashion.  That's my inclination."  Trial Tr. 873:1–5; *id.* at 872:20–21 ("I didn't assume that [Attentive] had dropped the defense.").  The Court acknowledged that because some facts may be applicable to both Section 101 and the issues for the jury, there "could be factual evidence" presented at the jury trial "that might later be cited to relate to a 101 issue."  *Id.* at 873:17–19.  But the Court made clear that to the extent Attentive intended to present evidence only for the purposes of advancing its Section 101 defense, the Court's "inclination is that there would be a [post-trial] process by which any further [necessary] evidence" could "be presented."  *Id.* at 873:17–24.  The Court concluded by stating that after such a process to present further evidence, it would "then make the ultimate legal determination at that point, again, if need be."  *Id.* at 873:22–24.

- Pursuant to the Court's guidance, after the close of all evidence, the case was submitted to the jury without the question of patent eligibility.

The only conclusion that can reasonably be drawn from this record is that, contrary to Postscript's extraordinary assertion, Attentive has *never* dropped its Section 101 defense. Instead, by the time of the jury trial, Attentive had made clear to Postscript and the Court that Attentive sought to preserve its Section 101 defense, and was directed *by the Court* to reserve Section 101-specific issues for the post-trial process. D.I. 781. That time has come.

Nevertheless, Postscript now seeks a "gotcha," arguing that Attentive intentionally dropped its Section 101 defense from the case entirely—despite Attentive's August 19 email stating the opposite. The bases for Postscript's position are: (1) Attentive removed from the pretrial order the issue of patent eligibility; (2) factual issues underlying the patent-eligibility analysis *must* be decided by a jury; and (3) there would be no "manifest injustice" from finding that Attentive's Section 101 defense has been completely dropped from this case. These arguments fail for the reasons below.

1. Although Postscript heavily relies on the language of the pretrial order to argue waiver, nothing in the language of the pretrial order expressly precludes this Court from making the ultimate determination on legal issues *after* the jury trial. Indeed, the pretrial order's language shows the opposite is true. For instance, the parties' respective lists of contested facts and issues of law were expressly identified as issues to "be litigated at trial," *i.e.*, the upcoming *jury* trial. D.I. 763 ¶¶ 5–8. Attentive's statement of issues of law "reserve[d] the right to prove any matters identified in the pleadings, discovery responses, including in its contentions, and/or expert reports and depositions" and "reserve[d] the right to present issues of law set forth in pending or previously

determined motions"—*e.g.*, patent eligibility.  D.I. 763, Ex. 4.  Thus, even the pretrial order's language shows that the question of patent eligibility falls within its scope.

In any event, even if the legal question of patent eligibility was not included in the pretrial order, it does not mean that Attentive entirely dropped the defense, nor does it preclude the Court from resolving that issue outside of the jury trial.  There can be no dispute that the "ultimate determination of eligibility under § 101 is a question of law."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  Thus, consistent with Federal Circuit precedent, this legal issue did not need to be included in the pretrial order to preserve it for the Court's determination after the jury trial.  *See, e.g.*, *Jang v. Boston Scientific Corp.*, 872 F.3d 1275, 1289 (Fed. Cir. 2017).  In *Jang*, for example, the plaintiff argued that the defendant had waived its ensnarement argument because it "was not listed in the pretrial order."  *Id.*  The Federal Circuit rejected the plaintiff's argument, holding that "[t]he pretrial order governs trial, but ensnarement is a *legal question* for the district court to decide" and thus could be decided "outside of the [jury] trial," *e.g.*, in a "post-trial hearing."  *Id.* (emphasis added).  Accordingly, the Federal Circuit noted, it had not been "adequately articulated why proper preservation of ensnarement required its explicit mention in the pretrial order."  *Id.*  Similarly, here, the defense in question is also ultimately a legal one:  patent eligibility.  Furthermore, contrary to Postscript's representations, nowhere is it stated in Federal Rule of Civil Procedure 16 that a Court is precluded from hearing an issue after the completion of trial because that issue was not listed in the pretrial order.  Thus, although the

pretrial order governed the jury trial, patent eligibility was not required to be included for purposes of preserving the issue to be decided by *the Court* after the jury trial completed.[12]

Postscript's contrary assertions fail. Indeed, none of Postscript's cited cases involved the particular circumstances here; that is, although patent eligibility was not included in this pretrial order (and did not need to be), Attentive nonetheless made clear to both Postscript and the Court before the jury trial that Attentive intended for the issue to be decided by the Court *after* the trial.

**2.** Postscript likewise has no legal support for its assertion that patent eligibility *must* be decided by a jury. To the contrary, as Attentive previously explained, the Supreme Court consistently has indicated that patent eligibility is a question for the *courts* to decide. D.I. 781 at 2 (citing, *e.g.*, *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) ("[W]e determine whether the claims at issue are directed to [a] patent-ineligible concept[]," and "we . . . determine whether the additional elements transform the nature of the claim into a patent-eligible application") (emphases added)). Even the Federal Circuit has stated that "[w]hether the Seventh Amendment guarantees a jury trial on any factual underpinnings of § 101 is" an open "question."

---

[12] In its attempt to avoid the import of *Jang*, Postscript only further advances Attentive's point. That is, contrary to Postscript's repeated assertion of a per se rule that any issue left out of a pretrial order is waived, Postscript acknowledges there are indeed circumstances where a legal issue can be preserved for a court's determination outside of a jury trial even if not mentioned in the pretrial order. Attentive notes, however, that Postscript's recitation of the facts in *Jang* is wrong: although Postscript argues the parties in *Jang* agreed the ensnarement issue should be decided by the court, the record reflects that the parties actually were not in agreement. *See* Case No. 16-1275, D.I. 49-4 at Appx10660 at lines 2-8 (Fed. Cir.) ("***We're not necessarily in agreement that proceeding to a hearing on this record makes sense***, for a variety of reasons, beside the fact it was—we suggested the defense is late—waived being raised so late in the process. However, I think probably ***the most efficient way to proceed is to file a paper that outlines our position in that regard***.") (emphasis added). Furthermore, although Postscript argues ensnarement is a legal issue that is only for the courts to decide, Postscript cites no precedent contradicting the Supreme Court's repeated and consistent indication that, as Attentive has explained, patent eligibility is a legal issue that is also for the courts to decide. D.I. 781 at 2; *supra* ¶ 2.

*Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 968 (Fed. Cir. 2018).  Regardless, even after Attentive advised Postscript and the Court that Attentive would seek a post-trial determination of patent eligibility, Postscript never actually requested the jury decide any part of the issue.

 **3.** Contrary to Postscript's argument, stripping Attentive of its Section 101 defense now would result in a "manifest injustice," and thus the pretrial order should be modified to include that defense to the extent necessary.

 Postscript cannot now claim any possible uncurable prejudice from not having had a jury trial on patent eligibility, as its own hands are not clean.  Even after Attentive removed patent eligibility from the pretrial order but *a day later* confirmed it was *not* dropping the defense from the case, Postscript never asked for clarification on how the issue would be resolved, or even suggested it would want an "advisory factual decision about conventionality."  *See* Trial Tr. 872:16–21.  Instead, Postscript waited in silence, only raising waiver after Attentive sought that clarification from the Court.  Postscript cannot now argue that it missed its chance for a jury trial on any part of the patent-eligibility question.  In addition, Postscript *did* have the opportunity to present evidence that could relate to patent eligibility at the jury trial.  The Court gave both parties notice that this was possible, stating "I'm sure it may be the case that in trying to prove or disprove aspects, say, of validity, there could be factual evidence that might later be cited to relate to a 101 issue."  Trial Tr. 873:17–19.  Furthermore, Postscript never concretely explains what particular prejudice it suffers from the Court now deciding the issue, as opposed to the jury providing an advisory factual decision on, *e.g.*, conventionality.

 The remaining "manifest injustice" considerations also strongly counsel *against* finding that Attentive dropped its Section 101 defense.  As shown above, Attentive did not act in bad faith when it removed patent eligibility from the pretrial order.  Instead, Attentive promptly sought

clarification from the Court when Attentive revisited its understanding of the Court's Section 101 summary judgment decision. Finally, deciding the Section 101 question post-trial would cause no disruption to the now-completed jury trial because Attentive is not asking for a jury trial on that question. Indeed, as the Court acknowledged, the parties were permitted to present evidence to the jury that could also relate to the Section 101 inquiry, and Postscript never objected to that approach. Trial Tr. 873:17–19.

Accordingly, Postscript's waiver arguments should be rejected. Attentive therefore respectfully renews its request for a limited, post-trial evidentiary hearing concerning Attentive's patent-eligibility defense under Section 101, followed by briefing along with proposed findings of fact and conclusions of law. Attentive proposes that no more than a half day is necessary for this evidentiary hearing.

DATED: October 1, 2025

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

/s/ Michael J. Flynn
Michael J. Flynn (#5333)
Cameron Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mflynn@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff*
*Attentive Mobile Inc.*

OF COUNSEL:

Christopher C. Campbell
Britton F. Davis
Halima Ndai
Matthew D. Wood
CAHILL GORDON & REINDEL LLP
1990 K Street, N.W., Suite 950
Washington, D.C. 20006
(202) 862-8900

Rahul Sarkar
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
(212) 701-3000

MCCARTER & ENGLISH, LLP

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Maliheh Zare (#7133)
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com
mzare@mccarter.com

*Attorneys for Defendant Stodge Inc.*
*d/b/a Postscript*

OF COUNSEL:

Daralyn J. Durie
Timothy C. Saulsbury
Hannah Jiam
Joyce C. Li
Eric C. Wiener
Ramsey Fisher
Tannyr Pasvantis
MORRISON FOERSTER
425 Market Street
San Francisco, CA 94105

Sara Doudar
MORRISON FOERSTER
707 Wilshire Boulevard
Los Angeles, CA 90017

Raghav Krishnapriyan
ORRICK, HERRINGTON & SUTCLIFFE, LLP
405 Howard Street
San Francisco, CA 94105